# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>ex rel. [UNDER SEAL] | **)**<br>**)** | |
| | **)** | **UNDER SEAL** |
| Plaintiffs, | **)** | |
| | **)** | **SECOND AMENDED COMPLAINT** |
| v. | **)** | |
| | **)** | Civil Action No. CV-08-3096 |
| [UNDER SEAL] | **)** | |
| | **)** | |
| Defendants. | **)** | (Johnson, J.) |
| | **)** | (Levy, M.J.) |
| Defendants. | **)** | |
| | **)** | |

FILED IN CAMERA AND UNDER SEAL PURSUANT TO COURT ORDER

## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. DON HANKS,<br><br>                    Plaintiffs,<br><br>         v.<br><br>AMGEN, INC.; UNITED STATES ONCOLOGY SPECIALITY, LLP;<br><br>[Alabama]<br>MONTGOMERY CANCER CENTER; ONCOLOGY SPECIALITIES, P.C.; BIRMINGHAM HEMATOLOGY - ONCOLOGY ASSOCIATES; SOUTHEAST CANCER NETWORK; THE KIRKLIN ONCOLOGY CLINIC; RADIATION THERAPY ONCOLOGY, P.C.; NORTHWEST ALABAMA CANCER CENTER;<br><br>[Arizona]<br>PALO VERDE HEMATOLOGY- ONCOLOGY, INC.; IRONWOOD CANCER AND RESEARCH CENTERS; DESERT ONCOLOGY; ARIZONA CENTER FOR HEMATOLOGY AND ONCOLOGY, P.C.; SOUTHWEST HEMATOLOGY ONCOLOGY; ARIZONA MEDICAL CLINIC; ARIZONA HEMATOLOGY/ONCOLOGY - NORTHWEST CANCER CENTER;<br><br>[Arkansas]<br>LITTLE ROCK HEMATOLOGY- ONCOLOGY ASSOCIATES; HIGHLANDS ONCOLOGY GROUP, P.A.; | **<u>UNDER SEAL</u>**<br><br>**SECOND AMENDED COMPLAINT**<br><br>Civil Action No. CV-08-3096<br><br><br>(Johnson, J.)<br>(Levy, M.J.) |

[Colorado]                                    )
COLORADO HEMATOLOGY                           )
ONCOLOGY; LOVELAND                            )
HEMATOLOGY ONCOLOGY;                          )
                                              )
[Connecticut]                                 )
MEDICAL ONCOLOGY AND                          )
HEMATOLOGY, P.C.; ONCOLOGY                    )
ASSOCIATES, P.C., HEMATOLOGY                  )
ONCOLOGY, P.C.; EASTERN                       )
CONNECTICUT HEMATOLOGY AND                    )
ONCOLOGY; BLACK ROCK TURNPIKE                 )
MEDICAL GROUP, P.C.; ONCOLOGY                 )
ASSOCIATES OF BRIDGEPORT;                     )
ONCOLOGY HEMATOLOGY                           )
ASSOCIATES; CONNECTICUT                       )
ONCOLOGY GROUP;                               )
                                              )
[Iowa]                                        )
MEDICAL ONCOLOGY AND                          )
HEMATOLOGY ASSOCIATES;                        )
SIOUXLAND HEMATOLOGY AND                      )
ONCOLOGY;                                     )
                                              )
[Kansas]                                      )
CANCER CENTER OF KANSAS;                      )
HUTCHINSON CLINIC;                            )
                                              )
[Kentucky]                                    )
COMMONWEALTH CANCER CENTER;                   )
                                              )
[Maine]                                       )
MAINE CENTER FOR CANCER                       )
MEDICINE;                                     )
                                              )
[Maryland]                                    )
ONCOLOGY-HEMATOLOGY                           )
ASSOCIATES, P.C.; CHESAPEAKE                  )
ONCOLOGY HEMATOLOGY                           )
ASSOCIATES; MARYLAND                          )
HEMATOLOGY AND ONCOLOGY;                      )
CENTER FOR CANCER AND BLOOD                   )
DISORDERS; FREDERICK                          )
ONCOLOGY/HEMATOLOGY                           )
ASSOCIATES; ANNAPOLIS MEDICAL                 )

SPECIALISTS D/B/A ANNAPOLIS            )
ONCOLOGY CENTER; FREDERICK P.          )
SMITH, M.C., P.C.; COMMUNITY           )
HEMATOLOGY ONCOLOGY                    )
PRACTITIONERS; DAVID H. SMITH,         )
M.D.;                                  )
                                       )
[Minnesota]                            )
MAYO CLINIC; NORTH MEMORIAL            )
HEALTH CARE; PARK NICOLLET             )
CLINIC; FAIRVIEW SOUTHDALE             )
BREAST CENTER;                         )
                                       )
[Mississippi]                          )
JACKSON ONCOLOGY ASSOCIATES,           )
PLLC; HATTIESBURG CLINIC, P.A.;        )
MERIDIAN ONCOLOGY ASSOCIATES,          )
P.L.L.C.;                              )
                                       )
[Missouri]                             )
WASHINGTON UNIVERSITY; ST. LOUIS )
CANCER CENTER; MERCY CANCER            )
CARE; MIDWEST HEMATOLOGY               )
ONCOLOGY CONSULTANTS, LTD.             )
D/B/A HEMATOLOGY ONCOLOGY              )
CONSULTANTS, INC.; ST. JOHNS CLINIC )
CANCER AND HEMATOLOGY;                 )
                                       )
[Montana]                              )
HEMATOLOGY ONCOLOGY CENTERS            )
OF THE NORTHERN ROCKIES;               )
                                       )
[Nebraska]                             )
HEMATOLOGY ONCOLOGY                    )
CONSULTANTS, P.C.; NEBRASKA            )
HEMATOLOGY ONCOLOGY, P.C.;             )
                                       )
[North Carolina]                       )
PIEDMONT HEMATOLOGY ONCOLOGY )
ASSOCIATES; SOUTHEASTERN               )
MEDICAL ONCOLOGY CENTER;               )
GASTON HEMATOLOGY AND                  )
ONCOLOGY ASSOCIATES; HANOVER           )
MEDICAL SPECIALISTS, P.A.;             )
NORTHWESTER CAROLINA                   )

ONCOLOGY AND HEMATOLOGY;        )
CAROLINAS PHYSICIANS NETWORK    )
d/b/a CAROLINAS HEMATOLOGY      )
ONCOLOGY ASSOCIATES; NORTHEAST )
ONCOLOGY ASSOCIATES; CAROLINAS  )
CANCER CARE;                    )
                                )
[North Dakota]                  )
MERITCARE MEDICAL GROUP D/B/A    )
ROGER MARIS CANCER CENTER;      )
                                )
[Ohio]                          )
ONCOLOGY HEMATOLOGY CARE, INC.;)
HEMATOLOGY ONCOLOGY OF          )
DAYTON; MID-OHIO ONCOLOGY       )
HEMATOLOGY; CINCINNATI          )
HEMATOLOGY ONCOLOGY, INC.;      )
HEMATOLOGY ONCOLOGY CENTER,     )
INC.; BLOOD AND CANCER CENTER;  )
COLUMBUS ONCOLOGY ASSOCIATES,   )
INC.; OHIO CANCER SPECIALISTS;  )
NORTHCOAST CANCER CARE; NASHAT)
Y. GABRAIL, M.D.; HOPE CANCER   )
CENTER OF NORTHWEST OHIO, INC.; )
                                )
[Oregon]                        )
PACIFIC ONCOLOGY, PC;           )
HEMATOLOGY ONCOLOGY             )
ASSOCIATES, P.C.; HEMATOLOGY    )
ONCOLOGY OF SALEM, LLP;         )
                                )
[Pennsylvania]                  )
MEDICAL CENTER CLINIC;          )
CONSULTANTS IN MEDICAL          )
ONCOLOGY AND HEMATOLOGY;        )
ABINGTON HEMATOLOGY-ONCOLOGY )
ASSOCIATES, INC.; CANCER CARE   )
ASSOCIATES OF YORK;             )
PENNSYLVANIA ONCOLOGY           )
HEMATOLOGY ASSOCIATES; BRYN     )
MAWR MEDICAL SPECIALISTS;       )
GREATER PHILADELPHIA CANCER     )
AND HEMATOLOGY SPECIALISTS;     )
HEMATOLOGY ONCOLOGY             )
ASSOCIATES OF NORTHEAST         )

PENNSYLVANIA; CHESTER COUNTY )
HEMATOLOGY AND ONCOLOGY )
SERVICES; BUX-MON ONCOLOGY- )
HEMATOLOGY MEDICAL ASSOCIATES; )
REGIONAL CANCER CENTER; )
REGIONAL HEMATOLOGY ONCOLOGY )
ASSOCIATES; CANTOR, BIERMANN, )
FELLIN AND ASSOCIATES; )
ASSOCIATES IN HEMATOLOGY )
ONCOLOGY, P.C.; JEFFERSON )
HEMATOLOGY/MEDICAL ONCOLOGY )
ASSOCIATES; SHAH, GIANGIULIO AND )
CORMIER, M.D.S.; CANCER CARE OF )
CENTRAL PENNSYLVANIA; )
HEMATOLOGY ONCOLOGY )
ASSOCIATES; ONCOLOGY- )
HEMATOLOGY OF LEHIGH VALLEY; )
CONEMAUGH CANCER CARE CENTER; )
HEMATOLOGY-ONCOLOGY GROUP, )
P.C.; CENTRAL PENNSYLVANIA )
HEMATOLOGY AND MEDICAL )
ONCOLOGY ASSOCIATES; MAINLINE )
ONCOLOGY HEMATOLOGY )
ASSOCIATES AT LANKENAU )
HOSPITAL; LEHIGH VALLEY WOMENS )
CANCER CENTER; )
 )
[South Carolina] )
SOUTH CAROLINA ONCOLOGY )
ASSOCIATES, P.A.; COASTAL CANCER )
CENTER; PALMETTO HEMATOLOGY )
ONCOLOGY, P.C.; CHARLESTON )
HEMATOLOGY AND ONCOLOGY; )
LOWCOUNTRY HEMATOLOGY AND )
ONCOLOGY; )
 )
[South Dakota] )
SIOUX VALLEY ONCOLOGY CLINIC; )
 )
[Utah] )
UTAH CANCER SPECIALISTS; CENTRAL )
UTAH CLINIC; )
 )
[Washington] )
WESTERN WASHINGTON ONCOLOGY; )

NORTHWEST MEDICAL SPECIALTY;                )
RANIER ONCOLOGY PROFESSIONAL               )
SERVICES; WENATCHEE VALLEY                  )
CLINIC; CASCADE CANCER CENTER;             )
COLUMBIA BASIN HEMATOLOGY                   )
ONCOLOGY, P.L.L.C.,                         )
                                            )
            Defendants;                 )
                                            )
                                            )
                                            )
UNITED STATES OF AMERICA,                   )
ex rel.  DON HANKS, and                     )
STATE OF CALIFORNIA,                        )
ex rel.  DON HANKS,                         )
                                            )
            Plaintiffs,                 )
                                            )
      v.                                  )
                                            )
AMGEN, INC.; REDWOOD REGIONAL               )
ONCOLOGY; TOWER HEMATOLOGY                   )
ONCOLOGY MEDICAL GROUP; CANCER)
ASSOCIATES OF FRESNO MEDICAL                )
GROUP, INC.; PACIFIC ONCOLOGY              )
HEMATOLOGY ASSOCIATES, INC.;               )
REGENTS OF THE UNIVERSITY OF                )
CALIFORNIA; PACIFIC SHORES                  )
MEDICAL GROUP, INC.; SANTA                  )
BARBARA HEMATOLOGY-ONCOLOGY )
MEDICAL GROUP, INC.; THE BREAST            )
CARE CENTER – ONCOLOGY CENTER;  )
EAST BAY MEDICAL ONCOLOGY                   )
HEMATOLOGY ASSOCIATES; ORANGE  )
COAST ONCOLOGY; CANCER CARE                )
ASSOCIATES MEDICAL GROUP, INC.;            )
VENTURA COUNTY HEMATOLOGY-                  )
ONCOLOGY SPECIALISTS, INC.;                 )
VALLEY MEDICAL ONCOLOGY                     )
CONSULTANTS; WILSHIRE ONCOLOGY )
MEDICAL GROUP; and NORTH COUNTY )
ONCOLOGY, STOCKTON                          )
HEMATOLOGY ONCOLOGY; MEDICAL  )
GROUP OF NORTH COUNTY;                      )
SOUTHBAY ONCOLOGY HEMATOLOGY)

PARTNERS; CANCER CARE                     )
CONSULTANTS; MEDICAL ONCOLOGY )
ASSOCIATES OF SAN DIEGO;                  )
HEMATOLOGY ONCOLOGY MEDICAL     )
GROUP OF ORANGE COUNTY; VALLEY )
TUMOR MEDICAL GROUP D/B/A             )
ANTELOP VALLEY CANCER CENTER;   )
THE ANGELES CLINIC AND RESEARCH )
INSTITUTE; LOS PALOS ONCOLOGY      )
AND HEMATOLOGY; CAPITOL               )
HEMATOLOGY/ONCOLOGY; NORTH       )
VALLEY HEMATOLOGY ONCOLOGY      )
MEDICAL GROUP; PACIFIC                    )
HEMATOLOGY AND ONCOLOGY          )
ASSOCIATES; PALO ALTO MEDICAL      )
FOUNDATION,                                    )
                                                   )
                Defendants;                     )
                                                   )
                                                   )
UNITED STATES OF AMERICA,             )
ex rel.  DON HANKS, and                     )
STATE OF DELAWARE,                        )
ex rel.  DON HANKS,                          )
                                                   )
                Plaintiffs,                       )
                                                   )
        v.                                         )
                                                   )
AMGEN, INC.; MEDICAL ONCOLOGY   )
HEMATOLOGY CONSULTANTS, P.A.,     )
                                                   )
                Defendant;                      )
                                                   )
                                                   )
UNITED STATES OF AMERICA,             )
ex rel.  DON HANKS, and                     )
DISTRICT OF COLUMBIA,                    )
ex rel.  DON HANKS,                          )
                                                   )
                Plaintiffs,                       )
                                                   )
        v.                                         )
                                                   )
                                                   )

AMGEN, INC.; GEORGE WASHINGTON    )
UNIVERSITY MEDICAL FACULTY        )
ASSOCIATES, INC.,                 )
                                  )
                Defendant;        )
                                  )
                                  )
UNITED STATES OF AMERICA,         )
ex rel.  DON HANKS, and           )
STATE OF FLORIDA,                 )
ex rel.  DON HANKS,               )
                                  )
                Plaintiffs,       )
                                  )
        v.                        )
                                  )
AMGEN, INC.; FLORIDA CANCER       )
SPECIALISTS; GULFCOAST ONCOLOGY   )
ASSOCIATES; INTEGRATED            )
COMMUNITY ONCOLOGY NETWORK,       )
LLC.; ONCOLOGY HEMATOLOGY         )
RADIATION CARE, LLC d/b/a ADVANCE )
MEDICAL SPECIALISTS; PALM BEACH   )
CANCER INSTITUTE; HEMATOLOGY      )
AND ONCOLOGY CONSULTANTS;         )
FLORIDA HEMATOLOGY ONCOLOGY       )
SPECIALISTS; HEMATOLOGY AND       )
ONCOLOGY ASSOCIATES OF THE        )
TREASURE COAST; MID FLORIDA       )
HEMATOLOGY AND ONCOLOGY           )
CENTERS; PASCO HERNANDO           )
ONCOLOGY ASSOCIATES, P.A.;        )
REGIONAL CONSULTANTS IN           )
HEMATOLOGY AND ONCOLOGY; BOCA     )
RATON COMMUNITY HOSPITAL, INC.;   )
CANCER INSTITUTE OF FLORIDA, P.A.; )
and SOUTH FLORIDA ONCOLOGY        )
HEMATOLOGY; COASTAL ONCOLOGY,     )
PL; ONCOLOGY PHYSICIANS; STUART   )
ONCOLOGY; NEIL FINKLER AND        )
ROBERT HOLLOWAY, M.D.S.; AYUB,    )
SOKOI, MATZKOWITZ AND             )
SENNABAUM D/B/A NEW HOPE          )
CANCER CENTER; HEMATOLOGY AND     )
MEDICAL ONCOLOGY OF SOUTHERN      )

PALM BEACH COUNTY; DAVID )
DRESDNER, M.D., )
)
        Defendants; )
)
)
UNITED STATES OF AMERICA, )
ex rel.  DON HANKS, and )
STATE OF GEORGIA, )
ex rel.  DON HANKS, )
)
        Plaintiffs, )
)
     v. )
)
AMGEN, INC.; GEORGIA CANCER )
SPECIALISTS; NORTHWEST GEORGIA )
ONCOLOGY CENTERS; AUGUSTA )
ONCOLOGY ASSOCIATES; CENTRAL )
GEORGIA CANCER CARE; NORTHEAST )
GEORGIA CANCER CARE; SOUTHEAST )
GEORGIA HEMATOLOGY/ONCOLOGY; )
SOUTHEASTER GYNECOLOGIC )
ONCOLOGY; THE LONGSTREET CLINIC, )
P.C., )
)
        Defendants; )
)
)
UNITED STATES OF AMERICA, )
ex rel.  DON HANKS, and )
STATE OF HAWAI'I, )
ex rel.  DON HANKS, )
)
        Plaintiffs, )
)
     v. )
)
AMGEN, INC.; ONCARE HAWAII, INC., )
)
        Defendants; )
)
)
UNITED STATES OF AMERICA, )
ex rel.  DON HANKS, and )

STATE OF ILLINOIS,                               )
ex rel.  DON HANKS,                              )
                                                 )
              Plaintiffs,                         )
                                                 )
      v.                                          )
                                                 )
AMGEN, INC.; ONCOLOGY-                           )
HEMATOLOGY ASSOCIATES OF                         )
CENTRAL ILLINOIS; PRAIRIE                        )
ONCOLOGY MANAGEMENT SERVICES, )
LLC; INTERMED ONCOLOGY;                          )
NORTHWEST ONCOLOGY AND                           )
HEMATOLOGY; NORTHWESTERN                         )
MEDICAL FACULTY FOUNDATION;                      )
JOLIET ONCOLOGY HEMATOLOGY                       )
ASSOCIATES, INC.; and FOX VALLEY                 )
HEMATOLOGY AND ONCOLOGY, LTD.; )
MEDICAL ARTS ASSOCIATES, LTD.,                   )
NORTHSHORE ONCOLOGY-                             )
HEMATOLOGY ASSOCIATES, LTD.;                     )
EDWARD CANCER CENTER;                            )
ASSOCIATES IN MEDICAL ONCOLOGY, )
                                                 )
              Defendants;                         )
                                                 )
                                                 )
UNITED STATES OF AMERICA,                        )
ex rel.  DON HANKS, and                          )
STATE OF INDIANA,                                )
ex rel.  DON HANKS,                              )
                                                 )
              Plaintiffs,                         )
                                                 )
      v.                                          )
                                                 )
AMGEN, INC.; MICHIANA                            )
HEMATOLOGY-ONCOLOGY, INC.;                       )
HEMATOLOGY-ONCOLOGY OF                           )
INDIANA, P.C.; ONCOLOGY                          )
HEMATOLOGY ASSOCIATES OF SOUTH )
WEST INDIANA; CANCER HEALTH                      )
TREATMENT CENTERS, P.C.; FORT                    )
WAYNE MEDICAL ONCOLOGY AND                       )
HEMATOLOGY; AMERICAN HEALTH                      )

NETWORK HEMATOLOGY )
ASSOCIATES; CANCER CARE CENTER, )
INC.; ARNETT CANCER CARE; AP. AND )
S. CLINIC, LLC; MEDICAL )
CONSULTANTS; AMERICAN HEALTH )
NETWORK; INTERNAL MEDICINE )
ASSOCIATES, )
 )
          Defendants; )
 )
 )
UNITED STATES OF AMERICA, )
ex rel.  DON HANKS, and )
STATE OF LOUISIANA, )
ex rel.  DON HANKS, )
 )
          Plaintiffs, )
 )
    v. )
 )
AMGEN, INC.; ONCOLOGY RX; )
LOUISIANA ONCOLOGY ASSOCIATES; )
LOUISIANA HEMATOLOGY ONCOLOGY )
ASSOCIATES, )
 )
          Defendants; )
 )
 )
UNITED STATES OF AMERICA, )
ex rel.  DON HANKS, and )
COMMONWEALTH OF )
MASSACHUSETTS, )
ex rel.  DON HANKS, )
 )
          Plaintiffs, )
 )
    v. )
 )
AMGEN, INC.; BERKSHIRE )
HEMATOLOGY ONCOLOGY, P.C., )
 )
          Defendants; )
 )
 )
 )

UNITED STATES OF AMERICA,              )
ex rel.  DON HANKS, and                )
STATE OF MICHIGAN,                     )
ex rel.  DON HANKS,                    )
                                       )
                Plaintiffs,            )
                                       )
         v.                            )
                                       )
AMGEN, INC.; CANCER AND                )
HEMATOLOGY CENTERS OF WESTERN )
MICHIGAN; CANCER CARE                  )
ASSOCIATES; THE OAKLAND MEDICAL )
GROUP; GREAT LAKES CANCER              )
MANAGEMENT SPECIALISTS; SINGH          )
AND ARORA ONCOLOGY                     )
HEMATOLOGY, P.C.; GENESSEE             )
CANCER AND BLOOD DISEASE               )
TREATMENT CENTER, INC.;                )
ONCOLOGY CARE ASSOCIATES; WEST )
MICHIGAN CANCER CENTER;                )
MICHIGAN HEMATOLOGY ONCOLOGY, )
P.C.; HEMATOLOGY ONCOLOGY              )
CONSULTANTS; and NEWLAND               )
MEDICAL ASSOCIATES; ANN ARBOR          )
HEMATOLOGY ONCOLOGY                    )
ASSOCIATES, P.C.; GENESEE              )
HEMATOLOGY-ONCOLOGY, P.C.,             )
                                       )
                Defendants;            )
                                       )
                                       )
UNITED STATES OF AMERICA,              )
ex rel.  DON HANKS, and                )
STATE OF NEW MEXICO,                   )
ex rel.  DON HANKS,                    )
                                       )
                Plaintiffs,            )
                                       )
         v.                            )
                                       )
AMGEN, INC.; NEW MEXICO                )
ONCOLOGY HEMATOLOGY                    )
CONSULTANTS,                           )
                                       )

Defendants;                              )
                                         )
                                         )
UNITED STATES OF AMERICA,                )
ex rel.  DON HANKS, and                  )
STATE OF NEW JERSEY,                     )
ex rel.  DON HANKS,                      )
                                         )
                Plaintiffs,              )
                                         )
        v.                               )
                                         )
AMGEN, INC.; MEDICAL ONCOLOGY-           )
HEMATOLOGY SPECIALISTS;                  )
HEMATOLOGY-ONCOLOGY                      )
ASSOCIATES OF NORTHERN NEW               )
JERSEY; HEMATOLOGY-ONCOLOGY OF )
CENTRAL NEW JERSEY; COOPER               )
CANCER INSTITUTE; SOUTHERN               )
ONCOLOGY-HEMATOLOGY                      )
ASSOCIATES, P.A.; MEDICAL                )
DIAGNOSTIC ASSOCIATES; KENNETH           )
D. HAHUM, M.D.; HUNTERDON                )
HEMATOLOGY ONCOLOGY GROUP;               )
PRINCETON MEDICAL GROUP;                 )
CENTRAL JERSEY ONCOLOGY                  )
CENTER, P.A.; ATLANTIC                   )
HEMATOLOGY ONCOLOGY                      )
ASSOCIATES; HOPE COMMUNITY               )
CANCER CENTER; HEMATOLOGY                )
ONCOLOGY ASSOCIATES OF NEW               )
JERSEY,                                  )
                                         )
                Defendants;              )
                                         )
                                         )
UNITED STATES OF AMERICA,                )
ex rel.  DON HANKS, and                  )
STATE OF NEW YORK,                       )
ex rel.  DON HANKS,                      )
                                         )
                Plaintiffs,              )
                                         )
        v.                               )
                                         )

AMGEN, INC.; NORTH SHORE                    )
HEMATOLOGY ONCOLOGY                         )
ASSOCIATES, P.C.; BROOME                    )
ONCOLOGY; HEMATOLOGY                        )
ONCOLOGY ASSOCIATES OF CENTRAL )
NEW YORK, P.C.; HUDSON VALLEY               )
HEMATOLOGY ONCOLOGY; QUEENS                 )
LONG ISLAND MEDICAL GROUP, P.C.;            )
PARK SLOPE MEDICINE; BUFFALO                )
MEDICAL GROUP; and CENTURY                  )
MEDICAL ASSOCIATES; SOUTH SHORE )
HEMATOLOGY ONCOLOGY                         )
ASSOCIATES; TOMAO, MARINO AND               )
MCNELIS, M.D.S. DEPARTMENT OF               )
MEDICINE MEDICAL SERVICE GROUP )
AT SUNY HSC, D/B/A UNIVERSITY               )
PHYSICIANS; HEMATOLOGY                      )
ONCOLOGY ASSOCIATES OF WESTERN )
SUFFOLK; HEMATOLOGY AND                     )
MEDICAL ONCOLOGY; HEMATOLOGY- )
ONCOLOGY ASSOCIATES OF                      )
ROCKLAND,                                   )
                                            )
                Defendants;                 )
                                            )
                                            )
UNITED STATES OF AMERICA,                   )
ex rel.  DON HANKS, and                     )
STATE OF NEVADA,                            )
ex rel.  DON HANKS,                         )
                                            )
                Plaintiffs,                 )
                                            )
        v.                                  )
                                            )
AMGEN, INC.; NEVADA CANCER                  )
CENTER; CANCER AND BLOOD                    )
SPECIALISTS OF NEVADA,                      )
                                            )
                Defendants;                 )
                                            )
                                            )
UNITED STATES OF AMERICA,                   )
ex rel.  DON HANKS, and                     )
STATE OF OKLAHOMA,                          )
ex rel.  DON HANKS,                         )

|                                                    |     |
|----------------------------------------------------|-----|
| Plaintiffs,                                        | )   |
|                                                    | )   |
| v.                                                 | )   |
|                                                    | )   |
| AMGEN, INC.; OKLAHOMA ONCOLOGY                     | )   |
| AND HEMATOLOGY ASSOCIATES, INC.                   | )   |
| d/b/a CANCER CARE ASSOCIATES;                     | )   |
| OKLAHOMA ONCOLOGY                                 | )   |
| INCORPORATED,                                     | )   |
|                                                    | )   |
| Defendants;                                        | )   |
|                                                    | )   |
|                                                    | )   |
| UNITED STATES OF AMERICA,                         | )   |
| ex rel.  DON HANKS, and                           | )   |
| STATE OF TENNESSEE,                               | )   |
| ex rel.  DON HANKS,                               | )   |
|                                                    | )   |
| Plaintiffs,                                        | )   |
|                                                    | )   |
| v.                                                 | )   |
|                                                    | )   |
| AMGEN, INC.; TENNESSEE ONCOLOGY,                  | )   |
| PLLC; THE WEST CLINIC; TENNESSEE                  | )   |
| CANCER SPECIALISTS; BOSTON                        | )   |
| BASKIN CANCER GROUP; KINGSPORT                    | )   |
| HEMATOLOGY-ONCOLOGY                               | )   |
| ASSOCIATES; THOMPSON ONCOLOGY                     | )   |
| GROUP; CHATTANOOGA ONCOLOGY                       | )   |
| HEMATOLOGY ASSOCIATES; and EAST                   | )   |
| TENNESSEE HEMATOLOGY                              | )   |
| ONCOLOGY ASSOCIATES; TIMOTHY                      | )   |
| PANELLA, M.D. D/B/A UNIVERSITY                    | )   |
| CANCER SPECIALISTS; WAHID T.                      | )   |
| HANNA, M.D.,                                      | )   |
|                                                    | )   |
| Defendants;                                        | )   |
|                                                    | )   |
|                                                    | )   |
|                                                    | )   |
| UNITED STATES OF AMERICA,                         | )   |
| ex rel.  DON HANKS, and                           | )   |
| STATE OF TEXAS,                                    | )   |
| ex rel.  DON HANKS,                               | )   |
|                                                    | )   |
| Plaintiffs,                                        | )   |

v.                                    )
                                      )
AMGEN, INC.; SOUTH TEXAS              )
ONCOLOGY AND HEMATOLOGY               )
ASSOCIATES; HOUSTON CANCER            )
CLINIC; ONCOLOGY CONSULTANTS;         )
TYLER HEMATOLOGY ONCOLOGY;            )
METROPLEX HEMATOLOGY/                  )
ONCOLOGY ASSOCIATES d/b/a             )
ARLINGTON CANCER CENTER;              )
SOUTHEAST TEXAS ONCOLOGY              )
PARTNERS; NORTHWEST CANCER            )
CENTER; and ROHIT KAPPOR, M.D., P.A.; )
TEXAS CANCER ASSOCIATES;              )
UNIVERSITY OF TEXAS AT                )
SOUTHWESTERN SIMMONS CANCER           )
CENTER; ABILENE HEMATOLOGY-           )
ONCOLOGY GROUP; LONE STAR             )
ONCOLOGY CONSULTANTS, P.A.            )
KELSEY SEYBOLD CLINIC; BLOOD AND      )
CANCER CENTER OF EAST TEXAS;          )
COASTAL BEND CANCER CENTER;           )
SOUTH TEXAS INSTITUTE OF CANCER       )
AND BLOOD DISORDERS,                  )
                                      )
                   Defendants;        )
                                      )
                                      )
UNITED STATES OF AMERICA,             )
ex rel.  DON HANKS, and               )
COMMONWEALTH OF VIRGINIA              )
ex rel.  DON HANKS,                   )
                                      )
                   Plaintiffs,        )
                                      )
v.                                    )
                                      )
AMGEN, INC.; VIRGINIA CANCER          )
INSTITUTE; HEMATOLOGY ONCOLOGY        )
PATIENT ENTERPRISES (HOPE);           )
LYNCHBURG HEMATOLOGY                  )
ONCOLOGY CLINIC; PENINSULA            )
CANCER INSTITUTE; CANCER              )
OUTREACH ASSOCIATES; DANVILLE         )
HEMATOLOGY-ONCOLOGY CLINIC;           )
SHENANDOAH ONCOLOGY                   )

ASSOCIATES; DELTA                    )
HEMATOLOGY/ONCOLOGY                   )
ASSOCIATES,                          )
                                     )
        Defendants;        )
                                     )
                                     )
UNITED STATES OF AMERICA,            )
ex rel.  DON HANKS, and              )
STATE OF WISCONSIN                   )
ex rel.  DON HANKS,                  )
                                     )
        Plaintiffs,        )
                                     )
    v.                    )
                                     )
AMGEN, INC.; ONCOLOGY ALLIANCE;      )
MARSHFIELD CLINIC; FOX VALLEY        )
HEMATOLOGY AND ONCOLOGY;             )
AUROA SHEBOYGAN CLINIC; and          )
GREEN BAY ONCOLOGY LIMITED;          )
MEDICAL CONSULTANTS LIMITED,         )
                                     )
        Defendants.        )
_____)

# TABLE OF CONTENTS

I.      INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    THE PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        A.      Plaintiff/Relator. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        B.      Amgen, Inc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

        C.      Untied States Oncology. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        D.      Defendant Medical Providers by Individual States of Practice. . . . . . . . . . . . . . . 7

                Alabama Medical Providers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

                Arizona Medical Providers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

                Arkansas Medical Providers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

                California Medical Providers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

                Colorado Medical Providers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

                Connecticut Medical Providers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

                Delaware Medical Providers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

                District of Columbia Providers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

                Florida Medical Providers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

                Georgia Medical Providers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

                Hawai'i Medical Providers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

                Illinois Medical Providers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

                Indiana Medical Providers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

                Iowa Medical Providers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

**TABLE OF CONTENTS**
**(continued)**

Kansas Medical Providers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .40

Kentucky Medical Providers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .41

Louisiana Medical Providers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Maine Medical Providers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .42

Maryland Medical Providers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

Massachusetts Medical Providers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .45

Michigan Medical Providers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .46

Minnesota Medical Providers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

Mississippi Medical Providers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .51

Missouri Medical Providers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

Montana Medical Providers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

Nebraska Medical Providers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

New Jersey Medical Providers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

New Mexico Medical Providers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

New York Medical Providers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

Nevada Medical Providers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

North Carolina Medical Providers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

North Dakota Medical Providers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .66

Ohio Medical Providers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

Oklahoma Medical Providers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69

Oregon Medical Providers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .70

ii

**TABLE OF CONTENTS**
**(continued)**

Pennsylvania Medical Providers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71

South Carolina Medical Providers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 78

South Dakota Medical Providers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 80

Tennessee Medical Providers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 80

Texas Medical Providers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .83

Utah Medical Providers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 88

Virginia Medical Providers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 88

Washington Medical Providers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 91

Wisconsin Medical Providers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 92

III. FACTUAL ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 94

    A.     Overview of Relevant Amgen Drug Products and Their Market . . . . . . . . . . . . 94

    B.     Fraudulent Reporting of AWP by Amgen and Medical Providers . . . . . . . . . . . 99

    C.     Amgen Portfolio Contracts and Illegally Obtained and Concealed Discounts . . 100

    D.     The Over-Prescribing of Aranesp and other ESAs for Profit Rather than
        Medical Necessity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .103

    E.     Other Illegal Practices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .104

        1.     Tying of Amgen products . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .104

        2.     Off-Invoice discounts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .105

        3.     Use of overfill . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 106

        4.     Price protection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .107

        5.     Marketing to spread by Amgen . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .108

**TABLE OF CONTENTS**
**(continued)**

6.  Improper Financial Incentives to Medical Providers. . . . . . . . . . . . . . . 109

7.  Marketing and promotion of off-label sales by Amgen. . . . . . . . . . . . 110

F.  Defendants' Fraudulent Activities Have Threatened Public Health and
Safety . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 111

G.  Affected Federal Health Care Programs . . . . . . . . . . . . . . . . . . . . . . . . . . . . 112

COUNT ONE
Violation of False Claims Act, 31 U.S.C. § 3729(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . 115

COUNT TWO
Violation of False Claims Act, 31 U.S.C. § 3729(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . .116

COUNT THREE
Violation of California False Claims Act, Cal. Gov. Code § 12650 *et seq.* . . . . . . . . . . . . . . 117

COUNT FOUR
Violation of Delaware False Claims Act, 6 Del. Code § 1201 *et seq.* . . . . . . . . . . . . . . . . . 120

COUNT FIVE
Violation of District of Columbia Procurement Reform Amendment Act, D.C. Code
Ann. § 2-308.13 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 121

COUNT SIX
Violation of Florida False Claims Act, Fl. Stat. § 66.081 *et seq.* . . . . . . . . . . . . . . . . . . . . 123

COUNT SEVEN
Violation of Georgia False Medicaid Claims Act, O.C.G.A. § 49-4-168 *et seq.* . . . . . . . . . . . 125

COUNT EIGHT
Violation of Hawai'i False Claims Act, Haw. Rev. Stat. § 661-21 *et seq.* . . . . . . . . . . . . . . . 127

COUNT NINE
Violation of Illinois Whistleblower Reward and Protection Act, 740 Ill. Comp. Stat.
§ 173/1 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 129

iv

# TABLE OF CONTENTS
## (continued)

**COUNT TEN**
Violation of Indiana False Claims and Whistleblower Act, In. Code 5-11-5.5 *et seq.* . . . . . . . . 131

**COUNT ELEVEN**
Violation of Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat.
§ 46: 437 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .133

**COUNT TWELVE**
Violation of Massachusetts False Claims Law, Mass. Gen. Laws Ch. 12 § 5(B) *et seq.* . . . . . . 134

**COUNT THIRTEEN**
Violation of Michigan Medicaid False Claims Act, M.C.L. 400.601 *et seq.* . . . . . . . . . . . . . . . 136

**COUNT FOURTEEN**
Violation of New Mexico Medicaid False Claims Act, N.M. Stat. § 27-2F-1 *et seq.* . . . . . . . . 138

**COUNT FIFTEEN**
Violation of New Jersey False Claims Act, N.J. Stat. § 2A:32C-1 *et seq.* . . . . . . . . . . . . . . . . 140

**COUNT SIXTEEN**
Violation of New York False Claims Act, N.Y. Stat. Fin. § 187 *et seq.* . . . . . . . . . . . . . . . . . .142

**COUNT SEVENTEEN**
Violation of Nevada False Claims Act, Nev. Rev. Stat. § 357.040 *et seq.* . . . . . . . . . . . . . . . . .144

**COUNT EIGHTEEN**
Violation of Oklahoma Medicaid False Claims Act, 63 OK. Stat. § 5053, *et seq.* . . . . . . . . . . .145

**COUNT NINETEEN**
Violation of Tennessee Medicaid False Claims Act, Tenn. Stat. § 75-1-181 *et seq.* . . . . . . . . . 147

**COUNT TWENTY**
Violation of Texas Medicaid Fraud Prevention Law, Tex. Hum. Res. Code § 36.002 *et seq.* . . .149

**COUNT TWENTY-ONE**
Violation of Virginia False Claims Act, Va. Code Ann. § 8.01-216.3(a) *et seq.* . . . . . . . . . . . . 151

**COUNT TWENTY-TWO**
Violation of Wisconsin False Claims for Medical Assistance Act , Wis. Stat.
§ 20.931, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .153

v

**TABLE OF CONTENTS**
**(continued)**

COUNT TWENTY-THREE
Violation of 31 U.S.C. § 3730(h). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .154

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .155

DEMAND FOR A JURY TRIAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .160

## I.      INTRODUCTION.

1.      This is an action brought by Relator, Don Hanks, on behalf of the United States of America, to recover damages and civil penalties against Defendants, Amgen Inc. ("Amgen") and doctors, medical practices and hospitals listed above and named herein ("Defendant Medical Providers") pursuant to the Federal Civil False Claims Act. Title 31 U.S.C. §§ 3729 et seq., ("FCA").

2.      Defendant Amgen has defrauded government healthcare programs through fraudulent activities including but not limited to:  falsely representing the prices of its drugs; engaging in improper sales and marketing schemes such as promoting off-label sales and "marketing the spread;" and paying illegal kickbacks to physicians.

3.      The Defendant Medical Providers knowingly have profited from Amgen's fraudulent activities by purchasing and administering Amgen's drugs in exchange for kickbacks from Amgen and by submitting false and fraudulent claims for reimbursement to government healthcare programs.  Defendant Medical Providers have defrauded the United States of America – and other third-party payers – most glaringly by receiving these kickbacks from Amgen in the form of rebate checks for purchases of Amgen products.  Defendant Medical Providers never returned or reimbursed third-party payers including the Medicare and Medicaid programs of the United States of America for the rebates received from Amgen.  Defendant Medical Providers were reimbursed as to their use of Amgen products in a medical setting by third-party payers including the Medicare and Medicaid programs.  Defendant Medical Providers were then provided rebates of as much as 60 percent of the purchase price by Amgen through its rebates to these initial purchasers of Amgen products.  As a result of the rebates, Defendant Medical Providers each were reimbursed by third party payers for Aranesp, Epogen, Neulasta, and/or

Neupogen at a rate far higher than their actual costs for purchasing these drugs.  Medicaid and

Medicare were never reimbursed by Defendant Medical Providers as a result of this

overpayment.  Indeed, Medicaid and Medicare were never even alerted to the fact that their

payments to Defendant Medical Providers for the purchase of Amgen products was based upon a

price that was fraudulent, given these kickbacks in the form of rebates.

4.     The FCA provides that any person who submits a false claim to the government is

liable for a civil penalty of between $5,500 and $11,000 for each such claim, and three times the

amount of the damages sustained by the government. The Act permits persons having

information regarding a false or fraudulent claim against the government to bring an action on

behalf of the government and to share in any recovery.  Pursuant to 31 U .S.C. § 3730(b )(2), this

complaint must be filed *in camera* and under seal, without service on the defendant.  The

complaint remains under seal while the government conducts an investigation of the allegations

in the complaint and determines whether to join the action.


## II.     JURISDICTION AND VENUE.

5.     This Court has jurisdiction over the subject matter of this action pursuant to Title

31 U.S.C. §§ 3730(b) and 3732(a), which specifically confer jurisdiction on this Court for actions

brought pursuant to The False Claims Act.

6.     This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. §

3732(a), which authorizes nationwide service of process.  Amgen and at least one of the

Defendant Medical Providers can be found in, resides in, or have transacted business in the

Eastern District of New York and in the State of New York.

7.    Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) because Defendants can be found in, resides in, or has transacted business in the Eastern District of New York, and at least some of the alleged acts have occurred in this District.

8.    No allegation set forth in this Complaint is based on a public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional,

administrative, or General Accounting Office report, hearing audit, or investigation, or from the news media.

## III.   THE PARTIES.

### A.    Plaintiff/Relator.

9.    Plaintiff/Relator, Don Hanks, is a resident of Ponte Vedra Beach, St. Johns County, Florida and was employed as a sales representative by Amgen for nineteen years. Amgen terminated Mr. Hanks' employment in May of 2007.  Through his employment with Amgen and Amgen USA, Inc., Mr. Hanks was able to obtain personal knowledge of the allegations contained herein.

### B.    Amgen, Inc.

10.    Defendant Amgen, headquartered in Thousand Oaks, Ventura County, California, is a large company in the biotechnology industry.  Amgen's products are used for supportive cancer care as well as for the treatment of anemia, rheumatoid arthritis and other autoimmune diseases.  In 2006, Amgen reported revenues of $14.3 billion.

3

11.     In 2005, the total worldwide market for Amgen's erythropoiesis-stimulating agents was $10 billion with Amgen revenues – profits – from these drugs at greater than 60% of those sales.  In 2006, 2007, 2008, 2009 and 2010 Amgen had cumulative reported revenues greater than $45 billion from erythropoiesis-stimulating agents in the United States alone.

12.     The majority of Amgen's revenues are from the "blockbuster" products Aranesp, Epogen, Neupogen and Neulasta. Amgen's domestic  revenues in these products by year are:

2002 – Aranesp/Epogen $2.68 billion, Neulasta/Neupogen $1.84 billion, or a total of $5.52 billion;

2003 – Aranesp/Epogen $3.979 billion, Neulasta/Neupogen $2.522 billion, or a total of $6.501 billion;

2004 – Aranesp/Epogen $5.074 billion, Neulasta/Neupogen $2.915 billion, or a total of $7.989 billion;

2005 – Aranesp/Epogen $5.608 billion, Neulasta/Neupogen $3.504 billion, or a total of $9.112 billion;

2006 – Aranesp/Epogen $5.301 billion, Neulasta/Neupogen $3.100 billion, or a total of $8.401 billion;

2007 – Aranesp/Epogen $4.643 billion, Neulasta/Neupogen $3.200 billion, or a total of $7.843 billion.

13.     With the approval of Aranesp in 2001, Amgen, began a process of seeking to persuade medical providers to use Aranesp.  In particular, Amgen sought to sought to induce medical providers to replace Procrit with Aranesp.  Amgen's marketing tactics, in short, began to amount to a conspiracy with medical providers to fraudulently obtain greater reimbursement from third-party payers including Medicaid and Medicare.  These fraudulent payments were

made by way of discounts, rebates, and co-pay payments that induced doctors to prescribe Amgen products, but to neither inform nor reimburse Medicaid or Medicare of these additional payments received.

### C.     Untied States Oncology.

14.    United States Oncology Specialty, LP ("USOS") is a Delaware Limited Liability Partnership based in Fort Worth, Texas.  USOS is a specialty distribution center service of US Oncology, Inc. In 2005, US Oncology, Inc. launched USOS, according to a U.S. Oncology press release, to "facilitate the seamless flow of oncology pharmaceuticals directly from the pharmaceutical manufacturers to its nationwide network of practices."

15.    USOS purchases vast quantities of ESAs in addition to Neupogen and Neulasta. In 2006, USOS had purchases of Amgen products peaked in excess of approximately $1 billion per year.

16.    USOS served as a Group Purchasing Organizing ("GPO") for the approximately 1,000 doctors affiliated with U.S. Oncology, Inc.  GPO served to pool the purchasing power of their member doctors and medical providers and obtained larger rebates from Amgen than were otherwise offered to individual medical providers.  These contracts were often kept confidential, such that the details were not reported to CMS/Medicare.  As a result, the pricing for Amgen products to these GPO were not factored into AWP or ASP for Amgen products in the reimbursement calculations of Medicare.

17.    USOS suppled the affected products to the following United States Oncology, Inc. medical providers for the Central Region:  Arch Medical Services, Inc.; Arkansas Oncology Associates, P.A.; Cancer Care Network of South Texas, P.A.; Central Indiana Cancer Centers

Dayton Oncology & Hematology, P.A.;  Hematology Oncology Associates of Illinois, L.L.C.

Kansas City Cancer Centers; Minnesota Oncology Hematology, P.A.; Missouri Cancer

Associates; and Northwest Medical Specialists, P.C.

18.    USOS suppled the affected products to the following United States Oncology, Inc.

medical providers for the East Region:  Asheville Hematology & Oncology Associates, P.A.;

Cancer Centers of Florida, P.A.; Cancer Centers of North Carolina; Cancer Centers of The

Carolinas; Durham Regional Hematology Oncology; Fairfax-Northern Virginia Hematology-

Oncology, P.C.; Flavio Kruter, M.D., P.A.; Florida Cancer Institute, P.A.; Interlakes Oncology

Hematology, P.C.; Maryland Oncology Hematology, P.A.; New York Oncology Hematology,

P.C.; Northwestern Connecticut Onc/Hema. Assoc.; Ocala Oncology Center, P.L.; Oncology &

Hematology Associates Of Southwest Virginia, Inc.; South Florida Oncology and Hematology

Consultants; Venango Oncology Hematology Association; and Virginia Oncology Associates.

19.    USOS suppled the affected products to the following United States Oncology, Inc.

medical providers for the Southwest Region:  Arizona Oncology Associates, P.C.; Cancer Care

Associates; Rocky Mountain Cancer Centers, LLP; and Texas Oncology, P.A.

20.    USOS suppled the affected products to the following United States Oncology, Inc.

medical providers for the West Region:  Cancer Care Northwest, P.S.; Comprehensive Cancer

Centers of Nevada; Northwest Cancer Specialists, P.C.; Oncology Associates of Oregon, P.C.;

and Washington Cancer Centers, P.C.

21.    USOS suppled the affected products to the following United States Oncology, Inc.

medical providers for the "SL" Region:  Advanced Care & Treatment Medical Group, SC;

Alice C. Reier, M.D.; Alpine Hematology - Oncology, P.C.; Ashland-Belllefonte Cancer Center

Associates In Oncology-Hematology, P.C.; Beckley Oncology Associates, Inc.; Buenaventura

Medical Group, Inc.; Cancer Associates Of Monterey Peninsula; Cancer Treatment Center Of

Oklahoma; Central Texas Oncology Associates, P.A.; Crossville Medical Oncology; Edward

Kaplan, MD & Associates; Facey Medical Foundation; Great Falls Clinic; Gynecologic

Oncology Associates, P.A.; Hannibal Clinic Operations, LLC; Hematology-Oncology

Consultants, P.A.; Highlands Cancer Center; Iowa Cancer Care; Larry G. Strieff, M.D.; Little

Rock Hematology Oncology Associates, P.A.; Mankato Clinic, Ltd.; Medical Oncology

Associates, P.S.; Melbourne Internal Medicine Associates; Midlands Regional Cancer Center,

PC; Midwest Center For Hematology/Oncology, SC; New Mexico Cancer Care Associates;

Oncology Hematology West, P.C.; Oncology-Hematology Specialists, PA; Palo Alto Medical

Foundation; Piedmont Hematology-Oncology Associates, PLLC; Pronger Smith Medical Care

Sacramento Center for Hematology & Medical Oncology, Inc.; Springfield Clinic, LLP; The

Medical Associates Clinic, P.C.; The Midsouth Cancer Center; Tri-State Medical Center; Valley

Internal Medicine, Inc. P.S.;  WVVA Health Care Alliance, P.C.;

22.     USOS received rebates based upon its own separate "one off" contract with

Amgen that included additional "kickbacks" for certain required market share milestones by the

GPO in Amgen products.  USOS also received larger kickbacks in the form of rebates based

upon its purchases of Amgen products.

**D.      Defendant Medical Providers by Individual States of Practice.**

**Alabama Medical Providers**

23.     Defendant Montgomery Cancer Center is located at 4145 Carmichael Road,

Montgomery, AL 36106.  Defendant Montgomery Cancer Center had purchases of Amgen

products amounting to approximately $6,319,824 in the Fourth Quarter, 2006 – receiving a

rebate from Defendant Amgen amounting to approximately fifty percent of all purchases as a

Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of

Amgen products and received comparable rebates for said products during the statutory period.

24.    Defendant Oncology Specialties, P.C. is located at 3601 CCI  Drive, Huntsville,

AL 35805.  Defendant Oncology Specialities, P.C. had purchases of Amgen products amounting

to approximately $6,104,312 in the Fourth Quarter, 2006 – receiving a rebate from Defendant

Amgen amounting to approximately fifty percent of all purchases as a Platinum Amgen

customer.  Defendant, furthermore, made other comparable purchases of Amgen products and

received comparable rebates for said products during the statutory period.

25.    Defendant Birmingham Hematology - Oncology Associates is located at 810 St.

Vincents Drive, Birmingham, AL 35205.  Defendant Birmingham Hematology had purchases of

Amgen products amounting to approximately $4,166,193 in the Fourth Quarter, 2006 – receiving

a rebate from Defendant Amgen amounting to approximately fifty percent of all purchases as a

Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of

Amgen products and received comparable rebates for said products during the statutory period.

26.    Defendant Southeast Cancer Network is located at 1410 McFarland Boulevard,

North, Tuscaloosa, AL 35406.  Defendant Southeast Cancer Network had purchases of

approximately $3,777,946 in the Fourth Quarter, 2006 – receiving a rebate from Defendant

Amgen amounting to approximately fifty percent of all purchases as a Platinum Amgen

customer.  Defendant, furthermore, made other comparable purchases of Amgen products and

received comparable rebates for said products during the statutory period.

27.     Defendant the Kirklin Oncology Clinic is located at 2000 6th Avenue South, Birmingham, AL  35233.  Defendant the Kirklin Oncology Clinic purchased approximately $1,890,382 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

28.     Defendant Radiation Therapy Oncology, P.C. is located at 6701 Airport Ste T6, Mobile,  AL 36608.  Defendant Radiation Therapy Oncology, P.C. purchased approximately $1,777,211 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

29.     Defendant Northwest Alabama Cancer Center is located at 101 Dr. W. H. Blake Jr. Drive, Muscle Shoals, AL 35661.  Defendant Northwest Radiation Therapy Oncology, P.C. purchased approximately $1,234,404 worth of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounts to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

**Arizona Medical Providers**

30.     Defendant Palo Verde Hematology-Oncology, Inc. is located at 5601 West Eugie Avenue, Suite 106, Glendale, AZ 85304.  Defendant Palo Verde Hematology-Oncology, Inc.

bought approximately $5,421,998 in Amgen products in the Fourth Quarter of 2006 – receiving

a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a

Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of

Amgen products and received comparable rebates for said products during the statutory period.

   31. Defendant Ironwood Cancer and Research Centers is located at 695 South Dobson

Road, Chandler, AZ 85224.  Defendant Ironwood Cancer and Research Centers purchased

approximately $3,928,532 in Amgen products in the Fourth Quarter of 2006 – receiving a rebate

from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum

Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products

and received comparable rebates for said products during the statutory period.

   32. Defendant Desert Oncology is located at 1432 South Dobson Road, Suite 106,

Mesa, AZ  85202.  Defendant Desert Oncology purchased approximately $2,317,960 worth of

Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen

amount to approximately fifty percent of all purchases as a Platinum Amgen customer.

Defendant, furthermore, made other comparable purchases of Amgen products and received

comparable rebates for said products during the statutory period.

   33. Defendant Arizona Center for Hematology and Oncology, P.C. is located at 5750

West Thunderbird Road, Suite C-300, Glendale, AZ 85306.  Defendant Arizona Center for

Hematology and Oncology, P.C. bought approximately $2,278,599 in Amgen products for the

Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amount to approximately

fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made

other comparable purchases of Amgen products and received comparable rebates for said

products during the statutory period.

34.     Defendant Southwest Hematology Oncology, P.C. is located at 11209 North Tatum Boulevard, Suite 260, Phoenix, AZ 85028.  Defendant Southwest Hematology Oncology, P.C. purchased approximately $2,230,130 of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

35.     Defendant Arizona Medical Clinic is located at13640 North Plaza Del Rio Boulevard, Peoria, AZ 85381.  Defendant Arizona Medical Clinic purchased approximately $1,218,331 of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

36.     Defendant Arizona Hematology/Oncology - Northwest Cancer Center is located at 1891 West Orange Grove Road,  Building 2, Tucson, AZ 85704.  Defendant Arizona Hematology/Oncology - Northwest Cancer Center purchased approximately $1,154,915 of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

**Arkansas Medical Providers**

37.     Defendant Little Rock Hematology-Oncology Associates is located at 9500 Lile Drive, Little Rock, AR  72205.  Defendant Little Rock Hematology-Oncology Associates purchased approximately $3,017,042 of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

38.     Defendant Highlands Oncology Group, P.A. is located at 3232 North Hills Boulevard, Fayetteville, AR 72703.  Defendant Highlands Oncology Group, P.A. purchased approximately $1,851,030 of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

**California Medical Providers**

39.     Defendant Redwood Regional Oncology is located at 121 Sotoyome Street, Suites 101 and 203, Santa Rosa, CA  95405.  Defendant Redwood Regional Oncology bought approximately $5,281,904 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

40.     Defendant Tower Hematology Oncology Medical Group is located at 9090 Wilshire Boulevard, Suite 200, Beverly Hills, CA 90211.  Defendant Tower Hematology

Oncology Medical Group purchased approximately $3,346,815 of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

41.     Defendant Cancer Care Associates of Fresno Medical Group, Inc. is located at 1791 East Fir Avenue, Fresno, CA 93720.  Defendant Cancer Care Associates bought approximately $3,099,500 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

42.     Defendant Pacific Oncology Hematology Associates, Inc. - La Jolla is located at 9850 Genesee Avenue, Suite 830, La  Jolla, CA 92037.  Defendant Pacific Oncology Hematology Associates, Inc. purchased approximately $3,007,682 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

43.     Defendant Regents of University of California is located at10833 Le Conte Ave. #16-135, Los Angeles, CA 90095.  Defendant Regents of the University of California bought approximately $2,676,496 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a

Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

44.    Defendant Pacific Shores Medical Group, Inc. is located at 1043 Elm Avenue, Suite 104, Long Beach, CA 90813.  Defendant Pacific Shores Medical Group bought about $2,120,776 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

45.    Defendant Santa Barbara Hematology-Oncology Medical Group, Inc. is located at 540 West Pueblo Street, Santa Barbara, CA 93105.  Defendant Santa Barbara Hematology-Oncology Medical Group, Inc. bought approximately $1,795,297 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

46.    Defendant The Breast Care Center - Oncology Center is located at 230 South Main Street, Suite 100, Orange, CA 92868.  Defendant The Breast Care Center - Oncology Center purchased about $1,536,055 in Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

47.    Defendant East Bay Medical Oncology Hematology Associates is located at 3220 Lone Tree Way, Suite 100, Antioch, CA 94509.  Defendant East Bay Medical Oncology

Hematology Associated bought about $1,367,565worth of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

48.     Defendant Orange Coast Oncology is located at 4000 West Pacific Coast Highway, Suite 3e, Newport Beach, CA 92663.  Defendant Orange Coast Oncology purchased around $,2,282,887 in Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

49.     Defendant Cancer Care Associates Medical Group, Inc. is located at 514 North Prospect Avenue, Fourth Floor, Redondo Beach, CA  90277.  Defendant Cancer Care Associates Medical Group, Inc. bought approximately $1,976,722 worth of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

50.     Defendant Ventura County Hematology-Oncology Specialists, Inc. is located at 1700 North Rose Avenue, Suite 320, Oxnard, CA  93030.  Defendant Ventura County Hematology-Oncology Specialists, Inc. purchased around $1,665,963 worth of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant,

furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

51.     Defendant Valley Medical Oncology Consultants is located at 20055 Lake Chabot Road, Suite 130, Lake Chabot Building, Castro Valley, CA 94546.  Defendant Valley Medical Oncology Consultants purchased approximately $1,584,378 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

52.     Defendant Wilshire Oncology Medical Group, Inc. is located at 1910 Royalty Drive, Pomona, CA 91767.  Defendant Wilshire Oncology Medical Group bought approximately $1,545,668 of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

53.     Defendant North County Oncology is located at 3617 Vista Way, Oceanside, CA 92056.  Defendant North County Oncology purchased about $1,544,415 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

54.     Defendant Stockton Hematology Oncology is located at 2626 North California Street, Suite B, Stockton, CA 95204.  Defendant Stockton Hematology Oncology purchased

approximately $1,398,217 in Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

55.     Defendant Medical Group of North County is located at 910 Sycamore Avenue, Suite 270, Vista, CA 92081.  Defendant Medical Group of North County bought approximately $1,389,898 in Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

56.     Defendant Southbay Oncology Hematology Partners is located at 50 East Hamilton Avenue, Suite 200, Campbell, CA 95008.  Defendant Southbay Oncology Hematology Partners bought around $1,379,573 in Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

57.     Defendant Cancer Care Consultants is located at 2175 Rosaline Avenue, Redding, CA 96001.  Defendant Cancer Care Consultants purchased about $1,289,938 in Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

58.     Defendant Medical Oncology Associates of San Diego is located at 3075 Health Center Drive, Suite 102, San Diego, CA 92123.  Defendant Medical Oncology Associates of San Diego purchases about $1,272,402 in Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

59.     Defendant Hematology Oncology Medical Group of Orange County is located at 1140 West La Veta Avenue, Suite 610, St. Joseph Medical Plaza-Building, Orange, CA 92868. Defendant Hematology Oncology Medical Group of Orange County bought about $1,263,776 in Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

60.     Defendant Valley Tumor Medical Group, d/b/a Antelope Valley Cancer Center is located at 44105 15th Street West, Suite 207, Lancaster, CA 93534.  Defendant Valley Tumor Medical Group d/b/a Antelope Valley Cancer Center bought about $1,230,347 in Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

61.     Defendant The Angeles Clinic and Research Institute, 2001 Santa Monica Boulevard, Suite 560w, Santa Monica, CA 90404.  Defendant The Angeles Clinic and Research Institute purchased approximately $1,194,094 in Amgen products in the Fourth Quarter of 2006 –

receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

62.     Defendant Los Palos Oncology and Hematology is located at 505 East Romie Lane, Suite A, Salinas, CA 93901.  Defendant Los Palos Oncology and Hematology purchased about $1,187,006 in Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

63.     Defendant Capitol Hematology/Oncology is located at 2 Medical Plaza, Suite 200, Roseville, CA 95661.  Defendant Capitol Hematology/Oncology bought about $1,177,133 in Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

64.     Defendant North Valley Hematology Oncology Medical Group is located at 18300 Roscoe Boulevard, Leavey Cancer Center, First Floor, Northridge, CA 91325.  Defendant North Valley Hematology Oncology Medical Group bought around $1,114,831 worth of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

65.      Defendant Pacific Hematology and Oncology Associates is located at 2100 Webster Street, Suite 225, San Francisco, CA 94115.  Defendant Pacific Hematology and Oncology Associates purchased approximately $1,113,447 in Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

66.      Defendant Palo Alto Medical Foundation is located at 795 El Camino Real, Palo Alto, CA 94301.  Defendant Palo Alto Medical Foundation bought approximately 1,080,698 worth of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

**Colorado Medical Providers**

67.      Defendant Colorado Hematology Oncology has a place of business of 401 West Hampden Place, Suite 250, Englewood, CO 80110.  Defendant Colorado Hematology Oncology purchased approximately $1,195,581 in Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

68.     Defendant Loveland Hematology Oncology Associates is situated at 2050 North Boise, Loveland, CO 80538.  Defendant Loveland Hematology Oncology Associates had purchases valuing $1,000,490 of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

**Connecticut Medical Providers.**

69.     Defendant Medical Oncology and Hematology, P.C. is located at 1450 Chapel Street, Suite A, New Haven, CT 06511.  Defendant Medical Oncology and Hematology, P.C. bought approximately $1,623,004 worth of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

70.     Defendant Oncology Associates, P.C. is located at 85 Retreat Avenue, Hartford, CT, 06106.  Defendant Oncology Associates, P.C. purchased about $1,762,110 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

71.     Defendant Hematology Oncology P.C. is located at 34 Shelburne Road, Stamford, CT 06902.  Defendant Hematology Oncology, P.C. bought about $1,618,712 of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to

approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

72.     Defendant Eastern Connecticut Hematology and Oncology is located at 330 Washington Street, Suite 220, Norwich, CT 06360.  Defendant Eastern Connecticut Hematology and Oncology purchased approximately $1,570,891 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

### Delaware Medical Providers

73.     Defendant Medical Oncology Hematology Consultants, P.A. is located at 4701 Ogletown-Stanton Road, Suite 2200, Helen F. Graham Cancer Center, Newark, DE, 19713. Defendant Medical Oncology Hematology Associates, P.A. purchased approximately $1,534,287 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

### District of Columbia Medical Providers

74.     Defendant George Washington University Medical Faculty Associates, Inc. has a place of business of 2150 Pennsylvania Avenue NW, Washington, DC 20037.  Defendant

George Washington University Medical Faculty Associates, Inc. bought about $1,196,112 worth of Amgen products in the Fourth Quarter of 2006 – obtaining a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

**Florida Medical Providers**

75.     Defendant Florida Cancer Specialists, headquartered in Fort Myers, Florida, is the largest privately-owned Oncology/Hematology practice in Florida, with 16 offices that serve the Gulf Coast area from Brandenton to Naples.  Defendant Florida Cancer Specialists has a business address of 3840 Broadway, Fort Myers, FL 33901.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

76.     Defendant Florida Cancer Specialists purchased Amgen products in the following amounts:

2004 – $12.8 million

2005 – $13.5 million

2006 – $20.3 million

2007 – $39.2 million

77.     Since the "profit" on Neupogen in Medicare patients was greater than Neulasta off contract FCS only used Neupogen in their Medicare patients and used Neulasta in their private pay and indemnity plan patients.

78.     As a Platinum Amgen customer, Defendant Florida Cancer Specialists received a rebate or discount from Defendant Amgen amounting to approximately fifty percent of all purchases made from approximately 2004 through 2007.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

79.     Defendant Gulfcoast Oncology Associates is located in St. Petersburg, Pinellas County, Florida and specializes in hematology and medical oncology.

80.     Defendant Gulfcoast Oncology Associates made Amgen product purchases for the following  years of:

2002 – $ 3.2 million

2003 – $ 4.0 million

2004 – $13.6 million

2005 – $21.1 million

2006 – $30.1 million

2007 – $29.3 million

81.     Defendant Gulf Coast Oncology Associates has a business address of 1201 5th Avenue North, Suite 505, St. Petersburg, FL 33705.  As an Amgen Platinum customer, Defendant Gulf Coast Oncology Associates received a rebate or discount from Defendant Amgen amounting to approximately fifty percent of all purchases made from approximately 2004 through 2007.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

82.     Defendant Integrated Community Oncology Network, LLC ("ICON") through its division Florida Oncology Associates provides specialized care for patients with cancer and/or

hematological disorders in Northeast Florida. ICON has nine cancer centers in Duval, Clay, St.

Johns and Putnam counties.  ICON has a business address of 9143 Philips Highway, Suite 560,

Jacksonville, FL 32256.

83.     Defendant ICON made Amgen product purchases as follows:

2002 – $2.3 million

2003 – $13.3 million

2004 – $14.8 million

2005 – $15.4 million

2006 – $32.0 million

2007 – $27.0 million

84.     ICON had a GPO contract and a special "Large Physician Practice" ("LPP")

contract with Amgen. ICON, Florida Cancer Specialists, and Gulf Oncology Associates are elite

members of the ION ("International Oncology Network") and received even greater discounts for

these affiliations.

85.     Defendant Oncology Hematology Radiation Care, LLC d/b/a Advance Medical

Specialist is located at 8940 North Kendall Drive, #300 East, Miami, FL 33176. Defendant

Oncology Hematology Radiation Care, LLC d/b/a Advance Medical Specialist purchased

approximately $6,127,664 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate

from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum

Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products

and received comparable rebates for said products during the statutory period.

86.     Defendant Palm Beach Cancer Institute is located at 1309 North Flagler Drive,

West Palm Beach, FL 33401.  Defendant Palm Beach Cancer Institute bought about $3,683,036

in Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

87.     Defendant Hematology and Oncology Consultants is located at 2501 North Orange Avenue, Suite 381, Orlando, FL, 32804.  Defendant Hematology and Oncology Consultants purchased about $3,166,713 of Amgen's products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

88.     Defendant Florida Hematology Oncology Specialists is located at 2501 North Orange Avenue, Suite 201,Orlando, FL 32804.  Defendant Florida Hematology Oncology Specialists bought about $2,850,699 worth of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

89.     Defendant Hematology and Oncology Associates of the Treasure Coast is located at 1871 S.E. Tiffany Ave, Suite 100, Port St. Lucie, FL, 34952.  Defendant Hematology and Oncology Associates of the Treasure Coast purchased approximately $2,307,809 in Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

90.     Defendant Mid Florida Hematology and Oncology Centers, P.A. is located at 2100 West 1st Street, Sanford, FL 32771.  Defendant Mid Florida Hematology and Oncology Centers bought approximately $2,074,198 of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

91.     Defendant Pasco Hernando Oncology Associates, P.A. is situated at 14529 Cortez Blvd, Brooksville, FL 34613.  Defendant Pasco Hernando Oncology Associates, P.A. bought approximately $1,766,348 of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

92.     Defendant Regional Consultants in Hematology and Oncology is located at 1235 San Marco Boulevard, Suite 3, Jacksonville, FL 32207.  Defendant Regional Consultants in Hematology and Oncology purchased about $1,494,671 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

93.     Defendant Boca Raton Community Hospital, Inc. - Boca Raton is located at 1001 Northwest 13th Street, Suite 201,Boca Raton, FL 33486.  Defendant Boca Raton Community Hospital Inc. - Boca Raton bought about $1,211,968 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all

purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

94.     Defendant Cancer Institute of Florida, P.A. is located at 894 East Altamonte Drive, Altamonte Springs, FL 32701.  Defendant Cancer Institute of Florida, P.A. purchased approximately $1,884,415 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

95.     Defendant South Florida Oncology Hematology is situated at 603 North Flamingo Road, Suite 151, Pembroke Pines, FL 33028.  Defendant South Florida Oncology Hematology bought approximately $1,742,102 of Amgen's products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

96.     Defendant Coastal Oncology, PL, has a location of business at 325 Clyde Morris Boulevard, Suite 450, Ormond Beach, FL 32174.  Defendant Coastal Oncology, PL, purchased around $1,387,285 in Amgen's products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

97.     Defendant Oncology Physicians is located at 3253 McMullen Booth Road, Suite 100, Clearwater, FL 33761.  Defendant Oncology Physicians bought about $1,333,248 of Amgen's drugs in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

98.     Defendant Stuart Oncology has a place of business of 501 South  East Osceola Street, Suite 301, Stuart, FL 34994.  Defendant Stuart Oncology bought approximately $1,223,312 worth of Amgen's products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

99.     Defendant Neil Finkler and Robert Holloway, M.D.S. is located at 2501 North Orange Avenue, Suite 689, Orlando, FL 32804.  Defendant Neil Finkler and Robert Holloway, M.D.S. bought approximately $1,175,204 in Amgen's products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

100.     Defendant Ayub, Sokoi, Matzkowitz and Sennabaum, d/b/a New Hope Cancer Center is situated at 7651 Medical Drive, Hudson, FL 34667.  Defendant Ayub, Sokoi, Matzkowitz and Sennabaum, d/b/a New Hope Cancer Center bought around $1,152,600 worth of Amgen's products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen

amounting to approximately forty percent of all purchases as a Gold Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

101.     Defendant Hematology and Medical Oncology of Southern Palm Beach County has a business location of 2623 South Seacrest Boulevard, Suite 216, Boynton Beach, FL 33435. Defendant Hematology and Medical Oncology of Southern Palm Beach County bought around $1,012,382 in Amgen's products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

102.     Defendant David Dresdner, M.D. is situated at 1099 5th Avenue North, Suite 120, St. Petersburg, FL 33705.  Defendant David Dresdner bought around $1,004,961 of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

**Georgia Medical Providers**

103.     Defendant Georgia Cancer Specialists Administrative Annex is located at 1872 Montreal Road, Tucker, GA 30084.  Defendant Georgia Cancer Specialists Administrative Annex purchased about $7,139,213 in Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases

as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of

Amgen products and received comparable rebates for said products during the statutory period.

104.     Defendant Northwest Georgia Oncology Centers, P.C. is situated at 340

Kennestone Hospital Boulevard, Suite 200, Marietta ,GA 30060.  Defendant Northwest Georgia

Oncology Centers, P.C. bought approximately $4,035,433 worth of Amgen products in the

Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately

fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made

other comparable purchases of Amgen products and received comparable rebates for said

products during the statutory period.

105.     Defendant Augusta Oncology Associates is located at 3696 Wheeler Road,

Augusta, GA 30909.  Defendant August Oncology Associates purchased approximately

$,2,995,248 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from

Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen

customer.  Defendant, furthermore, made other comparable purchases of Amgen products and

received comparable rebates for said products during the statutory period.

106.     Defendant Central Georgia Cancer Care is located at 1062 Forsyth Street, Suite 1-

B, Macon, GA 31201.  Defendant Central Georgia Cancer Center bought about $1,982,152 worth

of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen

amount to approximately fifty percent of all purchases as a Platinum Amgen customer.

Defendant, furthermore, made other comparable purchases of Amgen products and received

comparable rebates for said products during the statutory period.

107.     Defendant Northeast Georgia Cancer Care is located at 3320 Old Jefferson Road,

Building 700, Athens, GA 30607.  Defendant Northeast Georgia Cancer Care purchased

approximately $2,117,042 of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

108.    Defendant Southeast Georgia Hematology/Oncology is situated at 1111 Glynco Jetport Parkway, Suite 500, Brunswick, GA 31525.  Defendant Southeast Georgia Hematology/Oncology purchased around $1,418,135 of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

109.    Defendant Southeastern Gynecologic Oncology has a business address of 980 Johnson Ferry Road, Suite 900, Atlanta, GA 30342.  Defendant Southeastern Gynecologic Oncology bought about $1,304,369 worth of Amgen's drugs in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

110.    Defendant The Longstreet Clinic, P.C. has a business location of 725 Jesse Jewell Parkway, Suite 300, Gainesville, GA 30501.  Defendant The Longstreet Clinic, P.C. bought around $1,237,083 in Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen

32

customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

### Hawai'i Medical Providers

111.    Defendant Oncare Hawaii, Inc. is situated at 1329 Lusitana  Street, Suite 307 Physician Office Building #2, Honolulu, HI 96813.  Defendant Oncare Hawaii, Inc. bought approximately $1,633,183 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

### Illinois Medical Providers

112.    Defendant Oncology-Hematology Associates of Central Illinois is located at 8940 Wood Sage Road, Peoria, IL 61615.  Defendant Oncology-Hematology Associates of Central Illinois purchased about $5,376,932 worth of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

113.    Defendant Prairie Oncology Management Services, LLC, d/b/a Cancer Care Specialists of Central Illinois is located at 210 W. McKinley Ave., Suite 1, Decatur, IL 62526. Defendant Prairie Oncology Management Services, LLC, d/b/a Cancer Care Specialists of Central Illinois bought about $3,365,705 in Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases

as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of

Amgen products and received comparable rebates for said products during the statutory period.

114.    Defendant Intermed Oncology,17901 Governors Highway, Suite 106, Homewood,

IL 60430.  Defendant Intermed Oncology bought about $3,310,809 worth of Amgen products in

the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to

approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant,

furthermore, made other comparable purchases of Amgen products and received comparable

rebates for said products during the statutory period.

115.    Defendant Northwest Oncology and Hematology is situated at Cancer Center

Institute, 800 Biesterfield Road, Suite 210, Elk Grove Village, IL 60007.  Defendant Northwest

Oncology and Hematology purchased approximately $2,676,638 worth of Amgen products in the

Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately

fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made

other comparable purchases of Amgen products and received comparable rebates for said

products during the statutory period.

116.    Defendant Northwestern Medical Faculty Foundation is located at the Robert H.

Lurie Comprehensive Cancer Center, 675 North St. Claire, Suite 21-100, Chicago, IL 60611.

Defendant Northwestern Medical Faculty Foundation bought approximately $2,083,553 in

Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen

amount to approximately fifty percent of all purchases as a Platinum Amgen customer.

Defendant, furthermore, made other comparable purchases of Amgen products and received

comparable rebates for said products during the statutory period.

117.     Defendant Joliet Oncology Hematology Associates is located at 2614 West Jefferson Street, Joliet, IL 60435. Defendant Joliet Oncology Hematology Associates purchased about $1,725,518 of Amgen's products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

118.     Defendant Fox Valley Hematology and Oncology, Ltd. is situated at 1710 North Randall Road, Suite 300, Elgin, IL 60123.  Defendant Fox Valley Hematology and Oncology, Ltd. spent about $1,547,286 in purchasing Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

119.     Defendant Medical Arts Associates, Ltd. has a business location of 600 John Deere Road, Suite 102, Moline, IL 61265.  Defendant Medical Arts Associates, Ltd. bought around $1,248,718 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

120.     Defendant North Shore Oncology-Hematology Associates, Ltd. has a business address of 1800 Hollister Drive, Suite 112, Libertyville, IL 60048.  Defendant North Shore Oncology-Hematology Associates, Ltd. bought approximately $1,128,733 worth of Amgen's drugs in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to

approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

121.    Defendant Edward Cancer Center is located at 120 Spaulding Drive, Suite 111, Naperville, IL 60540.  Defendant Edward Cancer Center bought approximately $1,067,230 of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

122.    Defendant Associates in Medical Oncology, S.C. has a business location of 4400 West 95th Street, Suite 311, Oak Lawn, IL 60453.  Defendant Associates in Medical Oncology, S.C. purchased about $1,017,769 of Amgen drugs in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

**Indiana Medical Providers**

123.    Defendant Michiana Hematology-Oncology, PC is located at 615 North Michigan St., South Bend, IN 46601. Defendant Michiana Hematology-Oncology, PC. was the largest buyer of Amgen products in the Nation, purchasing approximately $16,828,863 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant,

furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

124.    Defendant Hematology-Oncology of Indiana, P.C. is situated at 8301 Harcourt Road, Suite 200, Indianapolis, IN 46260.  Defendant Hematology-Oncology of Indiana, P.C. bought about $2,873,283 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

125.    Defendant Oncology Hematology Associates of South West Indiana is located at 3699 Epworth Road, Evansville, IN 47630.  Defendant Oncology Hematology Associates of South West Indiana bought about $2,811,845 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

126.    Defendant Cancer Health Treatment Centers, P.C. is located at 2600 Roosevelt Road, Valparaiso, IN 46383.  Defendant Cancer Health Treatment Centers, P.C. purchased about $2,684,860 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

127.    Defendant Fort Wayne Medical Oncology and Hematology is located at 7910 W Jefferson Blvd # 108, Fort Wayne, IN 46804.  Defendant Fort Wayne Medical Oncology and

Hematology bought approximately $2,163,635 worth of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

128.    Defendant American Health Network Hematology Oncology Associates is situated at 6820 Parkdale Place, Suite 200 Methodist Medical Plaza, Indianapolis, IN 46254. Defendant American Health Network Hematology Oncology Associates spent about $1,510,076 to purchase Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

129.    Defendant Cancer Care Center, Inc. has a place of business at 2210 Green Valley Road, Suite 1, New Albany, IN 47150. Defendant Cancer Care Center expended about $1,337,563 for Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

130.    Defendant Arnett Cancer Care is situated at 420 North 26th Street, Lafayette, IN 47904. Defendant Arnett Cancer Care purchased about $1,312,097 of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer. Defendant, furthermore, made other

comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

131.    Defendant A P. and S. Clinic, LLC is situated at 1739 North 4th Street, Terre Haute, IN 47804. Defendant A P. and S. Clinic, LLC bought approximately $1,263,119 in Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

132.    Defendant Medical Consultants is located at 2401 University Avenue, Ball Cancer Center, Muncie, IN 47303. Defendant Medical Consultants bought around $1,230,082 in Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

133.    Defendant American Health Network has a location of 9002 North Meridian Street, Suite 214, Indianapolis, IN 46260. Defendant American Health Network purchased approximately $1,204,860 of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

134.    Defendant Internal Medicine Associates is situated at 550 Landmark Avenue, Bloomington, IN 47403. Defendant Internal Medicine Associates purchased around $1,114,499 of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen

amounting to approximately forty percent of all purchases as a Gold Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

### Iowa Medical Providers

135.    Defendant Medical Oncology and Hematology Associates is located at 1221 Pleasant Street, Suite 100, Des Moines, IA 50309.  Defendant Medical Oncology and Hematology Associates bought approximately $3,034,918 in Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

136.    Defendant Siouxland Hematology and Oncology is located at 230 Nebraska Street, Sioux City, IA.  Defendant Siouxland Hematology and Oncology bought around $2,028,564 of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

### Kansas Medical Providers

137.    Defendant Cancer Center of Kansas is situated at 818 North Emporia, Suite 403, Wichita, KS 67214.  Defendant Cancer Center of Kansas paid approximately $5,146,553 for Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen

amount to approximately fifty percent of all purchases as a Platinum Amgen customer.
Defendant, furthermore, made other comparable purchases of Amgen products and received
comparable rebates for said products during the statutory period.

138.     Defendant Hutchinson Clinic, 2101 North Waldron Street, Hutchinson, KS
67502.  Defendant Hutchinson Clinic purchased about $2,840,875 worth of Amgen products in
the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to
approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant,
furthermore, made other comparable purchases of Amgen products and received comparable
rebates for said products during the statutory period.

### Kentucky Medical Providers

139.     Defendant Commonwealth Cancer Center is located at 520 Techwood Drive,
Suite 100, Danville, KY 40422.  Defendant Commonwealth Cancer Center purchased
approximately $2,853,764 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate
from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum
Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products
and received comparable rebates for said products during the statutory period.

### Louisiana Medical Providers

140.     Defendant Oncology Rx is situated at 3440 Division, Suite I., Metairie, LA 70002.
Defendant Oncology Rx bought about $3,877,978 of Amgen products in the Fourth Quarter of
2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all
purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable

purchases of Amgen products and received comparable rebates for said products during the statutory period.

141.    Defendant Louisiana Oncology Associates is located at 4809 Ambassador Caffery Parkway, Suite 110, Lafayette, LA 70508.  Defendant Louisiana Oncology Associates spent approximately $1,952,998 on Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

142.    Defendant Louisiana Hematology Oncology Associates is located at 4950 Essen Lane, 5th Floor, Baton Rouge, LA 70809.  Defendant Louisiana Hematology Oncology Associates purchased about $1,872,690 worth of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

**Maine Medical Providers**

143.    Defendant Maine Center for Cancer Medicine has a place of business at 100 Campus Drive, Suite 108, Scarborough, ME 04074.  Defendant Maine Center for Cancer Medicine purchased about $3,164,407 in Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

**Maryland Medical Providers**

144.    Defendant Oncology-Hematology Associates, P.A. is located at 8926 Woodyard Road, Suite 201,Clinton, MD 20735.  Defendant Oncology-Hematology Associates, P.A. bought about $2,802,134 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

145.    Defendant Chesapeake Oncology Hematology Associates is located at 3001 South Hanover Street at the Harborview Cancer Center-Building, Baltimore, MD 21225.  Defendant Chesapeake Oncology Hematology Associates purchased approximately $,2,220,354 of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

146.    Defendant Maryland Hematology and Oncology is situated at 602 South Atwood Road, Suite 200, Bel Air, MD 21014.  Defendant Maryland Hematology and Oncology spent approximately $2,130,977 for Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

147.    Defendant Center for Cancer and Blood Disorders is located at 6420 Rockledge Drive, Suite 4100, Bethesda, MD 20817.  Defendant Center for Cancer and Blood Disorders purchased about $1,812,345 worth of Amgen products in the Fourth Quarter of 2006 –  receiving

a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

148.    Defendant Frederick Oncology/Hematology Associates is located at 46b Thomas Johnson Drive, Frederick,MD 21702.  Defendant Frederick Oncology/Hematology Associates bought approximately $1,502,125 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

149.    Defendant Annapolis Medical Specialists d/b/a Annapolis Oncology Center has a business location at 900 Bestgate Road, Suite 300, Annapolis, MD 21401.  Defendant Annapolis Medical Specialists d/b/a Annapolis Oncology Center bought about $1,231,848 of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

150.    Defendant Frederick P. Smith, M.D., P.C. is located at 5454 Wisconsin Avenue, Suite 1300, Chevy Chase, MD 20815.  Defendant Frederick P. Smith, M.D., P.C. purchased about $1,178,855 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

151.     Defendant Community Hematology Oncology Practitioners has a place of business at 18111 Prince Philip Drive, Suite 327, Olney, MD 20832.  Defendant Community Hematology Oncology Practitioners purchased around $,1,046,368 of Amgen's drugs in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

152.     Defendant David H. Smith, M.D. has a place of business at 29466 Pintail Drive, Suite 5, Carlton Station-Building, Easton, MD 21601.  Defendant David H. Smith, M.D. purchased around $1,007,832 in Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

**Massachusetts Medical Providers**

153.     Defendant Berkshire Hematology Oncology, P.C. is located at 8 Conte Drive, Pittsfield, MA 01201.  Defendant Berkshire Hematology Oncology, P.C. purchased approximately $,2,563,669 in Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

**Michigan Medical Providers**

154.    Defendant Cancer and Hematology Centers of Western Michigan, P.C. has a business address of Lemmen-Holton Cancer Pavilion, 145 Michigan St. NE, Suite 3100, Grand Rapids, MI 49503.  Defendant Cancer and Hematology Centers of Western Michigan, P.C. bought about $5,523,297 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

155.    Defendant Cancer Care Associates is located at 3577 West 13 Mile Road, Suite 404 Rose Cancer Center, Royal Oak, MI 48073.  Defendant Cancer Care Associates purchased approximately $2,919,804 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

156.    Defendant The Oakland Medical Group is located at 27301 Dequindre, Suite 314, Madison Heights, MI 48071.  Defendant The Oakland Medical Group bought approximately $2,471,681 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

157.    Defendant Great Lakes Cancer Management Specialists is located at 19229 Mack Avenue, Suite 24,Grosse Pointe Woods, MI 48236.  Defendant Great Lakes Cancer Management Specialists purchased about $2,376,034 in Amgen products in the Fourth Quarter of 2006 –

receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

158.    Defendant Singh and Arora Oncology Hematology, P.C. is situated at 4100 Beecher Road, McLaren Regional Cancer Center, Flint, MI 48532.  Defendant Singh and Arora Oncology Hematology, P.C. bought about $2,171,651 of Amgen's products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

159.    Defendant Genessee Cancer and Blood Disease Treatment Center, Inc. is located at 302 Kensington Avenue, First Floor, Flint, MI 48503.  Defendant Genessee Cancer and Blood Disease Treatment Center, Inc. bought approximately $2,082,050 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

160.    Defendant Oncology Care Associates is located at 820 Lester Avenue, Suite 119, Cedarwood Medical Building, St. Joseph, MI 49085.  Defendant Oncology Care Associates purchased about $1,972,577 of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

161.    Defendant West Michigan Cancer Center is located at 200 North Park Street, Kalamazoo, MI 49007.  Defendant West Michigan Cancer Center spent approximately $1,757,976 for Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

162.    Defendant Michigan Hematology Oncology, PC is located at Karmanos-Crittenton Cancer Center, 1901 Star Batt Drive, Suite 200, Rochester, MI 48309.  Defendant Michigan Hematology Oncology, PC purchased about $1,714,927 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

163.    Defendant Hematology Oncology Consultants is located at 3577 West 13 Mile Road, Suite 103, Beaumont Rose Cancer Center, Royal Oak, MI 48073.  Defendant Hematology Oncology Consultants bought about $1,687,209 Orange Coast Oncology of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

164.    Defendant Newland Medical Associates is located at 22301 Foster Winter Drive, 2nd Floor, Southfield, MI 48075.  Defendant Newland Medical Associates purchased about $1,580,610 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from

Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

165.    Defendant Ann Arbor Hematology Oncology Associates, P.C. has a place of business at 5301 Huron River Drive, Suite C139, McAuley Cancer Care Building, Ypsilanti, MI, 48197.  Defendant Ann Arbor Hematology Oncology Associates, P.C. bought around $1,356,351 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

166.    Defendant Genesee Hematology-Oncology, P.C. is situated at 302 Kensington Avenue, 2nd Floor Genesys Hurley Cancer Institute, Flint, MI 48503.  Defendant Genesee Hematology-Oncology, P.C. bought about $1,028,782 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

### Minnesota Medical Providers

167.    Defendant Mayo Clinic has a business address of 200 First Street  Southwest, Rochester, MN 55905.  Defendant Mayo Clinic bought about $4,872,568 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant,

furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

168.     Defendant North Memorial Health Care is located at 3435 West Broadway Avenue, Suite #1135, Robbinsdale, MN 55422.  Defendant North Memorial Health Care purchased about $2,662,129 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

169.     Defendant Park Nicollet Clinic - St. Louis Park is located at 3800 Park Nicollet Boulevard, St. Louis Park, MN 55416.  Defendant Park Nicollet Clinic - St. Louis Park bought about $1,535,832 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

170.     Defendant Fairview Southdale Breast Center is located at 6545 France Ave, S. Edina, MN 55435.  Defendant Fairview Southdale Breast Center purchased about $1,514,101 of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

**Mississippi Medical Providers**

171.     Defendant Jackson Oncology Associates, Pllc is located at 1227 North State Street, Suite 101, Hetterman Cancer Center, Jackson, MS 39202.  Defendant Jackson Oncology Associates, Pllc spent approximately $2,977,225 in purchasing Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

172.     Defendant Hattiesburg Clinic, P.A. is situated at 415 South 28th Avenue, Hattiesburg, MS 39401.  Defendant Hattiesburg Clinic, P.A. bought around $1,398,480 in Amgen product purchases in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

173.     Defendant Meridian Oncology Associates, P.L.L.C. has a place of business at 1704 23rd Avenue, Second Floor, Meridian, MS 39301.  Defendant Meridian Oncology Associates, P.L.L.C. bought approximately $1,020,535 of Amgen's drugs in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

**Missouri Medical Providers**

174.    Defendant Washington University - Siteman Cancer Center is located at 4921 Parkview Place, Seventh Floor, St. Louis, MO 63110.  Defendant Washington University - Siteman Cancer Center purchased about $,2,697,080 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

175.    Defendant St. Louis Cancer Care Llp is located at 533 Couch Avenue, Suite G-20, Kirkwood, MO 63122.  Defendant St. Louis Cancer Care Llp bought about $2,070,596 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

176.    Defendant Mercy Cancer Care is located at 607 South New Ballas Road, Suite 3300, St. Louis, MO 63141.  Defendant Mercy Cancer Care bought approximately $2,105,802 Orange Coast Oncology worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

177.    Defendant Midwest Hematology Oncology Consultants, Ltd., d/b/a/ Hematology Oncology Consultants, Inc. has a place of business at 11125 Dunn Road, Suite 100 Physicians

Office Building 2, St. Louis, MO 63136.  Defendant Midwest Hematology Oncology

Consultants, Ltd., d/b/a/ Hematology Oncology Consultants, Inc. bought around $1,416,236

of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen

amounting to approximately forty percent of all purchases as a Gold Amgen customer.

Defendant, furthermore, made other comparable purchases of Amgen products and received

comparable rebates for said products during the statutory period.

178.    Defendant St. Johns Clinic Cancer and Hematology has a place of business at

2115 South Fremont, Suite 1000, Springfield, MO 65804.  Defendant St. Johns Clinic Cancer

and Hematology bought around $1,235,122 in Amgen products in the Fourth Quarter of 2006 –

receiving a rebate from Defendant Amgen amounting to approximately forty percent of all

purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable

purchases of Amgen products and received comparable rebates for said products during the

statutory period.


**Montana Medical Providers**

179.    Defendant Hematology Oncology Centers of the Northern Rockies, P.C. has a

business address of 2900 12th Avenue North, Suite 160 West, Billings, MT 59101.  Defendant

Hematology Oncology Centers of the Northern Rockies, P.C. bought approximately $1,803,711

in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen

amount to approximately fifty percent of all purchases as a Platinum Amgen customer.

Defendant, furthermore, made other comparable purchases of Amgen products and received

comparable rebates for said products during the statutory period.

**Nebraska Medical Providers**

180.    Defendant Hematology Oncology Consultants, P.C. is located at 6901 North 72nd Street, Immanuel Cancer Center, Suite 2244, Omaha, NE 68122.  Defendant Hematology Oncology Consultants, P.C. bought approximately $2,903,775 is Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

181.    Defendant Nebraska Hematology Oncology, P.C. is situated at 2611 South 70th Street, Lincoln, NE 68506.  Defendant Nebraska Hematology Oncology, P.C. purchased about $1,090,296 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.


**New Jersey Medical Providers**

182.    Defendant Medical Oncology-Hematology Specialists is located at 420 Boulevard, Suite 201, Mountain Lakes, NJ 07046.  Defendant Medical Oncology-Hematology Specialists bought about $3,513,325 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

183.     Defendant Hematology-Oncology Associates of Northern New Jersey, P.A. is located at 100 Madison Avenue, Second Floor, Carol Simon Cancer Center, Morristown, NJ 07962.  Defendant Hematology-Oncology Associates of Northern New Jersey, P.A. purchased approximately $2,043,514 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

184.     Defendant Hematology-Oncology of Central New Jersey is located at 180 While Road, Suite 101, Little Silver, NJ 07739.  Defendant Hematology-Oncology of Central New Jersey spent about $1,796,441 for Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

185.     Defendant Cooper Cancer Institute - Division of Hematology/Oncology is located at 900 Centennial Boulevard, Suite M.,Voorhees, NJ 08043.  Defendant Cooper Cancer Institute - Division of Hematology/Oncology purchased about $2,029,611 of Amgen's products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

186.     Defendant Southern Oncology-Hematology Associates, P.A. is located at 1505 W. Sherman Avenue, Suite 101, Vineland, NJ 83060.  Defendant Southern Oncology-Hematology Associates purchased approximately $1,728,806 in Amgen products in the Fourth Quarter of

2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

187.    Defendant Medical Diagnostic Associates is located at 99 Beavoir Avenue, Summit, NJ 07901.  Defendant Medical Diagnostic Associates bought approximately $1,691,254 of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

188.    Defendant Kenneth D. Nahum, M.D. has a medical practice at 4505 Route 9 North, Howell Office Plaza, Howell, NJ 07731.  Defendant Kenneth D. Nahum, M.D. purchased about $1,587,749 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

189.    Defendant Hunterdon Hematology Oncology Group is located at 2100 Wescott Drive, Flemington, NJ 08822.  Defendant Hunterdon Hematology Oncology Group bought approximately $1,514,454 of Amgen's products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

190.     Defendant Princeton Medical Group is situated at 419 North Harrison Street, Princeton, NJ 08540.  Defendant Princeton Medical Group made purchases of approximately $1,485,906 worth of Amgen's products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

191.     Defendant Central Jersey Oncology Center, P.A. has a place of business at 205 Easton Avenue, New Brunswick, NJ 08901.  Defendant Central Jersey Oncology Center, P.A. bought approximately $1,481,175 worth of Amgen's products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

192.     Defendant Atlantic Hematology Oncology Associates has a business location at 1707 Atlantic Avenue, Manasquan, NJ 08736.  Defendant Atlantic Hematology Oncology Associates made purchases of $1,438,610 of Amgen's drugs in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

193.     Defendant Hope Community Cancer Center has a place of business at 210 South Shore Road, Route 9, Suite 106, Marmora, NJ 08223.  Defendant Hope Community Cancer Center bought about $1,256,598 in Amgen drugs in the Fourth Quarter of 2006 –  receiving a

rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

194.    Defendant The Center for Hematology / Oncology is situated at 75 Veronica Avenue, Suite 201, Somerset, NJ 08873.  Defendant The Center for Hematology/Oncology made purchases of $1,233,144 of Amgen's products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

195.    Defendant Hematology Oncology Associates of New Jersey has a business address of One Valley Health Plaza, 2nd Floor, Paramus, NJ 07652.  Defendant Hematology Oncology Associates of New Jersey bought around $1,022,443 of Amgen drugs in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

**New Mexico Medical Providers**

196.    Defendant New Mexico Oncology Hematology Consultants is located at 4901 Lang Avenue Northeast, Albuquerque, NM 87109.  Defendant New Mexico Oncology Hematology Consultants bought approximately $1,900,737 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other

58

comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

### New York Medical Providers

197.    Defendant North Shore Hematology Oncology Associates, P.C. is located at 235 North Belle Mead Road, East Setauket, NY 11733.  Defendant North Shore Hematology Oncology Associates, P.C. spent approximately $4,945,940 in purchasing Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

198.    Defendant Broome Oncology is located at 30 Harrison Street, Suite 100, Johnson City, NY 13790.  Defendant Broome Oncology purchased about $3,742,703 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

199.    Defendant Hematology Oncology Associates of Central New York, P.C. is located at 5008 Brittonfield Parkway, Suite 700, East Syracuse, NY 13057.  Defendant Hematology Oncology Associates of Central New York, P.C. purchased approximately $,2,996,325 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant,

furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

200.    Defendant Hudson Valley Hematology Oncology is located at 19 Baker Avenue, Suite 100, Poughkeepsie, NY 12601.  Defendant Hudson Valley Hematology Oncology bought approximately $2,143,682 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

201.    Defendant Queens Long Island Medical Group P.C. is located at 226 Clinton Street, Hempstead, NY 11550.  Defendant Queens Long Island Medical Group P.C. bought about $2,084,383 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

202.    Defendant Park Slope Medicine is located at 343 4th Avenue, Brooklyn, NY 11215.  Defendant Park Slope Medicine bought approximately $1,716,099 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

203.    Defendant Buffalo Medical Group is situated at 295 Essjay Road, Williamsville, NY 14221.  Defendant Buffalo Medical Group spent about $1,236,016 to purchase Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to

approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

204.     Defendant Century Medical Associates is located at 45 Spindrift Drive, Suite 100, Buffalo, NY 14221.  Defendant Century Medical Associates purchased approximately $1,966,793 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

205.     Defendant South Shore Hematology Oncology Associates is situated at 242 Merrick Road, Suite 301, Rockville Centre, NY 11570.  Defendant South Shore Hematology Oncology Associates bought about $1,477,510 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

206.     Defendant Tomao, Marino and McNelis, M.D.S. has a place of business of 44 South Bayles Avenue, Suite 218, Port Washington, NY 11050.  Defendant Tomao, Marino and McNelis, M.D.S. purchased around $1,368,904 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

207.    Defendant Department of Medicine Medical Services Group At SUNY HSC d/b/a University Physicians has a located at ,1000 East Genessee Street, Suite 403, Syracuse, NY 13210.  Defendant Department of Medicine Medical Services Group At SUNY HSC d/b/a University Physicians bought about $1,243,088 in Amgen drugs in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

208.    Defendant Hematology Oncology Associates of Western Suffolk, P.C. is situated at 24 East Main Street, Bayshore, NY 11706.  Defendant Hematology Oncology Associates of Western Suffolk, P.C. bought around $1,213,547 of Amgen drugs in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

209.    Defendant Hematology and Medical Oncology has a business address of 9920 4th Avenue, Suites 310 and 311, Brooklyn, NY 11209.  Defendant Hematology and Medical Oncology purchased approximately $1,194,542 in Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

210.    Defendant Hematology-Oncology Associates of Rockland, P.C. has a business location of 500 C New Hempstead Road, New City, NY 10956.  Defendant Hematology-Oncology Associates of Rockland, P.C. bought approximately $1,118,630 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

### Nevada Medical Providers

211.    Defendant Nevada Cancer Center is located at 1950 East Desert Inn Road, Suite A, Las Vegas, NV 89109.  Defendant Nevada Cancer Center purchased about $1,585,052 of Amgen's products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

212.    Defendant Cancer and Blood Specialists of Nevada is located at 701 Shadow Lane #300, Las Vegas, NV 89102.  Defendant Cancer and Blood Specialists of Nevada bought about $1,651,938 of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

63

## North Carolina Medical Providers

213.    Defendant Piedmont Hematology Oncology Associates is located at 1010 Bethesda Court, Winston-Salem, NC 27103.  Defendant Piedmont Hematology Oncology Associates bought around $3,403,135 in Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

214.    Defendant Southeastern Medical Oncology Center is located at 203 Cox Boulevard, Goldsboro, NC 27534.  Defendant Southeastern Medical Oncology Center purchased approximately $3,101,058 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

215.    Defendant Gaston Hematology and Oncology Associates is located at 2610 Aberdeen Boulevard, Gastonia, NC 28054.  Defendant Gaston Hematology and Oncology Associates purchased about $2,930,719 of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

216.    Defendant Hanover Medical Specialists, P.A. is located at 1520 Physicians Drive, Wilmington, NC 28401.  Defendant Hanover Medical Specialists, P.A. bought approximately $2,560,037 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen

customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

217.    Defendant Northwestern Carolina Oncology and Hematology - Hickory is located at 225 18th Street Southeast, Hickory, NC 28602.  Defendant Northwestern Carolina Oncology and Hematology spent about $1,857,258 for Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

218.    Defendant Carolinas Physicians Network d/b/a Carolinas Hematology Oncology Associates is located at 1100 South Tryon Street, Suite 400, Charlotte, NC 28203.  Defendant Carolinas Physicians Network d/b/a Carolinas Hematology Oncology Associates purchased about $1,695,127 of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

219.    Defendant Northeast Oncology Associates is located at the Roy Hinson Cancer Center, 945 North Fifth Street, Albemarle, NC 28002.  Defendant Northeast Oncology Associates purchased about $1,577,816 worth of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

220.    Defendant Carolinas Cancer Care has a business location at 411 Billingsley Road, Suite 103, Charlotte, NC 28211.  Defendant Carolinas Cancer Care bought approximately $1,302,606 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

### North Dakota Medical Providers

221.    Defendant Meritcare Medical Group d/b/a Roger Maris Cancer Center is situated at 820 4th Street North, Fargo, ND 58102.  Defendant Meritcare Medical Group d/b/a Roger Maris Cancer Center spent approximately $1,058,269 to purchase Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

### Ohio Medical Providers

222.    Defendant Oncology Hematology Care, Inc. is located at 199 William Howard Taft Road, Cincinnati, OH 45219.  Defendant Oncology Hematology Care, Inc. spent about $8,655,785 to purchase Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

223.     Defendant Hematology Oncology of Dayton is located at 9000 North Main Street, Suite G36, Dayton, OH 45415.  Defendant Hematology Oncology of Dayton bought approximately $3,319,023 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

224.     Defendant Mid-Ohio Oncology Hematology is located at 745 West State Street, Suite 550b, Columbus, OH 43222.  Defendant Mid-Ohio Oncology Hematology bought about $3,210,795 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

225.     Defendant Cincinnati Hematology Oncology Inc. is located at 2727 Madison Road, Suite 400, Cincinnati, OH 45209.  Defendant Cincinnati Hematology Oncology Inc. bought about $2,193,925 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

226.     Defendant Hematology Oncology Center, Inc. is located at 41201 Schadden Road, Elyria, OH 44035.  Defendant Hematology Oncology Center, Inc. bought approximately $2,165,264 of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen

customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

227.     Defendant Blood and Cancer Center is situated at 3695a Boardman Canfield Road, Canfield, OH 44406.  Defendant Blood and Cancer Center spent about $2,083,908 for Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

228.     Defendant Columbus Oncology Associates, Inc. is located at 810 Jason Way, Suite A, Columbus, OH 43214.  Defendant Columbus Oncology Associates purchased about $1,811,960 of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

229.     Defendant Ohio Cancer Specialists is situated at 371 Cline Avenue, Mansfield, OH 44907.  Defendant Ohio Cancer Specialists bought about $1,461,185 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

230.     Defendant Northcoast Cancer Care has a business location of 1674 Sycamore Line, Sandusky, OH 44870.  Defendant Northcoast Cancer Care purchased approximately $1,300,669 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from

Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

231.    Defendant Nashat Y. Gabrail, M.D. has a business address of 4875 Higbee Avenue North West, Canton, OH 44718.  Defendant Hashat Y. Gabrail, M.D. purchased approximately $1,069,530 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

232.    Defendant Hope Cancer Center of Northwest Ohio, Inc. is situated at 825 West Market Street, Suite 260, Lima, OH 45805.  Defendant Hope Cancer Center of Northwest Ohio bought around $1,006,959 of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

**Oklahoma Medical Providers**

233.    Defendant Oklahoma Oncology and Hematology Associates Inc. d/b/a Cancer Care Associates is located at 1810 East 15th Street, Tulsa, OK 74104.  Defendant Oklahoma Oncology and Hematology Associates Inc. d/b/a Cancer Care Associates purchased about $9,966,750 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen

customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

234.    Defendant Oklahoma Oncology Incorporated is located at 1705 East 19th Street, Suite 201, Tulsa, OK 74104.  Defendant Oklahoma Oncology Incorporated purchased approximately $1,585,521 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.


**Oregon Medical Providers**

235.    Defendant Pacific Oncology, PC is located at 1130 NW 22nd Ave, Ste 100, Portland, OR 97210.  Defendant Pacific Oncology, PC bought about $3,684,006 of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

236.    Defendant Hematology Oncology Associates, P.C. is located at 2828 Barnett Rd, Medford, OR 97504.  Defendant Hematology Oncology Associates, P.C. purchased about $2,517,096 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

237.    Defendant Hematology Oncology of Salem, LLP, is situated at 875 Oak Street Southeast, 4th Floor, Suite 4030, Salem, OR 97301.  Defendant Hematology Oncology of Salem, LLP, bought around $1,373,648 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

### Pennsylvania Medical Providers

238.    Defendant Medical Center Clinic - Cercone Village Office is located at 4727 Friendship Avenue, Suite 340, Pittsburgh, PA 15224.  Defendant Medical Center Clinic - Cercone Village Office purchased about $3,514,349 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

239.    Defendant Consultants in Medical Oncology and Hematology is located at 2100 Keystone Avenue, Suite 502, Medical Office Building, Drexel Hill, PA 19026.  Defendant Consultants in Medical Oncology and Hematology bought about $3,188,672 of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

240.     Defendant Abington Hematology-Oncology Associates Inc. is located at 2510 Maryland Avenue, Suite 175, Willow Grove, PA 19090.  Defendant Abington Hematology-Oncology, Associates, Inc. bought about $2,954,902 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

241.     Defendant Cancer Care Associates of York is located at 25 Monument Road, Suite 294, York, PA 17403.  Defendant Cancer Care Associates of York paid about $2,796,915 for Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

242.     Defendant Pennsylvania Oncology Hematology Associates is located at 230 West Washington Square, 2nd Floor, Philadelphia, PA 19106.  Defendant Pennsylvania Oncology Hematology Associates bought about $2,460,575 of Amgen's products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

243.     Defendant Bryn Mawr Medical Specialists is located at 933 Haverford Road, Bryn Mawr, PA 19010.  Defendant Bryn Mawr Medical Specialists purchased about $2,385,421 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen

amount to approximately fifty percent of all purchases as a Platinum Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

244.    Defendant Greater Philadelphia Cancer and Hematology Specialists is located at 3998 Red Lion Road, Suite 130, Frankford Torresdale Cancer Center, Philadelphia, PA 19114. Defendant Greater Philadelphia Cancer and Hematology Specialists purchased approximately $2,273,492 of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

245.    Defendant Hematology Oncology Associates of Northeast Pennsylvania is situated at 1100 Meade Street, Dunmore, PA 18512.  Defendant Hematology Oncology Associates of Northeast Pennsylvania bought about $2,240,760 in Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

246.    Defendant Chester County Hematology and Oncology Services is located at 440 East Marshall Street, Suite 201,West Chester, PA 19380.  Defendant Chester County Hematology and Oncology Services bought approximately $2,063,086 worth of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant,

furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

247.     Defendant Bux-Mont Oncology-Hematology Medical Associates is located at 915 Lawn Avenue, Suite 202, Sellersville, PA 18960.  Defendant Bux-Mon Oncology-Hematology Medial Associates purchased about $1,999,889 of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

248.     Defendant Regional Cancer Center is located at 2500 West 12th Street, Erie, PA 16505.  Defendant Regional Cancer Center spent about $1,924,144 to purchase Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

249.     Defendant Regional Hematology Oncology Associates is located at 240 Middletown Boulevard, Suite 205, Langhorne, PA 19047.  Defendant Regional Hematology Oncology Associates bought approximately $1,845,188 worth of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

250.     Defendant Cantor, Biermann, Fellin and Associates is located at 1330 Powell Street, Suite 308, Norristown, PA 19401.  Defendant Cantor, Biermann, Fellin and Associates bought about $2,097,174 of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

251.     Defendant Associates in Hematology Oncology, P.C. is located at One Medical Center Boulevard, Suite 341, Crozer-Regional Cancer Center, Chester, PA 19013.  Defendant Associates in Hematology Oncology, P.C. spent approximately $1,990,602 for Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

252.     Defendant Jefferson Hematology/Medical Oncology Associates is located at 111 South 11th Street, Gibbon Building, Suite G4240, Philadelphia, PA 19107.  Defendant Jefferson Hematology/Medical Oncology Associates bought about $1,536,643 of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

253.     Defendant Shah, Giangiulio and Cormier, M.D.S. is situated at 1240 South Cedar Crest Blvd, Suite 305, Allentown, PA 18103.  Defendant Shah, Giangiulio and Cormier, M.D.S. spent about $1,471,310 on Amgen drugs in the Fourth Quarter of 2006 –  receiving a rebate from

Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

254. Defendant Cancer Care of Central Pennsylvania has a business address of 1575 North Old Trail, Selinsgrove, PA 17870. Defendant Cancer Care of Central Pennsylvania bought around $1,465,427 in Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

255. Defendant Hematology Oncology Associates has a business location at 33 Chester Pike, Ridley Park, PA 19078. Defendant Hematology Oncology Associates purchased approximately $1,458,467 worth of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

256. Defendant Oncology-Hematology of Lehigh Valley is situated at 701 Ostrum Street, Suite 403, Bethlehem, PA 18015. Defendant Oncology-Hematology of Lehigh Valley bought around $1,449,366 of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

257. Defendant Conemaugh Cancer Care Center has a business address of 1020 Franklin Street, Johnstown, PA 15905. Defendant Conemaugh Cancer Care Center bought

around $1,299,659 of Amgen drugs in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

258.     Defendant Hematology-Oncology Group, P.C. has a business location at 1205 Langhorne-Newtown Road, Suite 407, Langhorne, PA 19047.  Defendant Hematology-Oncology Group, P.C. made purchases of approximately $1,246,404 worth of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

259.     Defendant Central Pennsylvania Hematology and Medical Oncology Associates is situated at 50 North 12th Street, Upper Level, Lemoyne, PA 17043.  Defendant Central Pennsylvania Hematology and Medical Oncology Associates bought around $1,220,770 worth of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

260.     Defendant Mainline Oncology Hematology Associates at Lankenau Hospital has a business address of 100 Lancaster Avenue, One Medical Science Building, Wynnewood, PA 19096.  Defendant Mainline Oncology Hematology Associates At Lankenau Hospital made around $1,215,396 worth of Amgen product purchases in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a

Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

261.    Defendant Lehigh Valley Womens Cancer Center is situated at 1611 Pond Road, Suite 101, Allentown, PA 18104.  Defendant Lehigh Valley Womens Cancer Center bought around $1,157,075 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

### South Carolina Medical Providers

262.    Defendant South Carolina Oncology Associates, P.A. is located at 166 Stoneridge Drive, Columbia, SC 29210.  Defendant South Carolina Oncology Associates, P.A. purchased approximately $5,191,232 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

263.    Defendant Coastal Cancer Center is a Division of Associated Medical Specialists and has a business address of 8121 Rourk Street, Myrtle Beach, SC 29572.  Defendant Coastal Cancer Center purchased about $2,971,187 in Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

264.     Defendant Palmetto Hematology Oncology, P.C. is located at 380 Serpentine Drive, Suite 200, Spartanburg, SC 29303.  Defendant Palmetto Hematology Oncology, P.C. bought about $1,588,219 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

265.     Defendant Charleston Hematology and Oncology has a place of business at 125 Doughty Street, Suite 280, Charleston, SC 29403.  Defendant Charleston Hematology and Oncology made purchases of approximately $1,231,799 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

266.     Defendant Lowcountry Hematology and Oncology, P.A. is situated at 900 Bowman Road, Suite 103, Mount Pleasant, SC 29464.  Defendant Lowcountry Hematology and Oncology, P.A. bought around 1,079,903 in Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

**South Dakota Medical Providers**

267.    Defendant Sioux Valley Oncology Clinic is situated at 1020 West 18th Street, Sioux Falls, SD 57104.  Defendant Sioux Valley Oncology Clinic purchased around $1,061,648 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

**Tennessee Medical Providers**

268.    Defendant Tennessee Oncology, Pllc is located at 300 20th Avenue North, Suite 301, Nashville, TN 37203.  Defendant Tennessee Oncology, Pllc bought approximately 15,816,588 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

269.    Defendant The West Clinic is located at 100 North Humphreys Boulevard, Memphis, TN 38120.  Defendant The West Clinic bought about $10,059,703 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

270.    Defendant Tennessee Cancer Specialists has a business address of 9430 Parkwest Blvd., Ste 120, Knoxville, TN 37923.  Defendant Tennessee Cancer Specialists spent about

$6,681,301 for Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

271.   Defendant Boston Baskin Cancer Group - University of Tennessee Cancer Institute is located at 1331 Union Avenue, Suite 800, Memphis, TN 38104.  Defendant Boston Baskin Cancer Group - University of Tennessee Cancer Institute spent approximately $3,478,671 to purchase Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

272.   Defendant Kingsport Hematology-Oncology Associates is situated at 111 West Stone Drive, Suite 300, Kingsport, TN 37660.  Defendant Kingsport Hematology-Oncology Associates bought approximately $2,552,146 of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

273.   Defendant Thompson Oncology Group is located at 1915 White Avenue, 1st Floorthompson Cancer Survival Center, Knoxville, TN 37916.  Defendant Thompson Oncology Group purchased approximately $1,772,565 of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable

purchases of Amgen products and received comparable rebates for said products during the statutory period.

274.     Defendant Chattanooga Oncology Hematology Associates is located at 605 Glenwood Drive, Suite 200, Chattanooga, TN 37404.  Defendant Chattanooga Oncology Hematology Associates bought approximately $1,759,703 of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

275.     Defendant East Tennessee Hematology Oncology Associates PC d/b/a McLeod Cancer and Blood Center is located at 310 State of Franklin Road, Suite 401, Johnson City, TN 37604.  Defendant East Tennessee Hematology Oncology Associates PC d/b/a McLeod Cancer and Blood Center purchased approximately $1,527,385 worth of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

276.     Defendant Timothy Panella, M.D. d/b/a University Cancer Specialists has a place of business at 1934 Acoa Highway, Medical Building D, Suite 370, Knoxville, TN 37920.  Defendant Timothy Panella, M.D. d/b/a University Cancer Specialists purchased around 1,171,873 in Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.

Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

277.    Defendant Wahid T. Hanna, M.D. has a place of business at 1934 Alcoa Highway, Suite 472, Knoxville, TN 37920.  Defendant Wahid T. Hanna, M.D. bought around $1,107,461 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

## Texas Medical Providers

278.    Defendant South Texas Oncology and Hematology Associates, P.A. is located at 315 North San Saba, Suite E 1160, San Antonio, TX 78207.  Defendant South Texas Oncology and Hematology Associates, P.A. purchased about $5,059,026 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

279.    Defendant Houston Cancer Clinic is located at 920 Medical Plaza, Suite 140, Spring, TX 77380.  Defendant Houston Cancer Clinic bought approximately $3,839,157 of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

280.    Defendant Oncology Consultants is situated at 2130 W. Holcombe Blvd., 10th Floor, Houston, TX 77030.  Defendant Oncology Consultants purchased about $2,607,515 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

281.    Defendant Tyler Hematology Oncology is located at721-A Clinic Drive, Tyler, TX 75701.  Defendant Tyler Hematology Oncology bought about $2,138,035 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

282.    Defendant Metroplex Hematology/Oncology Associates d/b/a Arlington Cancer Center is located at 906 West Randol Mill Road, Arlington, TX 76012.  Defendant Metroplex Hematology/Oncology Associates d/b/a Arlington Cancer Center spent about $1,927,917 for Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

283.    Defendant Southeast Texas Oncology Partners is located at 1140 Cypress Station Drive, Suite 302, Houston, TX 77090.  Defendant Southeast Texas Oncology Partners bought approximately $1,865,967 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum

Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

284.    Defendant Northwest Cancer Center is located at 17323 Red Oak Drive, Houston, TX 77090.  Defendant Northwest Cancer Center spent approximately $1,805,176 on Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

285.    Defendant Rohit Kapoor, M.D., P.A. is located at 12602 Toepperwein Road, Suite 202, San Antonio, TX 78233.  Defendant Rohit Kapoor, M.D., P.A. purchased approximately $1,366,602 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

286.    Defendant Texas Cancer Associates has a business location at 6119 Greenville Ave  Dallas, TX 75206.  Defendant Texas Cancer Associates purchased around $1,497,479 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately forty percent of all purchases as a Gold Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

287.    Defendant University of Texas At Southwestern Simmons Cancer Center is situated at 2201 Inwood Road, RM Nc2.852, Dallas, TX 75235.  Defendant University of Texas At Southwestern Simmons Cancer Center bought around $1,490,783 in Amgen products in the

Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amount to approximately forty percent of all purchases as a Gold Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

288. Defendant Abilene Hematology-Oncology Group, P.A. has a business address of 2000 Pine Street, Hendrick Cancer Center Building, Abilene, TX 79601. Defendant Abilene Hematology-Oncology Group, P.A. bought approximately $1,344,370 worth of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amount to approximately forty percent of all purchases as a Gold Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

289. Defendant Lone Star Oncology Consultants, P.A. is situated at 11044 Research Boulevard, Suite D400, Austin, TX 78759. Defendant Abilene Hematology-Oncology Group, P.A. purchased approximately $1,263,557 worth of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amount to approximately forty percent of all purchases as a Gold Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

290. Defendant Kelsey Seybold Clinic has a business location of 2727 West Holcombe Boulevard, Houston, TX 77025. Defendant Kelsey Seybold Clinic bought around $1,254,192 in Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amount to approximately forty percent of all purchases as a Gold Amgen customer. Defendant,

furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

291.     Defendant Blood and Cancer Center of East Texas is situated at 825 Medical Drive, Tyler, TX 75701.  Defendant Blood and Cancer Center of East Texas made approximately $1,200,633 worth of purchases of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

291.     Defendant Coastal Bend Cancer Center has a business address of 1415 Santa Fe Street, Suite C, Corpus Christi, TX 78404.  Defendant Coastal Bend Cancer Center bought around $1,192,935 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

292.     Defendant South Texas Institute of Cancer and Blood Disorders is situated at 14120 Farm Market Road 624, Corpus Christi, TX 78410.  Defendant South Texas Institute of Cancer and Blood Disorders bought approximately $1,011,404 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

**Utah Medical Providers**

293.    Defendant Utah Cancer Specialists is located at 3838 South 700 East, Suite 100, Salt Lake City, UT 84106.  Defendant Utah Cancer Specialists bought approximately $2,728,797 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

294.    Defendant Central Utah Clinic is located at 1055 North 500 West, Building A Suite 202, Provo, UT 84604.  Defendant Central Utah Clinic purchased about $2,331,403 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

**Virginia Medical Providers**

295.    Defendant Virginia Cancer Institute has a business location of 6605 West Broad Street, Richmond, VA 23230.  Defendant Virginia Cancer Institute bought around $3,133,824 of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

296.    Defendant Hematology Oncology Patient Enterprises (Hope) is located at 459 Locust Avenue, 3rd Floor, Center for Cancer Care, Charlottesville, VA 22902.  Defendant

Hematology Oncology Patient Enterprises spent about $2,122,146 on Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

297. Defendant Lynchburg Hematology Oncology Clinic is located at 1701 Thomson Drive, Lynchburg, VA 24501. Defendant Lynchburg Hematology Oncology Clinic bought about $1,641,757 in Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

298. Defendant Peninsula Cancer Institute is located at 120 Kings Way, Suite 3100, Williamsburg, VA 23185. Defendant Peninsula Cancer Institute spent about $1,579,678 to purchase Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

299. Defendant Cancer Outreach Associates is situated at 104 Abingdon Pl, Abingdon, VA 24211. Defendant Cancer Outreach Associates paid about $1,306,916 in Amgen drug purchases in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

300.    Defendant Danville Hematology-Oncology Clinic has a business address of 125 Executive Drive, Suite J., Danville, VA 24541.  Defendant Danville Hematology-Oncology Clinic bought about $1,294,119 in Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

301.    Defendant Shenandoah Oncology Associates is situated at 1870 Amherst Street, Suite F, Medical Building #1, Winchester, VA 22601.  Defendant Shenandoah Oncology Associates purchased approximately $1,205,044 worth of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

302.    Defendant Delta Hematology/Oncology Associates has a business location at 355 Crawford Street, Suite 300, Portsmouth, VA 23704.  Defendant Delta Hematology/Oncology Associates, spent around $1,198,618 in Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

**Washington Medical Providers**

303.     Defendant Western Washington Oncology is located at 4525 3rd Avenue Southeast, Suite 200, Lacey, WA 98503.  Defendant Western Washington Oncology bought approximately $3,203,413 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

304.     Defendant Northwest Medical Specialty is situated at 1624 South I. Street, Tacoma, WA 98405.  Defendant Northwest Medical Speciality bought about $2,398,256 of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

305.     Defendant Rainer Oncology Professional Services is located at 400 15th Avenue Southeast, Suite D, Puyallup, WA 98372.  Defendant Rainer Oncology Professional Services purchased around $1,919,907 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

306.     Defendant Wenatchee Valley Clinic has a business address of 820 North Chelan Avenue, Wenatchee, WA 98801.  Defendant Wenatchee Valley Clinic purchased approximately $1,497,164 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen

customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

307.    Defendant Cascade Cancer Center is situated at 12303 Northeast 130th Lane, Suite 120, Kirkland, WA 98034.  Defendant Cascade Cancer Center made about $1,120,859 worth of purchases for Amgen drugs in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

308.    Defendant Columbia Basin Hematology Oncology, P.L.L.C. has a business location at 7350 West Deschutes Avenue, Suite B-103, Kennewick, WA 99336.  Defendant Columbia Basin Hematology Oncology, P.L.L.C. bought approximately $1,024,816 of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

**Wisconsin Medical Providers**

309.    Defendant Oncology Alliance is located at 4655 North Port Washington Road, Suite 200, Milwaukee, WI 53212.  Defendant Oncology Alliance purchased about $6,638,191 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer. Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

310.    Defendant Marshfield Clinic is located at 1000 North Oak Avenue, Marshfield, WI 54449.  Defendant Marshfield Clinic bought approximately $3,416,470 in Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

311.    Defendant Fox Valley Hematology and Oncology has a business location of 900 East Grant Street, Martha Siekman Cancer Center, Appleton, WI 54911.  Defendant Fox Valley Hematology and Oncology purchased around $2,893,197 of Amgen's products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

312.    Defendant Aurora Sheboygan Clinic is located at 2414 Kohler Memorial Drive, Sheboygan, WI 53081.  Defendant Aurora Sheboygan Clinic purchased approximately $2,553,771 worth of Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amount to approximately fifty percent of all purchases as a Platinum Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

313.    Defendant Green Bay Oncology Limited is situated at 835 South Van Buren Street, Green Bay, WI 54301.  Defendant Green Bay Oncology Limited spent approximately $1,907,532 to purchase Amgen products in the Fourth Quarter of 2006 –  receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen

customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

314.    Defendant Medical Consultants Limited is situated at 2901 West Kinnickinnic River Parkway, Suite 415, Milwaukee, WI 53215.  Defendant Medical Consultants Limited purchased around $1,393,854 worth of Amgen products in the Fourth Quarter of 2006 – receiving a rebate from Defendant Amgen amounting to approximately forty percent of all purchases as a Gold Amgen customer.  Defendant, furthermore, made other comparable purchases of Amgen products and received comparable rebates for said products during the statutory period.

## III.    FACTUAL ALLEGATIONS.

### A.    Overview of Relevant Amgen Drug Products and Their Market.

315.    Erythropoiesis is the process by which the body produces erythrocytes,  or red blood cells. Red blood cells contain hemoglobin, a protein that functions primarily in the transport of oxygen from the lungs to the tissues of the body.  Hemoglobin levels are expressed in grams (g) per deciliter (dL) of whole blood.  An adequate supply of red blood cells is necessary to oxygenate the body.  Anemia, a condition in which the blood is deficient in red blood cells or hemoglobin, impairs the body's ability to transfer oxygen to the tissues.  Anemia has many potential causes, including an iron-poor diet, excessive bleeding, certain cancers, certain cancer treatments, and kidney or liver failure.  A necessary step in the erythropoietic process is the production of erythropoietin, a protein made in the kidneys that stimulates red blood cell formation.  In the early 1980s, Amgen scientists cloned the gene for erythropoietin, a

discovery that led eventually to the Company's commercialization of man-made versions of

erythropoietin — epoetin alfa, which Amgen markets in the U.S. as "Epogen" and darbepoetin

alfa, which Amgen markets in the U.S. as Aranesp.  Because epoetin alfa and darbepoetin alfa,

like endogenous erythropoietin, stimulate red blood cell formation, they are referred to as

"erythropoiesis-stimulating agents" or "ESAs."  Erythropoietin and its man-made copies are also

sometimes referred to as EPO.

316.    While epoetin alfa was still in development, Amgen entered into a Product

License Agreement ("PLA") with a subsidiary of Johnson & Johnson ("J&J") –  OrthoBiotech.

Amgen granted J&J an exclusive license under Amgen's patents to market and sell Amgen-

manufactured epoetin alfa in the U.S. for anemia in humans resulting from all treatments except

in the dialysis and diagnostics settings.  In 1989, the Federal Drug Administration ("FDA")

approved Epogen for the treatment of anemia associated with chronic renal failure ("CRF"),

including end stage renal disease patients and patients not on dialysis.  The treatment for more

severe cases of anemia in CRF patients had been whole blood or red cell transfusions.  Epogen

therapy was to elevate or maintain the red blood cell level and to reduce the need for transfusions

in these patients.

317.    Through its own research and testing, J&J obtained FDA approval to market

epoetin alfa (Procrit) to treat and reduce the need for transfusions in patients undergoing

treatment for other diseases.  Between 1991 and 1996, J&J secured FDA approvals to market

epoetin alfa (Procrit) for persons who develop anemia as a consequence of chemotherapy for

cancer, treatment of HIV infection with the pharmaceutical zidovudine, chronic kidney diseases

in pre-dialysis patients, and in anemic patients scheduled to undergo elective, non-cardiac, non-

vascular surgery.  J&J markets its Amgen-manufactured product under the name Procrit.  Except

for the difference in their marketing names, the Epogen and Procrit products are identical, as are their FDA-approved labels listing indications, warnings and other information.

318.    Pursuant to the PLA, however, Amgen is precluded from expanding its Epogen marketing to take advantage of the indications for epoetin alfa obtained by J&J.  Amgen's solution to that limitation was to develop a new ESA, darbepoetin alfa. The molecular structure of darbepoetin alfa is slightly different than that of epoetin alfa and lasts longer in the bloodstream.  The clinically significant impact was that darbepoetin alfa could be administered less often than epoetin alfa.  The commercially significant impact was that Amgen could now market a product in the lucrative oncology market and otherwise seek to expand its ESA franchise in ways the PLA precluded it from doing with Epogen.

319.    The PLA between Amgen and J&J, entered into when Amgen was still a struggling start-up hungry for capital, has allowed J&J to reap billions of dollars from sales of Procrit.  As described in a Forbes article entitled "Amgen's Enemies" dated October 30, 2006, Amgen "sidestepped" the PLA through its development of Aranesp so it could reclaim the market it had given to J&J.

320.    In 2001, the FDA awarded Amgen approval to market Aranesp for the treatment of anemia associated with CRF. including patients on dialysis (end stage renal disease) and patients not on dialysis.  In 2002, Amgen secured approval to market Aranesp for the treatment of anemia associated with cancer chemotherapy.

321.    By late 2003, Aranesp had a 45%  share of domestic non-dialysis ESA share to Procrit's 55%; Amgen has since overtaken J&J and  eventually controlled over half this market.  Amgen's ESA franchise has been core to its survival and its success.

322.    Now a Fortune 200 company, Amgen is the largest biotechnology company in the

world, generating $14.3 billion in revenues in 2006, approximately half of which come from sales of Epogen and Aranesp. Indeed, the *New York Times* has described Epogen as the "best-selling drug ever created by biotechnology."

323.     Epogen, Aranesp, Neulasta, and Neupogen are all injectable drugs that are administered either by a doctor or nurse in a medical practice or in a hospital setting.  Patients do not self-administer these drugs.  Since Epogen, Aranesp, Neulasta, and Neupogen are all administered in a medical setting, each medical provider must maintain a stockload of these drugs to administer in patients.

324.     A medical provider will generally purchase these drugs from Amgen or through wholesalers who purchase the drug from Amgen.  The medical provider is then reimbursed for the injection of the drug by a third party payer (insurance).  The medical provider receives payment for the administration of the drug (a fee for the injection) as well as for the drug itself.  Because the medical provider does the initial purchase of the drug, Amgen sought to influence the purchase choices of doctors to favor its products over competitors.  One of Amgen's most effective ways of persuading Defendant Medical Providers – usually medical practices of oncology doctors or hospitals for oncology patients – to use Amgen's products was through the payment of "rebates" based upon a contract – the Amgen Portfolio Contract.

325.     Amgen's financial success was due in large part do to its sales of ESAs.  In 2006, Amgen generated $14.3 billion in revenues, approximately half of which came from sales of Epogen and Aranesp.

326.     In the United States, dialysis providers are primarily reimbursed for Epogen by the federal government through the End Stage Renal Disease Program ("ESRD Program") of Medicare.  The ESRD Program reimburses approved providers for 80% of allowed dialysis costs;

the remainder is paid by other sources, including patients, state Medicaid programs, private insurance, and to a lesser extent, state kidney patient programs. The ESRD Program reimbursement rate is established by federal law and is monitored and implemented by the Centers for Medicare and Medicaid Services ("CMS").  Most patients receiving Aranesp, Neulasta, and Neupogen for approved indications are covered by both government and private payer healthcare programs.

327.    Amgen also manufactures and markets the drugs Neupogen and Neulasta, which are prescribed for chemotherapy patients to reduce the risk of infection due to decreases in the number of infection-fighting white blood cells. Neulasta requires less frequent dosing than Neupogen.  Neulasta generated significant profits for medical providers.  For example, certain providers received a net profit of $3,000 each time they administered an injection of Neulasta to a patient.

328.    The drugs Neupogen and Neulasta are to white blood cells what Epogen and Aranesp are to red blood cells – slightly different versions of a human protein manufactured by recombinant DNA technology that stimulates their production.  Oncologists who purchase and administer ESAs generally also require Neupogen and/or Neulasta for their practices.  As with its ESA franchise, Amgen has a patent estate protecting Neupogen and Neulasta.  Unlike with ESAs, Amgen does not share the franchise with a competitor/licensee.  In the United States, Amgen has a 98% share of sales to oncology clinics for white blood cell-boosting drugs.

329.    At the end of 2004, a change occurred in how medical services providers are reimbursed by Medicare for their coverage-eligible purchases.  Prior to January 1, 2005, Amgen and other drug companies were required under Medicare Part B to report average wholesale prices ("AWP") for their drugs to CMS. Purchasers of the drugs — like doctors and other

medical services providers — were reimbursed by CMS based on these "posted prices" and not actual transaction prices.  Purchases at prices less than the posted AWP created a "spread" resulting in a profit source for doctors.  Pursuant to the Medicare Prescription Drug, Improvement and Modernization Act of 2003, companies now have to report actual net transaction prices (including rebates and other discounts) rather than AWP.  The reimbursement formula is now calculated as "average sale price" or ASP, plus six percent.

330.    Recently several studies have linked the anemia drugs to cardiovascular problems and faster tumor growth.  In March of 2007, the FDA added a black box warning to the drugs' labels cautioning doctors that the medications should be administered at the lowest dose possible in order to bring red blood cell counts to the lowest level necessary to avoid transfusions.

331.    All patients using Epogen are covered by Medicare.  Approximately 55-60% of the sales of Aranesp, Neulasta, Neupogen, and Procrit are covered by Medicare.  The Medicaid program also covers certain patients using these drugs.

**B.**    **Fraudulent Reporting of AWP by Amgen and Medical Providers.**

332.    Prior to 2005, the reimbursement rates from the Medicare Part B and Medicaid programs for prescription drugs were based on the manufacturer's AWP.  Although the Medicare program has changed its reimbursement methodology, several states continue to use AWP as the basis for Medicaid reimbursement for certain drugs.

333.    During the time period when AWP was used to calculate Medicare and Medicaid reimbursement rates, Defendant Amgen improperly and fraudulently manipulated AWP for several of its products, including Aranesp, Neupogen, and Neulasta.  Defendant routinely engaged in the practice of reporting an AWP that far exceeded the price at which the drugs

99

actually were sold to providers.  By reporting an inflated AWP, Defendant caused the Medicare and/or Medicaid reimbursement for these drugs to be inflated.

334.    Defendant inflated the AWP for its products through practices such as concealing off-invoice discounts, price protection, free goods and samples, overfill of the drug in vials, and an extensive rebate program to users of Amgen ESAs and Neulasta and Neupogen including Defendant Medical Providers including and other improper kickbacks provided to physicians.

335.    The price differential between the amount a provider pays for a drug and the amount the provider receives in reimbursement for the drug from Medicare and/or Medicaid is called the "spread" or "margin."  By improperly and purposefully manipulating the AWPs for its drugs, Defendant Amgen created inflated price spreads and then used these spreads to gain market share for its products.  For example, Amgen's management created reimbursement comparison spreadsheets and "business reviews" for its sales representatives to show to doctors in order to demonstrate that its drugs could be sold at a greater spread than those of other drug companies.

**C.    Amgen Portfolio Contracts and Illegally Obtained and Concealed Discounts.**

336.    Amgen has provided a variety of discounts to Defendant Medical Providers to encourage the use of its products.  These discounts were mainly in the form of rebates.  These discounts went not to the ultimate payer of these products – the private insurance companies and Medicare and Medicaid.  Instead, these rebates went to the doctors who pocketed these rebates even thought it was not their money to keep.

337.    Each doctor, hospital, or medical provider that obtained a rebate based upon its Amgen's Portfolio Contract had a legal and ethical obligation to return a proportionate share of

that money to the third party payer who actually reimbursed the Defendant Medical Provider for the Amgen product.

338.    Amgen manipulated AWP (Average Wholesale Price) by a number of ways before and after the implementation of ASP.  One way Amgen manipulated AWP was by "back end" rebates.  These were rebates that were "kickbacks" to customers based on amount of Amgen products purchased.  The largest of these "kickbacks" occurred between 2002 and January 2005. In fact it was customary for ICON to receive greater than $1 million dollars per quarter from Amgen in this form of " kickbacks" alone.  Hospitals also had contracts were they received "kickbacks". While most hospitals pharmacy budgets are "cost" driven some hospitals provide patient services on an "outpatient" basis these hospitals would  benefit by the egregious "spread" or "profit" from Medicare/Medicaid in Amgen products.

339.    The Office of Inspector General of the Department of Health and Human Services provided guidance as to what discounts were permissible under a "safe harbor" provision and what discounts were illegal in its adoption of the final rule as to safe harbor provisions of the Federal Anti-Kickback Statute (November 19, 1999):

> As a general rule, discounts for health care items and services are encouraged under the Federal health care programs so long as the Federal health care programs share in the discount where appropriate, and as appropriate, to the reimbursement methodology.  Arrangements in accordance with which Federal programs get less than their proportional share of cost-savings on items or service payable by the programs are seriously abusive.  Such arrangements result in the programs being overcharged and are not protected by either the statutory exception or the regulatory safe harbor for discounts. (64 FR 63526)

Put bluntly, Amgen colluded with medical providers in such a way as to deprive federal health care programs of their proportionate share of cost-savings.  As a result, these discount schemes were not protected by the safe harbor provisions under federal law and regulations.

340.    In particular, the rebates provided to doctors are absolutely not covered by the safe

harbor provisions for discounts:

> A rebate under our proposal would be defined as any discount not given at the
> time of sale.  Consequently, a rebate transaction would not be covered by the safe
> harbor if it involves a buyer under § 1001.952(h)(1)(iii) that is neither a cost-
> reporter nor a HMO or CMP [Competitive Medical Plan] because for such buyers,
> all discounts must be given at the time of sale.  *Id.*

Finally, it was incumbent upon Amgen and Defendant Medical Providers, in order to qualify for

the safe harbor of these discounts including rebates provided to Amgen's medical providers to

each play a role.  Amgen was required to provide "effective notice" to buyers of the obligations

of Defendant Medical Providers to report discounts.  In the course and scope of his employment

with Amgen, Relator worked on numerous accounts where no effective notice was provided to

the medical providers of their obligations under 42 C.F.R. 1001.952(h).  For example, it was

required of all Defendant Medical Providers to report fully and accurately any discount in

accordance with 42 C.F.R. 1001.952(h)(1)(ii)(C).  Again, in the course and scope of his

employment with Amgen, Relator worked with numerous accounts where discounts, particularly

rebates, were not fully and accurately reported, thus nullifying and "safe harbor" and making

these discounts illegal.  This was so even where medical providers and Amgen acknowledged

that there was an obligation to report all discounts and rebates received by any Defendant

Medical Provider as part of the "Amgen Portfolio Contract" and specifically contained in the

contract itself.

**D.     The Over-Prescribing of Aranesp and other ESAs for Profit Rather than Medical Necessity.**

341.    A doctor has an ethical duty not to prescribe a drug to a patient unless it is warranted by medical necessity.  Codes of professional conduct all require that a doctor not prescribe any drug to a patient unnecessarily or for reasons other than medical necessity.

342.    Federal Regulations allow for the Office of Inspector General to exclude Medical Providers from federal government programs for the prescription of unnecessary medical treatments including drugs.  At 42 C.F.R. 1001.701(a), it states that the OIG may exclude an individual or entity that has "(2) Furnished, or caused to be furnished, to patients (whether or not covered by Medicare or any of the State health care programs) any items or services substantially in excess of the patient's needs. . ."

343.    Defendant Medical Providers prescribed Aranesp, other ESAs, and Neulasta beyond medical necessity.  Indeed, these prescribing practices sometimes were significantly beyond medical necessity.  Relator is able to recall the conversation of one oncologist to another at a professional meeting remark "All of my patients are on Aranesp, and some of them even need it" or words to that effect.  These remarks underscore the prescribing practices of Defendant Medical Providers who prescribed Aranesp, other ESAs, and Neulasta in order to reap significant monetary rebates rather than based upon medical necessity.  Defendant Medical Providers, and each of them, prescribed these drugs not because of the medical needs or comfort of their patients, but were instead motivated to prescribe these drugs based upon the significant financial rewards these Defendant Medical Providers received in the form of rebates from Amgen for larger and larger sales of these Amgen products.

344.    Amgen colluded with medical providers in such a way as to induce these medical providers to prescribe Aranesp, other ESAs, and Neulasta significantly beyond medical necessity

Put bluntly, Amgen provided significant financial incentives to doctors to increase prescriptions of Aranesp, Neulasta and other drugs.  Amgen undertook a policy and practice of increasing the amount of drugs that had to be purchased by Defendant Medical Providers to receive the same rebate amount.  These increases by Amgen in the drugs that had to be purchased by Defendant Medical Providers merely to maintain the same amount of rebate money was designed to be beyond the natural increase in patient populations or of patients in a particular Defendant Medical Provider's practice that might meet the strictest criteria for these prescriptions.  Instead, Defendant Medical Providers could only continue to receive the same level of rebate money year after year by prescribing Amgen products:  a) to those patients who might medically benefit from these products; and/or b) to individuals that might medically benefit from these drugs, but in significantly higher doses than medically necessary for that patient.

345.    In prescribing these Amgen products for patients who would not medically benefit from these drugs and/or in doses beyond what was medically necessary, Defendant Medical Providers, and each of them, committed fraud against the United States by seeking and obtaining reimbursement for these illegitimate prescriptions and for the office-administration of these drugs.

**E.    Other Illegal Practices.**

**1.    Tying of Amgen products**.

346.    In order to boost sales and take advantage of the last year under Medicare reimbursement under the AWP system, Amgen in 2004 began tying the level of rebates physicians can qualify for on their purchases of two other Amgen drugs, Neupogen and Neulasta, to the amount of Aranesp  they purchased.  Neupogen and Neulasta  are to white blood cells what

Epogen and Aranesp are to red — slightly different versions of a human protein manufactured by recombinant DNA technology that stimulates their production.

347. Oncologists who purchase and administer ESAs generally also require Neupogen and or Neulasta for their practices. As with its ESA franchise, Amgen has a patent estate protecting Neupogen and Neulasta. Unlike with ESAs, Amgen does not share the franchise with a competitor/licensee; in the U.S., Amgen has a 98% share of sales to oncology clinics for white blood cell-boosting drugs. J&J filed an action against Amgen in federal court in New Jersey alleging that Amgen's sales practices constitute an unlawful and anticompetitive tying arrangement and pricing scheme that violates U.S. antitrust law. *See Ortho Biotech Products, LP. v. Amgen Inc.*, Case No. 2:05-cv-04850-SRC-MAS (D.N.J. filed Oct. 11, 2005) that the contracts were "illegal".

348. Amgen's answer to the field at the direction of Jim Daly (formerly of Glaxo Smith Kline Pharmaceuticals), Cynthia Schwan and Joe Turgeon (formerly of Johnson and Johnson) was handing out some form letters around the "claims are false" that were so embarrassing of guilt that Relator refused to distribute. By 2004, Aranesp had a 51% share of the domestic non-dialysis ESA market. While the statistics indicate percentage of market share they do no touch on what was really happening. Not only did Amgen capture 51% of the ESA market, Amgen grew the market by 300%.

### 2. Off-Invoice discounts.

349. Amgen also fraudulently concealed the true price for its products by means of "off invoice discounts." These off invoice discounts were another form of Amgen "kickbacks" where the medical service provider would get a discount off the printed invoice. That way, if the

medical service provider was ever audited by Medicare, the medical service provider would be able to show the auditor a higher purchase price on the invoice while in actuality the provider paid substantially less.

350.     Amgen provided "off invoice discounts" on Aranesp, Neupogen, Epogen and Neulasta. Medical providers including hospitals received these "off invoice discounts" and fraudulently benefitted from these off invoice discounts by receiving Medicare and Medicaid reimbursement at a rate substantially higher than would have been otherwise legally obtainable.


### 3.     Use of overfill.

351.     Amgen was also able to obtain substantially higher reimbursement for medical providers by fraudulently increasing the amount of product in its containers. "Overfill" is the extra amount of product that manufacturers put in the vial.  For Amgen the average amount was approximately 16%.

352.     Relator had some medical service providers such as the Charles Nelson Pharmacy Technician of Montgomery and Associates and the Carl Williams Pharmacy Technician of ICON claim that while using a BD no-dead space insulin syringe claimed, 20% overfill could be obtained from Amgen vials.

353.     Amgen overfilled all their vials of Aranesp, Epogen, and Neupogen.  Thus, for a 500mcg vial of Aranesp, there would be approximately 100 mcg in "overfill" or an extra $200.00 in Medicare billable profit to the medical service provider.

354.     An even greater "overfill" abuse was with Neupogen.  Since Medicare only had two "J codes" for Neupogen reimbursement, a physician would dose 350mcg for an average person (70kg) yet he had to draw it out of a 480 mcg Neupogen vial.  Since the Neupogen

106

480mcg vial really had 530 mcg due to the overfill, the medical provider had an extra 180 mcg that could be saved, given to another patient, and billed to a third-party payer without any additional cost.

355. Thus, the physician would bill for the "J1441" code for Medicare to reimburse and have 180mcg for pure profit. Considering that Medicare reimbursed their providers every 14 days this represented quite a return on investment. As mentioned "overfill" was promoted by Amgen for Epogen, Neupogen and Aranesp creating huge profits for physicians.

356. Amgen would aid medical providers in their use of excess amounts of Amgen products in vials by providing "overfill" letters and "stability" letters by calling 1-800-77AMGEN. In other words, Amgen actively used the overfill in its products as a marketing opportunity.

### 4. Price protection.

357. Amgen also fraudulently manipulated the price the third-party payers provided reimbursement for its products through the use of "price protection."

358. Amgen would usually have at least one or two price increases per year around 5 percent on all products. However, Amgen price protected their contracted customers. So if Amgen had a 5 percent increase on Aranesp, Neupogen, and Neulasta, Amgen would report the new price to Medicare since Medicare updates its reimbursement amounts every 15 days based on published prices.

359. Since most customers were still under contract, Amgen would charge the contracted price for these medical providers until the expiration of the contract. Medical providers, however, would receive increased reimbursement based upon Amgen's representation

that it had increased its prices. This increase, however, was in name only and Amgen's customers would receive an additional five percent reimbursement from Medicaid and Medicare without any corresponding increase in their costs. Amgen's price protection was usually for six months.

360. Amgen also fraudulently manipulated the reimbursement of its products by third party payers including Medicaid and Medicare by providing free goods and samples. Each Amgen sales representative had $50,000.00 dollars in free goods at his/her discretion for making deals. More could be obtained via Amgen Sales and Marketing approval or management approval. "Free samples" of Amgen products were often liberally doled out amounting to, again, pure profit for the medical providers who could then charge third-party payers the full amount for reimbursement for the administration of these Amgen products in medical offices and hospitals.

### 5. Marketing to spread by Amgen.

361. The sales representatives were trained by Defendant Amgen to persuade medical providers to purchase Amgen's drugs based on the profits the providers would realize due to the greater spread created by Amgen. Defendant instructed its sales representatives not to leave the spreadsheets in the providers' offices and not to store them on their computers for fear that they could be used as evidence of Defendant's wrongdoing.

362. By manipulating the prices of its drugs and by "marketing the spread," Defendant has passed the cost of the medical providers' extra profits on to federal and state health care programs because it has knowingly caused the government to pay false or fraudulent claims based on inflated drug prices.

363.   In addition, the artificially inflated profits received by the medical providers as a result of Defendant's AWP manipulation and marketing of the spread, constitute illegal kickbacks to induce providers to purchase Defendant's products in violation of federal antikickback laws.

364.   Medical providers, including Defendants, Florida Cancer Specialists, Gulfcoast Oncology Associates, and ICON, knowingly profited from Amgen's practice of selling on the spread.  The profits these medical providers could realize by buying on the spread enticed them to purchase, administer, and seek reimbursement from Medicare and Medicaid for anemia drugs that often times were medically unnecessary.

365.   Amgen's practice of marketing the spread has caused government healthcare programs to suffer billions of dollars in damages as a result of increasing Medicare and Medicaid reimbursement due to inflated AWPs and by encouraging physicians to purchase its drugs based on financial incentives as opposed to medical necessity.

### 6.   Improper Financial Incentives to Medical Providers.

366.   Defendant Amgen's fraudulent marketing and sales activities were not limited to marketing the spread. Amgen's sales programs were driven by the payment of other improper incentives to medical providers – including but not limited to sham honoraria. These financial incentives not only constitute illegal kickbacks, but also caused the submission of false claims for payment to the government.

367.   Amgen also gained market share by providing physicians with kickbacks under the guise of honoraria. For example, Amgen would invite medical providers to dinners referred to as roundtable discussions during which physicians were supposed to present information

regarding certain relevant medical issues.  However, often no medical discussions would take place and Amgen sales representatives would not only provide free dinner for the physician and his/her family but would also pay the physician up to $1,000 simply for showing up at the restaurant and eating a free dinner.

368.    Amgen also gained market share by providing medical practice employees with "reimbursement roundtables."  These reimbursement roundtables were often nothing more than an attempt by Amgen to induce the staff of medical providers to prefer Amgen products as these roundtables often featured meals with minimal discussion, if at all, of how to bill for Amgen products.

369.    Defendants Florida Cancer Specialists, Gulfcoast Oncology Associates, and ICON all accepted these sham honoraria.

370.    Furthermore, Defendant Amgen concealed or failed to disclose these improper financial incentives even though they decreased the effective prices of its pharmaceuticals.

### 7.    Marketing and promotion of off-label sales by Amgen.

371.    Amgen caused false claims to be made to the government by marketing and promoting the off-label use of its drugs, including Aranesp.

372.    For instance, Aranesp is only indicated for the treatment of anemia associated with chronic renal failure and chemotherapy induced anemia. However, other ESAs including Procrit and Epogen have several other indications in addition to the two indications for Aranesp. Amgen's management pressured its sales representatives to promote the off-label use of Aranesp for these other indications, including anemia in zidovudine-treated HIV patients, reduction of allogeneic blood transfusions in surgery patients, anemia of cancer and MDS.  Amgen set quotas

for sales of Aranesp that were included in compensation agreements with its sales representatives and in contracts with medical providers. These quotas could only be met if Aranesp was promoted and used for offlabel purposes.

**F.      Defendants' Fraudulent Activities Have Threatened Public Health and Safety**.

373.     As explained above, several studies have linked the use of anemia drugs, such as Aranesp and Epogen to cardiovascular incidents including death and faster tumor growth. Furthermore, the FDA added a black box warning to the drugs' labels cautioning doctors that the medications should be administered at the lowest dose possible in order to bring red blood cell counts to the lowest level necessary to avoid transfusions.

374.     Therefore, Defendant Amgen, by giving medical providers financial incentives and kickbacks in return for purchasing its anemia drugs, has caused these drugs to be administered in situations in which they are medically unnecessary, thereby unnecessarily exposing patients to risks such as cardiovascular problems.

375.     One of the physicians who routinely accepted financial incentives from Amgen in return for purchasing its drugs stated, "Yes, we use Aranesp and Neulasta and some of our patients actually need it" and "Yes, the patient only has 6 more months to live, and that's 6 more months we can bill Medicare."

376.     Defendant, by providing financial incentives which encouraged the overuse of its anemia drugs, exposed patients to the complications that are associated with higher doses of these drugs.

111

### G.    Affected Federal and State Health Care Programs.

377.    The Unites States provides medical insurance for indigent or poor persons through Title XIX of the Social Security Act, a program commonly referred to as Medicaid.  Medicaid is a jointly funded program between the federal and state governments such that the various states named herein are affected and, therefore, properly joined to this lawsuit through their respective state fraud recovery statutes.

378.    Although Medicaid is administered at the state level, each state is required to adhere to federal guidelines.  Federal statutes and regulations limit the drugs that the federal government will pay for through its funding of state Medicaid programs.  Federal statutes and regulations, furthermore, restrict the uses for which the federal government will pay for approved drugs – even an approved drug may not be paid for if used for an improper indication.

379.    Generally, a medically accepted indication must be indicated before Medicaid will reimburse a medical provider or pharmacy for a drug that is prescribed or administered to an individual covered by Medicaid.

380.    In submitting fraudulent claims for reimbursement under the Medicaid program, Defendant Amgen and Defendant Medical Providers defrauded the United States of America and affected state governments named herein under the applicable statutes and regulations.

381.    Medicare is a health insurance program also administered by the federal government through the Social Security Administration.  Medicare is intended for retirees and persons who are disabled.

382.    Medicare has, since the enactment of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, paid for outpatient prescription drugs for covered

individuals and is administered by the Department of Health and Human Services, Centers for Medicare and Medicaid.

383.     Coverage of prescription drugs under the Medicare Part D program requires adherence to the same laws and regulations as the Medicaid program.

384.     In submitting fraudulent claims for reimbursement under the Medicare program, Defendant Amgen and Defendant Medical Providers defrauded the United States of America named herein under the applicable statutes and regulations.

385.     In addition to Medicaid and Medicare, the federal government also is affected by the fraud of Defendant under various other health care programs.

386.     The United States Government provides for health insurance for federal employees.  These programs are generally administered by the United States Government pursuant to 5 U.S.C §8901 *et seq*., providing insurance coverage for federal employees and those persons related to federal employees.

397.     The Unites States Government provides medical insurance for covered individuals through the Civilian Health and Medical Program of the Department of Veterans Affairs.  This program provides for the coverage of medical services for eligible persons.

388.     The United States Government further provides for covered health care services and supplies with eligible beneficiaries through the Tri-Care program.  Administered based upon federal statutory authority, the Tri-Care program provides for the care of uniformed military personnel and related individuals through civilian facilities.

389.     The Indian Health Service provides comprehensive medical care to covered individuals and is administered by the Department of Health and Human Services pursuant to 42 U.S.C. § 2002 *et seq*.

390.    The Railroad Retirement Medicare program is authorized by the Railroad Retirement Act of 1974, at U.S.C.A. §231 et seq.  It is administered though the United States Railroad Retirement Board and is affected in the same way as other federal health care programs in the fraudulent submission for reimbursement by Defendants for the improper use of the drugs described herein for non-approved uses, for the failure to provide notification of the rebates received, and for the other fraudulent activity alleged herein.

391.    For each of these programs named herein, the fraud perpetrated upon them by Defendant Amgen and Defendant Medical Providers resulted in illegal payments or overpayments for drugs.  The fraudulent submission for reimbursement for non-approved or medically unnecessary uses and other purposes as described herein caused direct harm to the federal government and affected states by the payment or overpayment to the requested entities that should not have been reimbursed or paid.  In addition, the failure to identify the rebates received by Defendant Medical Providers resulted in overpayment of reimbursement to these entities.

## COUNT ONE
### Violation of False Claims Act, 31 U.S.C. § 3729(a)
### as to Defendant Amgen

392.    Relator realleges and incorporates by reference the allegations of paragraphs 1-391 of this complaint.

393.    This count sets forth claims for treble damages and forfeitures under the federal False Claims Act, 31 U.S.C. §§ 3729-3732, as amended.

394.    As described above, Defendant Amgen has engaged in fraudulent activities including but not limited to falsely representing the costs of its drugs; engaging in improper sales and marketing schemes including promoting off-label sales and "marketing the spread;" paying illegal kickbacks to physicians; and inducing doctors to prescribe drugs that were not medically necessary for patients and/or to prescribe these drugs in an amount beyond what was medically necessary or sufficient to obtain the medical benefit.

395.    Defendant has knowingly violated:

(a)     31 U.S.C. § 3729(a)(1) by knowingly presenting, or causing to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;

(b)     31 U.S.C. § 3729(a)(2) by knowingly making, using, or causing to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; and/or

(c)     31 U.S.C. § 3729(a)(3) by conspiring to defraud the Government by getting a false or fraudulent claim allowed or paid.

396.    By reason of Defendant's fraudulent activities, the United States has been damaged, and possibly continues to be damaged.

## COUNT TWO
### Violation of False Claims Act, 31 U.S.C. § 3729(a)
### as to Defendant Medical Providers as Specified Herein

397.   Relator realleges and incorporates by reference the allegations of paragraphs 1-396 of this complaint.

398.   This count sets forth claims for treble damages and forfeitures under the federal False Claims Act, 31 U.S.C. §§ 3729-3732, as amended.

399.   As described above, Defendant Medical Providers, and each of them, named and specified herein have engaged in fraudulent activities including but not limited to purchasing Amgen drug products and submitting claims to the government for reimbursement for these drugs in order to receive financial incentives and kickbacks from Amgen.  Defendant Medical Providers have, furthermore, prescribed and submitted reimbursement forms to the United States for medical drugs that were administered to patients when not medically necessary for the patient or in an amount greater than medically necessary for the patient or in an amount greater than necessary to obtain the medical benefit for the patient.  Defendant Medical Providers also have submitted false or fraudulent claims for payment to the government by engaging in fraudulent practices encouraged by Amgen  such as billing government hea1thcare programs for the overfill in vials.

400.   Defendants have knowingly violated:

(a)     31 U.S.C. § 3729(a)(1) by knowingly presenting, or causing to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;

116

(b)     31 U.S.C. § 3729(a)(2) by knowingly making, using, or causing to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; and/or

(c)     31 U.S.C. § 3729(a)(3) by conspiring to defraud the Government by getting a false or fraudulent claim allowed or paid.

401.    By reason of Defendants' fraudulent activities, the United States has been damaged, and possibly continues to be damaged.

**COUNT THREE**
**Violation of California False Claims Act, Cal. Gov. Code § 12650 *et seq*.**
**as to Defendants Amgen and**
**Redwood Regional Oncology, Tower Hematology Oncology Medical Group, Cancer Associates of Fresno Medical Group, Inc., Pacific Oncology Hematology Associates, Inc., Regents of the University of California; Pacific Shores Medical Group, Inc. Santa Barbara Hematology-Oncology Medical Group, Inc., Santa Barbara Hematology-Oncology Medical Group, Inc., The Breast Care Center – Oncology Center; East Bay Medical Oncology Hematology Associates, Orange Coast Oncology, Cancer Care Associates Medical Group, Inc., Ventura County Hematology-Oncology Specialists, Inc., Valley Medical Oncology Consultants, Wilshire Oncology Medical Group, North County Oncology, Stockton Hematology Oncology, Medical Group of North County, Southbay Oncology Hematology Partners, Cancer Care Consultants, Medical Oncology Associates of San Diego, Hematology Oncology Medical Group of Orange County, St. Joseph Medical Plaza-Buildin, Valley Tumor Medical Group, d/b/a Antelope Valley Cancer Center, The Angeles Clinic and Research Institute, Los Palos Oncology and Hematology, Capitol Hematology/Oncology, North Valley Hematology Oncology Medical Group, Pacific Hematology and Oncology Associates, and Palo Alto Medical Foundation ("California Medical Providers")**

402.    Relator realleges and incorporates by reference the allegations of paragraphs 1-401 of this complaint.

403.    This is a claim for treble damages and penalties under the California False Claims Act.

404.     At all relevant times herein, Defendants Amgen, Redwood Regional Oncology, Tower Hematology Oncology Medical Group, Cancer Associates of Fresno Medical Group, Inc., Pacific Oncology Hematology Associates, Inc., Regents of the University of California; Pacific Shores Medical Group, Inc. Santa Barbara Hematology-Oncology Medical Group, Inc., Santa Barbara Hematology-Oncology Medical Group, Inc., The Breast Care Center – Oncology Center; East Bay Medical Oncology Hematology Associates, Orange Coast Oncology, Cancer Care Associates Medical Group, Inc., Ventura County Hematology-Oncology Specialists, Inc., Valley Medical Oncology Consultants, Wilshire Oncology Medical Group, and North County Oncology, Stockton Hematology Oncology, Medical Group of North County, Southbay Oncology Hematology Partners, Cancer Care Consultants, Medical Oncology Associates of San Diego, Hematology Oncology Medical Group of Orange County, St. Joseph Medical Plaza-Buildin, Valley Tumor Medical Group, d/b/a Antelope Valley Cancer Center, The Angeles Clinic and Research Institute, Los Palos Oncology and Hematology, Capitol Hematology/Oncology, North Valley Hematology Oncology Medical Group, Pacific Hematology and Oncology Associates, and Palo Alto Medical Foundation  ("California Medical Providers") did business in the State of California.

405.     As described above, Defendant Amgen and California Medical Providers have engaged in fraudulent activities including but not limited to selling and purchasing Amgen drug products and submitting claims to the State of California for reimbursement for these drugs. Defendant California Medical Providers received financial incentives and kickbacks from Amgen that were not properly disclosed to the State of California nor was the State of California provided its proportionate share of any discount received.

406.    As described above, Defendant Amgen and California Medical Providers have engaged in fraudulent activities including but not limited to selling and purchasing Amgen drug products and submitting claims to the State of California for reimbursement for these drugs. Defendant California Medical Providers administered these drugs to patients without medical necessity or in amount greater than medically necessary for a patient or in an amount greater than necessary to obtain the medical benefit for the patient.  Despite administering these drugs without medical benefit or necessity or in excess of what would be required to obtain the medical benefit or necessity, Defendant California Medical Providers then sought reimbursement from the State of California for these improperly and fraudulently administered drugs.

407.    As described herein, Defendants have knowingly violated California's False Claims Act by submitting these false claims and omitting material information such that the State of California, not knowing that these claims were false and not aware of the omitted information, paid these claims that would not be paid but for the illegal acts of Defendants Amgen and California Medical Providers.

408.    By reason of the acts described herein, the State of California has been damaged and continues to be damaged in an amount to be fully calculated and stated at trial.

409.    The State of California is, furthermore, entitled to the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented, or caused to be made, used, or presented by Defendant Amgen and California Medical Providers.

## COUNT FOUR
### Violation of Delaware False Claims Act, 6 Del. Code § 1201 *et seq.*
### as to Defendants Amgen and Medical Oncology Hematology Consultants, P.A.
### ("Delaware Medical Providers")

410.    Relator realleges and incorporates by reference the allegations of paragraphs 1-409 of this complaint.

411.    This is a claim for treble damages and penalties under the Delaware False Claims and Reporting Act.

412.    At all relevant times herein, Defendants Amgen and Medical Oncology Hematology Consultants, P.A. ("Delaware Medical Providers") did business in the State of Delaware.

413.    As described above, Defendant Amgen and Delaware Medical Providers have engaged in fraudulent activities including but not limited to selling and purchasing Amgen drug products and submitting claims to the State of Delaware for reimbursement for these drugs. Defendant Delaware Medical Providers received financial incentives and kickbacks from Amgen that were not properly disclosed to the State of Delaware nor was the State of Delaware provided its proportionate share of any discount received.

414.    As described above, Defendant Amgen and Delaware Medical Providers have engaged in fraudulent activities including but not limited to selling and purchasing Amgen drug products and submitting claims to the State of Delaware for reimbursement for these drugs. Defendant Delaware Medical Providers administered these drugs to patients without medical necessity or in amount greater than medically necessary for a patient or in an amount greater than necessary to obtain the medical benefit for the patient.  Despite administering these drugs without medical benefit or necessity or in excess of what would be required to obtain the medical benefit

or necessity, Defendant Delaware Medical Providers then sought reimbursement from the State of Delaware for these improperly and fraudulently administered drugs.

415.    As described herein, Defendants have knowingly violated Delaware's False Claims and Reporting Act by submitting these false claims and omitting material information such that the State of Delaware, not knowing that these claims were false and not aware of the omitted information, paid these claims that would not be paid but for the illegal acts of Defendants Amgen and Delaware Medical Providers.

416.    By reason of the acts described herein, the State of Delaware has been damaged and continues to be damaged in an amount to be fully calculated and stated at trial.

417.    The State of Delaware is, furthermore, entitled to the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented, or caused to be made, used, or presented by Defendant Amgen and Delaware Medical Providers.

## COUNT FIVE
### Violation of the District of Columbia Procurement Reform Amendment Act, D.C. Code Ann. § 2-308.13 *et seq.* as to Defendant Amgen and George Washington University Medical Faculty Associates
### ("District of Columbia Medical Providers")

418.    Relator realleges and incorporates by reference the allegations of paragraphs 1-417 of this complaint.

419.    This is a claim for treble damages and penalties under the District of Columbia Procurement Reform Amendment Act.

420.    At all relevant times herein, Defendants Amgen and George Washington University Medical Faculty Associates ("District of Columbia Medical Providers") did business in the District of Columbia.

421.    As described above, Defendant Amgen and District of Columbia Medical Providers have engaged in fraudulent activities including but not limited to selling and purchasing Amgen drug products and submitting claims to the District of Columbia for reimbursement for these drugs.  Defendant District of Columbia Medical Providers received financial incentives and kickbacks from Amgen that were not properly disclosed to the District of Columbia nor was the District of Columbia provided its proportionate share of any discount received.

422.    As described above, Defendant Amgen and District of Columbia Medical Providers have engaged in fraudulent activities including but not limited to selling and purchasing Amgen drug products and submitting claims to the District of Columbia for reimbursement for these drugs.  Defendant District of Columbia Medical Providers administered these drugs to patients without medical necessity or in amount greater than medically necessary for a patient or in an amount greater than necessary to obtain the medical benefit for the patient. Despite administering these drugs without medical benefit or necessity or in excess of what would be required to obtain the medical benefit or necessity, Defendant District of Columbia Medical Providers then sought reimbursement from the District of Columbia for these improperly and fraudulently administered drugs.

423.    As described herein, Defendants have knowingly violated the District of Columbia Procurement Reform Amendment Act by submitting these false claims and omitting material information such that the District of Columbia, not knowing that these claims were false and not aware of the omitted information, paid these claims that would not be paid but for the illegal acts of Defendants Amgen and District of Columbia Medical Providers.

122

424.   By reason of the acts described herein, the District of Columbia has been damaged and continues to be damaged in an amount to be fully calculated and stated at trial.

425.   The District of Columbia, is, furthermore, entitled to the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented, or caused to be made, used, or presented by Defendant Amgen and District of Columbia Medical Providers.

## COUNT SIX
### Violation of Florida False Claims Act, Fl. Stat. § 66.081 *et seq.* as to Defendants Amgen and
**Florida Cancer Specialists, Gulfcoast Oncology Associates, Integrated Community Oncology Network, LLC, Oncology Hematology Radiation Care, LLC d/b/a Advance Medical Specialists, Palm Beach Cancer Institute, Hematology and Oncology Consultants, Florida Hematology Oncology Specialists, Hematology and Oncology Associates of the Treasure Coast, Mid Florida Hematology and Oncology Centers, Pasco Hernando Oncology Associates, P.A., Regional Consultants in Hematology and Oncology, Boca Raton Community Hospital, Inc., Cancer Institute of Florida, P.A., South Florida Oncology Hematology, Coastal Oncology, PL, Oncology Physicians, Stuart Oncology, Neil Finkler and Robert Holloway, M.D.S., Ayub, Sokoi, Matzkowitz and Sennabaum, d/b/a New Hope Cancer Center, Hematology and Medical Oncology of Southern Palm Beach County, and David Dresdner, M.D.**
**("Florida Medical Providers")**

426.   Relator realleges and incorporates by reference the allegations of paragraphs 1-425 of this complaint.

427.   This is a claim for treble damages and penalties under the Florida False Claims Act.

428.   At all relevant times herein, Defendants Amgen and Florida Cancer Specialists, Gulfcoast Oncology Associates, Integrated Community Oncology Network, LLC, Oncology Hematology Radiation Care, LLC d/b/a Advance Medical Specialists, Palm Beach Cancer Institute, Hematology and Oncology Consultants, Florida Hematology Oncology Specialists, Hematology and Oncology Associates of the Treasure Coast, Mid Florida Hematology and

Oncology Centers, Pasco Hernando Oncology Associates, P.A., Regional Consultants in Hematology and Oncology, Boca Raton Community Hospital, Inc., Cancer Institute of Florida, P.A., South Florida Oncology Hematology , Coastal Oncology, PL, Oncology Physicians, Stuart Oncology, Neil Finkler and Robert Holloway, M.D.S., Ayub, Sokoi, Matzkowitz and Sennabaum, d/b/a New Hope Cancer Center, Hematology and Medical Oncology of Southern Palm Beach County, and David Dresdner, M.D. ("Florida Medical Providers") did business in the State of Florida.

429.   As described above, Defendant Amgen and Florida Medical Providers have engaged in fraudulent activities including but not limited to selling and purchasing Amgen drug products and submitting claims to the State of Florida for reimbursement for these drugs. Defendant Florida Medical Providers received financial incentives and kickbacks from Amgen that were not properly disclosed to the State of Florida nor was the State of Florida provided its proportionate share of any discount received.

430.   As described above, Defendant Amgen and Florida Medical Providers have engaged in fraudulent activities including but not limited to selling and purchasing Amgen drug products and submitting claims to the State of Florida for reimbursement for these drugs. Defendant Florida Medical Providers administered these drugs to patients without medical necessity or in amount greater than medically necessary for a patient or in an amount greater than necessary to obtain the medical benefit for the patient.  Despite administering these drugs without medical benefit or necessity or in excess of what would be required to obtain the medical benefit or necessity, Defendant Florida Medical Providers then sought reimbursement from the State of Florida for these improperly and fraudulently administered drugs.

431.     As described herein, Defendants have knowingly violated Florida's False Claims Act by submitting these false claims and omitting material information such that the State of Florida, not knowing that these claims were false and not aware of the omitted information, paid these claims that would not be paid but for the illegal acts of Defendants Amgen and Florida Medical Providers.

432.     By reason of the acts described herein, the State of Florida has been damaged and continues to be damaged in an amount to be fully calculated and stated at trial.

433.     The State of Florida, is, furthermore, entitled to the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented, or caused to be made, used, or presented by Defendant Amgen and Florida Medical Providers.

## COUNT SEVEN
### Violation of Georgia False Medicaid Claims Act, O.C.G.A. § 49-4-168 *et seq.* as to Defendants Amgen and Georgia Cancer Specialists, Northwest Georgia Oncology Centers, Augusta Oncology Associates, Central Georgia Cancer Care, Northeast Georgia Cancer Care, Southeast Georgia Hematology/Oncology, Southeastern Gynecologic Oncology, and The Longstreet Clinic, P.C. ("Georgia Medical Providers")

434.     Relator realleges and incorporates by reference the allegations of paragraphs 1-433 of this complaint.

435.     This is a claim for damages and penalties under the Georgia False Medicaid Claims Act.

436.     At all relevant times herein, Defendants Amgen and Georgia Cancer Specialists, Northwest Georgia Oncology Centers, Augusta Oncology Associates, Central Georgia Cancer Care, Northeast Georgia Cancer Care, Southeast Georgia Hematology/Oncology, Southeastern

Gynecologic Oncology, and The Longstreet Clinic, P.C. ("Georgia Medical Providers") did business in the State of Georgia.

437.    As described above, Defendant Amgen and Georgia Medical Providers have engaged in fraudulent activities including but not limited to selling and purchasing Amgen drug products and submitting claims to the State of Geogia for reimbursement for these drugs. Defendant Georgia Medical Providers received financial incentives and kickbacks from Amgen that were not properly disclosed to the State of Georgia nor was the State of Georgia provided its proportionate share of any discount received.

438.    As described above, Defendant Amgen and Georgia Medical Providers have engaged in fraudulent activities including but not limited to selling and purchasing Amgen drug products and submitting claims to the State of Georgia for reimbursement for these drugs. Defendant Georgia Medical Providers administered these drugs to patients without medical necessity or in amount greater than medically necessary for a patient or in an amount greater than necessary to obtain the medical benefit for the patient.  Despite administering these drugs without medical benefit or necessity or in excess of what would be required to obtain the medical benefit or necessity, Defendant Georgia Medical Providers then sought reimbursement from the State of Georgia for these improperly and fraudulently administered drugs.

439.    As described herein, Defendants have knowingly violated Georgia False Medicaid Claims Act by submitting these false claims and omitting material information such that the State of Georgia, not knowing that these claims were false and not aware of the omitted information, paid these claims that would not be paid but for the illegal acts of Defendants Amgen and Georgia Medical Providers.

440.    By reason of the acts described herein, the State of Georgia has been damaged and continues to be damaged in an amount to be fully calculated and stated at trial.

441.    The State of Georgia, is, furthermore, entitled to the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented, or caused to be made, used, or presented by Defendant Amgen and Georgia Medical Providers.


### COUNT EIGHT
### Violation of Hawai'i False Claims Act, Haw. Rev. Stat. § 661-21 *et seq.*
### as to Defendants Amgen and
### Oncare Hawaii, Inc. ("Hawai'i Medical Providers")

442.    Relator realleges and incorporates by reference the allegations of paragraphs 1-441 of this complaint.

443.    This is a claim for treble damages and penalties under the Hawai'i False Claims Act.

444.    At all relevant times herein, Defendants Amgen and Oncare Hawaii, Inc. ("Hawai'i Medical Providers") did business in the State of Hawai'i.

445.    As described above, Defendant Amgen and Hawai'i Medical Providers have engaged in fraudulent activities including but not limited to selling and purchasing Amgen drug products and submitting claims to the State of Hawai'i for reimbursement for these drugs. Defendant Hawai'i Medical Providers received financial incentives and kickbacks from Amgen that were not properly disclosed to the State of Hawai'i nor was the State of Hawai'i provided its proportionate share of any discount received.

446.    As described above, Defendant Amgen and Hawai'i Medical Providers have engaged in fraudulent activities including but not limited to selling and purchasing Amgen drug

products and submitting claims to the State of Hawai'i for reimbursement for these drugs. Defendant Hawai'i Medical Providers administered these drugs to patients without medical necessity or in amount greater than medically necessary for a patient or in an amount greater than necessary to obtain the medical benefit for the patient. Despite administering these drugs without medical benefit or necessity or in excess of what would be required to obtain the medical benefit or necessity, Defendant Hawai'i Medical Providers then sought reimbursement from the State of Hawai'i for these improperly and fraudulently administered drugs.

447.    As described herein, Defendants have knowingly violated Hawai'i's False Claims Act by submitting these false claims and omitting material information such that the State of Hawai'i , not knowing that these claims were false and not aware of the omitted information, paid these claims that would not be paid but for the illegal acts of Defendants Amgen and Hawai'i Medical Providers.

448.    By reason of the acts described herein, the State of Hawai'i has been damaged and continues to be damaged in an amount to be fully calculated and stated at trial.

449.    The State of Hawai'i, is, furthermore, entitled to the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented, or caused to be made, used, or presented by Defendant Amgen and Hawai'i Medical Providers.

## COUNT NINE
**Violation of Illinois Whistleblower Reward and Protection Act,**
**740 Ill. Comp. Stat. § 173/1 *et seq.***
**as to Defendants Amgen and**
**Oncology-Hematology Associates of Central Illinois, Prairie Oncology Management**
**Services, LLC, Intermed Oncology, Northwest Oncology and Hematology, Northwestern**
**Medical Faculty Foundation, Joliet Oncology Hematology Associates, Inc., Fox Valley**
**Hematology and Oncology, Ltd., Medical Arts Associates, Ltd., North Shore Oncology-**
**Hematology Associates, Ltd., Edward Cancer Center, and Associates in Medical Oncology**
**("Illinois Medical Providers")**

450.     Relator realleges and incorporates by reference the allegations of paragraphs 1-
449 of this complaint.

451.     This is a claim for treble damages and penalties under the Illinois Whistleblower
Reward and Protection Act.

452.     At all relevant times herein, Defendants Amgen and Oncology-Hematology
Associates of Central Illinois, Prairie Oncology Management Services, LLC, Intermed Oncology,
Northwest Oncology and Hematology, Northwestern Medical Faculty Foundation, Joliet
Oncology Hematology Associates, Inc., Fox Valley Hematology and Oncology, Ltd., Medical
Arts Associates, Ltd., North Shore Oncology-Hematology Associates, Ltd., Edward Cancer
Center, and Associates in Medical Oncology ("Illinois Medical Providers") did business in the
State of Illinois.

453.     As described above, Defendant Amgen and Illinois Medical Providers have
engaged in fraudulent activities including but not limited to selling and purchasing Amgen drug
products and submitting claims to the State of Illinois for reimbursement for these drugs.
Defendant Illinois Medical Providers received financial incentives and kickbacks from Amgen
that were not properly disclosed to the State of Illinois nor was the State of Illinois provided its
proportionate share of any discount received.

454.    As described above, Defendant Amgen and Illinois Medical Providers have engaged in fraudulent activities including but not limited to selling and purchasing Amgen drug products and submitting claims to the State of Illinois for reimbursement for these drugs. Defendant Illinois Medical Providers administered these drugs to patients without medical necessity or in amount greater than medically necessary for a patient or in an amount greater than necessary to obtain the medical benefit for the patient.  Despite administering these drugs without medical benefit or necessity or in excess of what would be required to obtain the medical benefit or necessity, Defendant Illinois Medical Providers then sought reimbursement from the State of Illinois for these improperly and fraudulently administered drugs.

455.    As described herein, Defendants have knowingly violated Illinois Whistleblower Reward and Protection Act by submitting these false claims and omitting material information such that the State of Illinois, not knowing that these claims were false and not aware of the omitted information, paid these claims that would not be paid but for the illegal acts of Defendants Amgen and Illinois Medical Providers.

456.    By reason of the acts described herein, the State of Illinois has been damaged and continues to be damaged in an amount to be fully calculated and stated at trial.

457.    The State of Illinois, furthermore, entitled to the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented, or caused to be made, used, or presented by Defendant Amgen and Illinois Medical Providers.

**COUNT TEN**
**Violation of Indiana False Claims and Whistleblower Act, In. Code 5-11-5.5** *et seq.*
**as to Defendants Amgen and**
**Michiana Hematology-Oncology, Inc., Hematology-Oncology of Indiana, P.C., Oncology**
**Hematology Associates of South West Indiana, Cancer Health Treatment Centers, P.C.,**
**Fort Wayne Medical Oncology and Hematology, American Health Network Hematology**
**Associates, Cancer Care Center, Inc., Arnett Cancer Care, A P. and S. Clinic, LLC,**
**Medical Consultants, American Health Network, and Internal Medicine Associates**
**("Indiana Medical Providers")**

458.    Relator realleges and incorporates by reference the allegations of paragraphs 1-457 of this complaint.

459.    This is a claim for treble damages and penalties under the Indiana False Claims and Whistleblower Act.

460.    At all relevant times herein, Defendants Amgen and Michiana Hematology-Oncology, Inc., Hematology-Oncology of Indiana, P.C., Oncology Hematology Associates of South West Indiana, Cancer Health Treatment Centers, P.C., Fort Wayne Medical Oncology and Hematology, American Health Network Hematology Associates, Cancer Care Center, Inc., Arnett Cancer Care, A P. and S. Clinic, LLC, Medical Consultants, American Health Network, and Internal Medicine Associates ("Indiana Medical Providers") did business in the State of Indiana.

461.    As described above, Defendant Amgen and Indiana Medical Providers have engaged in fraudulent activities including but not limited to selling and purchasing Amgen drug products and submitting claims to the State of Illinois for reimbursement for these drugs. Defendant Indiana Medical Providers received financial incentives and kickbacks from Amgen that were not properly disclosed to the State of Indiana nor was the State of Indiana provided its proportionate share of any discount received.

462.    As described above, Defendant Amgen and Indiana Medical Providers have engaged in fraudulent activities including but not limited to selling and purchasing Amgen drug products and submitting claims to the State of Indiana for reimbursement for these drugs. Defendant Indiana Medical Providers administered these drugs to patients without medical necessity or in amount greater than medically necessary for a patient or in an amount greater than necessary to obtain the medical benefit for the patient.  Despite administering these drugs without medical benefit or necessity or in excess of what would be required to obtain the medical benefit or necessity, Defendant Indiana Medical Providers then sought reimbursement from the State of Indiana for these improperly and fraudulently administered drugs.

463.    As described herein, Defendants have knowingly violated Indiana False Claims and Whistleblower Act by submitting these false claims and omitting material information such that the State of Indiana, not knowing that these claims were false and not aware of the omitted information, paid these claims that would not be paid but for the illegal acts of Defendants Amgen and Indiana Medical Providers.

464.    By reason of the acts described herein, the State of Indiana has been damaged and continues to be damaged in an amount to be fully calculated and stated at trial.

465.    The State of Indiana, furthermore, entitled to the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented, or caused to be made, used, or presented by Defendant Amgen and Indiana Medical Providers.

**COUNT ELEVEN**
**Violation of Louisiana Medical Assistance Programs Integrity Law,**
**La. Rev. Stat. § 46: 437 *et seq.***
**as to Defendants Amgen and**
**Oncology RX, Louisiana Oncology Associates, and Louisiana Hematology Oncology**
**Associates ("Louisiana Medical Providers")**

466.    Relator realleges and incorporates by reference the allegations of paragraphs 1-465 of this complaint.

467.    This is a claim for damages and penalties under the Louisiana Medical Assistance Programs Integrity Law.

468.    At all relevant times herein, Defendants Amgen and Oncology RX, Louisiana Oncology Associates, and Louisiana Hematology Oncology Associates ("Louisiana Medical Providers") did business in the State of Louisiana.

469.    As described above, Defendant Amgen and Louisiana Medical Providers have engaged in fraudulent activities including but not limited to selling and purchasing Amgen drug products and submitting claims to the State of Louisiana for reimbursement for these drugs. Defendant Louisiana Medical Providers received financial incentives and kickbacks from Amgen that were not properly disclosed to the State of Louisiana nor was the State of Louisiana provided its proportionate share of any discount received.

470.    As described above, Defendant Amgen and Louisiana Medical Providers have engaged in fraudulent activities including but not limited to selling and purchasing Amgen drug products and submitting claims to the State of Louisiana for reimbursement for these drugs. Defendant Louisiana Medical Providers administered these drugs to patients without medical necessity or in amount greater than medically necessary for a patient or in an amount greater than necessary to obtain the medical benefit for the patient.  Despite administering these drugs without medical benefit or necessity or in excess of what would be required to obtain the medical benefit

133

or necessity, Defendant Louisiana Medical Providers then sought reimbursement from the State of Louisiana for these improperly and fraudulently administered drugs.

471.    As described herein, Defendants have knowingly violated Louisiana's Medical Assistance Programs Integrity Law by submitting these false claims and omitting material information such that the State of Louisiana, not knowing that these claims were false and not aware of the omitted information, paid these claims that would not be paid but for the illegal acts of Defendants Amgen and Louisiana Medical Providers.

472.    By reason of the acts described herein, the State of Louisiana has been damaged and continues to be damaged in an amount to be fully calculated and stated at trial.

473.    The State of Louisiana, furthermore, entitled to the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented, or caused to be made, used, or presented by Defendant Amgen and Louisiana Medical Providers.

## COUNT TWELVE
### Violation of Massachusetts False Claims Law, Mass. Gen. Laws Ch. 12 § 5(B) *et seq.* as to Defendants Amgen and Berkshire Hematology Oncology, P.C. ("Massachusetts Medical Providers")

474.    Relator realleges and incorporates by reference the allegations of paragraphs 1-473 of this complaint.

475.    This is a claim for treble damages and penalties under the Massachusetts False Claims Law.

476.    At all relevant times herein, Defendants Amgen and Berkshire Hematology Oncology, P.C. ("Massachusetts Medical Providers") did business in the Commonwealth of Massachusetts.

477.     As described above, Defendant Amgen and Massachusetts Medical Providers have engaged in fraudulent activities including but not limited to selling and purchasing Amgen drug products and submitting claims to the State of Massachusetts for reimbursement for these drugs.  Defendant Massachusetts Medical Providers received financial incentives and kickbacks from Amgen that were not properly disclosed to the Commonwealth of Massachusetts nor was the Commonwealth of Massachusetts provided its proportionate share of any discount received.

478.     As described above, Defendant Amgen and Massachusetts Medical Providers have engaged in fraudulent activities including but not limited to selling and purchasing Amgen drug products and submitting claims to the Commonwealth of Massachusetts for reimbursement for these drugs.  Defendant Massachusetts Medical Providers administered these drugs to patients without medical necessity or in amount greater than medically necessary for a patient or in an amount greater than necessary to obtain the medical benefit for the patient.  Despite administering these drugs without medical benefit or necessity or in excess of what would be required to obtain the medical benefit or necessity, Defendant Massachusetts Medical Providers then sought reimbursement from the Commonwealth of Massachusetts for these improperly and fraudulently administered drugs.

479.     As described herein, Defendants have knowingly violated the Massachusetts False Claims Law by submitting these false claims and omitting material information such that the Commonwealth of Massachusetts, not knowing that these claims were false and not aware of the omitted information, paid these claims that would not be paid but for the illegal acts of Defendants Amgen and Massachusetts Medical Providers.

480.     By reason of the acts described herein, the Commonwealth of Massachusetts has been damaged and continues to be damaged in an amount to be fully calculated and stated at trial.

135

481.    The Commonwealth of Massachusetts, furthermore, is entitled to the maximum

penalty for each and every false or fraudulent claim, record or statement made, used, presented,

or caused to be made, used, or presented by Defendant Amgen and Massachusetts Medical

Providers.


**COUNT THIRTEEN**
**Violation of Michigan Medicaid False Claims Act, M.C.L. 400.601 *et seq*.**
**as to Defendants Amgen and**
**Cancer and Hematology Centers of Western Michigan, Cancer Care Associates, the**
**Oakland Medical Group, Great Lakes Cancer Management Specialists, Singh and Arora**
**Oncology Hematology, P.C., Genessee Cancer and Blood Disease Treatment Center, Inc.,**
**Oncology Care Associates, West Michigan Cancer Center, Michigan Hematology**
**Oncology, P.C., Hematology Oncology Consultants, Newland Medical Associates, Ann**
**Arbor Hematology Oncology Associates, P.C., and Genesee Hematology-Oncology, P.C.**
**("Michigan Medical Providers")**

482.    Relator realleges and incorporates by reference the allegations of paragraphs 1-

481 of this complaint.

483.    This is a claim for treble damages and penalties under the Michigan Medicaid

False Claims Act.

484.    At all relevant times herein, Defendants Amgen and Cancer and Hematology

Centers of Western Michigan, Cancer Care Associates, the Oakland Medical Group, Great Lakes

Cancer Management Specialists, Singh and Arora Oncology Hematology, P.C., Genessee Cancer

and Blood Disease Treatment Center, Inc., Oncology Care Associates, West Michigan Cancer

Center, Michigan Hematology Oncology, P.C., Hematology Oncology Consultants, Newland

Medical Associates, Ann Arbor Hematology Oncology Associates, P.C., and Genesee

Hematology-Oncology, P.C. ("Michigan Medical Providers") did business in the State of

Michigan.

485.    As described above, Defendant Amgen and Michigan Medical Providers have engaged in fraudulent activities including but not limited to selling and purchasing Amgen drug products and submitting claims to the State of Michigan for reimbursement for these drugs. Defendant Michigan Medical Providers received financial incentives and kickbacks from Amgen that were not properly disclosed to the State of Michigan nor was the State of Michigan provided its proportionate share of any discount received.

486.    As described above, Defendant Amgen and Michigan Medical Providers have engaged in fraudulent activities including but not limited to selling and purchasing Amgen drug products and submitting claims to the State of Michigan for reimbursement for these drugs. Defendant Michigan Medical Providers administered these drugs to patients without medical necessity or in amount greater than medically necessary for a patient or in an amount greater than necessary to obtain the medical benefit for the patient.  Despite administering these drugs without medical benefit or necessity or in excess of what would be required to obtain the medical benefit or necessity, Defendant Michigan Medical Providers then sought reimbursement from the State of Michigan for these improperly and fraudulently administered drugs.

487.    As described herein, Defendants have knowingly violated the Michigan Medicaid False Claims Act by submitting these false claims and omitting material information such that the State of Michigan, not knowing that these claims were false and not aware of the omitted information, paid these claims that would not be paid but for the illegal acts of Defendants Amgen and Michigan Medical Providers.

488.    By reason of the acts described herein, the State of Michigan has been damaged and continues to be damaged in an amount to be fully calculated and stated at trial.

489.    The State of Michigan, furthermore, is entitled to the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented, or caused to be made, used, or presented by Defendant Amgen and Michigan Medical Providers.

## COUNT FOURTEEN
### Violation of New Mexico Medicaid False Claims Act, N.M. Stat. § 27-2F-1 *et seq*. as to Defendants Amgen and New Mexico Oncology Hematology Consultants ("New Mexico Medical Providers")

490.    Relator realleges and incorporates by reference the allegations of paragraphs 1-489 of this complaint.

491.    This is a claim for treble damages and penalties under the New Mexico Medicaid False Claims Act.

492.    At all relevant times herein, Defendants Amgen and New Mexico Oncology Hematology Consultants ("New Mexico Medical Providers") did business in the State of New Mexico.

493.    As described above, Defendant Amgen and New Mexico Medical Providers have engaged in fraudulent activities including but not limited to selling and purchasing Amgen drug products and submitting claims to the State of New Mexico for reimbursement for these drugs. Defendant New Mexico Medical Providers received financial incentives and kickbacks from Amgen that were not properly disclosed to the State of New Mexico nor was the State of New Mexico provided its proportionate share of any discount received.

494.    As described above, Defendant Amgen and New Mexico Medical Providers have engaged in fraudulent activities including but not limited to selling and purchasing Amgen drug products and submitting claims to the State of New Mexico for reimbursement for these drugs.

Defendant New Mexico Medical Providers administered these drugs to patients without medical necessity or in amount greater than medically necessary for a patient or in an amount greater than necessary to obtain the medical benefit for the patient.  Despite administering these drugs without medical benefit or necessity or in excess of what would be required to obtain the medical benefit or necessity, Defendant New Mexico Medical Providers then sought reimbursement from the State of New Mexico for these improperly and fraudulently administered drugs.

495.    As described herein, Defendants have knowingly violated the New Mexico Medicaid False Claims Act by submitting these false claims and omitting material information such that the State of New Mexico, not knowing that these claims were false and not aware of the omitted information, paid these claims that would not be paid but for the illegal acts of Defendants Amgen and New Mexico Medical Providers.

496.    By reason of the acts described herein, the State of New Mexico has been damaged and continues to be damaged in an amount to be fully calculated and stated at trial.

497.    The State of New Mexico, furthermore, is entitled to the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented, or caused to be made, used, or presented by Defendant Amgen and New Mexico Medical Providers.

**COUNT FIFTEEN**
**Violation of New Jersey False Claims Act, N.J. Stat. § 2A:32C-1 *et seq*.**
**as to Defendants Amgen and**
**Medical Oncology-Hematology Specialists, Hematology-Oncology Associates of Northern**
**New Jersey, Hematology-Oncology of Central New Jersey, Cooper Cancer Institute,**
**Southern Oncology-Hematology Associates, P.A., Medical Diagnostic Associates, Kenneth**
**D. Hahum, M.D., Hunterdon Hematology Oncology Group, Princeton Medical Group,**
**Central Jersey Oncology Center, P.A., Atlantic Hematology Oncology Associates, Hope**
**Community Cancer Center, The Center for Hematology / Oncology, and Hematology**
**Oncology Associates of New Jersey**
**("New Jersey Medical Providers")**

498.     Relator realleges and incorporates by reference the allegations of paragraphs 1-497 of this complaint.

499.     This is a claim for treble damages and penalties under the New Jersey False Claims Act.

500.     At all relevant times herein, Defendants Amgen and Medical Oncology-Hematology Specialists, Hematology-Oncology Associates of Northern New Jersey, Hematology-Oncology of Central New Jersey, Cooper Cancer Institute, Southern Oncology-Hematology Associates, P.A., Medical Diagnostic Associates, Kenneth D. Hahum, M.D., Hunterdon Hematology Oncology Group, Princeton Medical Group, Central Jersey Oncology Center, P.A., Atlantic Hematology Oncology Associates, Hope Community Cancer Center, The Center for Hematology / Oncology, and Hematology Oncology Associates of New Jersey("New Jersey Medical Providers") did business in the State of New Jersey.

501.     As described above, Defendant Amgen and New Jersey Medical Providers have engaged in fraudulent activities including but not limited to selling and purchasing Amgen drug products and submitting claims to the State of New Jersey for reimbursement for these drugs. Defendant New Jersey Medical Providers received financial incentives and kickbacks from

Amgen that were not properly disclosed to the State of New Jersey nor was the State of New Jersey provided its proportionate share of any discount received.

502.    As described above, Defendant Amgen and New Jersey Medical Providers have engaged in fraudulent activities including but not limited to selling and purchasing Amgen drug products and submitting claims to the State of New Jersey for reimbursement for these drugs. Defendant New Jersey Medical Providers administered these drugs to patients without medical necessity or in amount greater than medically necessary for a patient or in an amount greater than necessary to obtain the medical benefit for the patient.  Despite administering these drugs without medical benefit or necessity or in excess of what would be required to obtain the medical benefit or necessity, Defendant New Jersey Medical Providers then sought reimbursement from the State of New Jersey for these improperly and fraudulently administered drugs.

503.    As described herein, Defendants have knowingly violated the New Jersey False Claims Act by submitting these false claims and omitting material information such that the State of New Jersey, not knowing that these claims were false and not aware of the omitted information, paid these claims that would not be paid but for the illegal acts of Defendants Amgen and New Jersey Medical Providers.

504.    By reason of the acts described herein, the State of New Jersey has been damaged and continues to be damaged in an amount to be fully calculated and stated at trial.

505.    The State of New Jersey, furthermore, is entitled to the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented, or caused to be made, used, or presented by Defendant Amgen and New Jersey Medical Providers.

141

**COUNT SIXTEEN**
**Violation of New York False Claims Act, N.Y. Stat. Fin. § 187 *et seq*.**
**as to Defendants Amgen and**
**North Shore Hematology Oncology Associates, P.C., Broome Oncology, Hematology**
**Oncology Associates of Central New York, P.C., Hudson Valley Hematology Oncology,**
**Queens Long Island Medical Group, P.C., Park Slope Medicine, Buffalo Medical Group,**
**Century Medical Associates, South Shore Hematology Oncology Associates, Tomao,**
**Marino and McNelis, M.D.S.,Department of Medicine Medical Services Group At SUNY**
**HSC d/b/a University Physicians, Hematology Oncology Associates of Western Suffolk,**
**P.C., Hematology and Medical Oncology, and Hematology-Oncology Associates of**
**Rockland, P.C.**
**("New York Medical Providers")**

506.    Relator realleges and incorporates by reference the allegations of paragraphs 1-505 of this complaint.

507.    This is a claim for treble damages and penalties under the New York False Claims Act.

508.    At all relevant times herein, Defendants Amgen and North Shore Hematology Oncology Associates, P.C., Broome Oncology, Hematology Oncology Associates of Central New York, P.C., Hudson Valley Hematology Oncology, Queens Long Island Medical Group, P.C., Park Slope Medicine, Buffalo Medical Group, Century Medical Associates, South Shore Hematology Oncology Associates, Tomao, Marino and McNelis, M.D.S.,Department of Medicine Medical Services Group At SUNY HSC d/b/a University Physicians, Hematology Oncology Associates of Western Suffolk, P.C., Hematology and Medical Oncology, and Hematology-Oncology Associates of Rockland, P.C. ("New York Medical Providers") did business in the State of New York.

509.    As described above, Defendant Amgen and New York Medical Providers have engaged in fraudulent activities including but not limited to selling and purchasing Amgen drug products and submitting claims to the State of New York for reimbursement for these drugs. Defendant New York Medical Providers received financial incentives and kickbacks from

142

Amgen that were not properly disclosed to the State of New York nor was the State of New York provided its proportionate share of any discount received.

510.     As described above, Defendant Amgen and New York Medical Providers have engaged in fraudulent activities including but not limited to selling and purchasing Amgen drug products and submitting claims to the State of New York for reimbursement for these drugs. Defendant New York Medical Providers administered these drugs to patients without medical necessity or in amount greater than medically necessary for a patient or in an amount greater than necessary to obtain the medical benefit for the patient.  Despite administering these drugs without medical benefit or necessity or in excess of what would be required to obtain the medical benefit or necessity, Defendant New York Medical Providers then sought reimbursement from the State of New York for these improperly and fraudulently administered drugs.

511.     As described herein, Defendants have knowingly violated the New York False Claims Act by submitting these false claims and omitting material information such that the State of New York, not knowing that these claims were false and not aware of the omitted information, paid these claims that would not be paid but for the illegal acts of Defendants Amgen and New York Medical Providers.

512.     By reason of the acts described herein, the State of New York has been damaged and continues to be damaged in an amount to be fully calculated and stated at trial.

513.     The State of New York, furthermore, is entitled to the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented, or caused to be made, used, or presented by Defendant Amgen and New York Medical Providers.

## COUNT SEVENTEEN
### Violation of Nevada False Claims Act, Nev. Rev. Stat. § 357.040 *et seq.*
### as to Defendants Amgen and
### Nevada Cancer Center and Cancer and Blood Specialists of Nevada
### ("Nevada Medical Providers")

514.    Relator realleges and incorporates by reference the allegations of paragraphs 1-513 of this complaint.

515.    This is a claim for treble damages and penalties under the Nevada False Claims Act.

516.    At all relevant times herein, Defendants Amgen and Nevada Cancer Center and Cancer and Blood Specialists of Nevada ("Nevada Medical Providers") did business in the State of Nevada.

517.    As described above, Defendant Amgen and Nevada Medical Providers have engaged in fraudulent activities including but not limited to selling and purchasing Amgen drug products and submitting claims to the State of Nevada for reimbursement for these drugs. Defendant Nevada Medical Providers received financial incentives and kickbacks from Amgen that were not properly disclosed to the State of Nevada nor was the State of Nevada provided its proportionate share of any discount received.

518.    As described above, Defendant Amgen and Nevada Medical Providers have engaged in fraudulent activities including but not limited to selling and purchasing Amgen drug products and submitting claims to the State of Nevada for reimbursement for these drugs. Defendant Nevada Medical Providers administered these drugs to patients without medical necessity or in amount greater than medically necessary for a patient or in an amount greater than necessary to obtain the medical benefit for the patient.  Despite administering these drugs without medical benefit or necessity or in excess of what would be required to obtain the medical benefit

144

or necessity, Defendant Nevada Medical Providers then sought reimbursement from the State of Nevada for these improperly and fraudulently administered drugs.

519.    As described herein, Defendants have knowingly violated the Nevada False Claims Act by submitting these false claims and omitting material information such that the State of Nevada, not knowing that these claims were false and not aware of the omitted information, paid these claims that would not be paid but for the illegal acts of Defendants Amgen and Nevada Medical Providers.

520.    By reason of the acts described herein, the State of Nevada has been damaged and continues to be damaged in an amount to be fully calculated and stated at trial.

521.    The State of Nevada, furthermore, is entitled to the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented, or caused to be made, used, or presented by Defendant Amgen and Nevada Medical Providers.

## COUNT EIGHTEEN
**Violation of Oklahoma Medicaid False Claims Act, 63 OK. Stat. § 5053, *et seq*.
as to Defendants Amgen and
Oklahoma Oncology and Hematology Associates, Inc. d/b/a/ Cancer Care Associates,
Oklahoma Oncology Incorporated
("Oklahoma Medical Providers")**

522.    Relator realleges and incorporates by reference the allegations of paragraphs 1-521 of this complaint.

523.    This is a claim for treble damages and penalties under the Oklahoma Medicaid False Claims Act.

145

524.     At all relevant times herein, Defendants Amgen and Oklahoma Oncology and Hematology Associates, Inc. d/b/a/ Cancer Care Associates, Oklahoma Oncology Incorporated ("Oklahoma Medical Providers") did business in the State of Oklahoma.

525.     As described above, Defendant Amgen and Oklahoma Medical Providers have engaged in fraudulent activities including but not limited to selling and purchasing Amgen drug products and submitting claims to the State of Oklahoma for reimbursement for these drugs. Defendant Oklahoma Medical Providers received financial incentives and kickbacks from Amgen that were not properly disclosed to the State of Oklahoma nor was the State of Oklahoma provided its proportionate share of any discount received.

526.     As described above, Defendant Amgen and Oklahoma Medical Providers have engaged in fraudulent activities including but not limited to selling and purchasing Amgen drug products and submitting claims to the State of Oklahoma for reimbursement for these drugs. Defendant Oklahoma Medical Providers administered these drugs to patients without medical necessity or in amount greater than medically necessary for a patient or in an amount greater than necessary to obtain the medical benefit for the patient.  Despite administering these drugs without medical benefit or necessity or in excess of what would be required to obtain the medical benefit or necessity, Defendant Oklahoma Medical Providers then sought reimbursement from the State of Oklahoma for these improperly and fraudulently administered drugs.

527.     As described herein, Defendants have knowingly violated the Oklahoma Medicaid False Claims Act by submitting these false claims and omitting material information such that the State of Oklahoma, not knowing that these claims were false and not aware of the omitted information, paid these claims that would not be paid but for the illegal acts of Defendants Amgen and Oklahoma Medical Providers.

528. By reason of the acts described herein, the State of Oklahoma has been damaged and continues to be damaged in an amount to be fully calculated and stated at trial.

529. The State of Oklahoma furthermore, is entitled to the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented, or caused to be made, used, or presented by Defendant Amgen and Oklahoma Medical Providers.

## COUNT NINETEEN
**Violation of Tennessee Medicaid False Claims Act, Tenn. Stat. § 75-1-181 *et seq.*
as to Defendants Amgen and
Tennessee Oncology PLLC, The West Clinic, Tennessee Cancer Specialists, Boston Baskin
Cancer Group, Kingsport Hematology-Oncology Associates, Thompson Oncology Group,
Chattanooga Oncology Hematology Associates, East Tennessee Hematology Oncology
Associates, Timothy Panella, M.D., d/b/a University Cancer Specialists, and
Wahid T. Hanna, M.D.
("Tennessee Medical Providers")**

530. Relator realleges and incorporates by reference the allegations of paragraphs 1-529 of this complaint.

531. This is a claim for treble damages and penalties under the Tennessee Medicaid False Claims Act.

532. At all relevant times herein, Defendants Amgen and Tennessee Oncology PLLC, The West Clinic, Tennessee Cancer Specialists, Boston Baskin Cancer Group, Kingsport Hematology-Oncology Associates, Thompson Oncology Group, Chattanooga Oncology Hematology Associates, East Tennessee Hematology Oncology Associates, Timothy Panella, M.D., d/b/a University Cancer Specialists, and Wahid T. Hanna, M.D. ("Tennessee Medical Providers") did business in the State of Tennessee.

533. As described above, Defendant Amgen and Tennessee Medical Providers have engaged in fraudulent activities including but not limited to selling and purchasing Amgen drug products and submitting claims to the State of Tennessee for reimbursement for these drugs. Defendant Tennessee Medical Providers received financial incentives and kickbacks from Amgen that were not properly disclosed to the State of Tennessee nor was the State of Tennessee provided its proportionate share of any discount received.

534. As described above, Defendant Amgen and Tennessee Medical Providers have engaged in fraudulent activities including but not limited to selling and purchasing Amgen drug products and submitting claims to the State of Tennessee for reimbursement for these drugs. Defendant Tennessee Medical Providers administered these drugs to patients without medical necessity or in amount greater than medically necessary for a patient or in an amount greater than necessary to obtain the medical benefit for the patient. Despite administering these drugs without medical benefit or necessity or in excess of what would be required to obtain the medical benefit or necessity, Defendant Tennessee Medical Providers then sought reimbursement from the State of Tennessee for these improperly and fraudulently administered drugs.

535. As described herein, Defendants have knowingly violated the Tennessee Medicaid False Claims Act by submitting these false claims and omitting material information such that the State of Tennessee, not knowing that these claims were false and not aware of the omitted information, paid these claims that would not be paid but for the illegal acts of Defendants Amgen and Tennessee Medical Providers.

536. By reason of the acts described herein, the State of Tennessee has been damaged and continues to be damaged in an amount to be fully calculated and stated at trial.

537.     The State of Tennessee, furthermore, is entitled to the maximum penalty for each

and every false or fraudulent claim, record or statement made, used, presented, or caused to be

made, used, or presented by Defendant Amgen and Tennessee Medical Providers.


## COUNT TWENTY
**Violation of Texas Medicaid Fraud Prevention Law, Tex. Hum. Res. Code § 36.002 *et seq*.
as to Defendants Amgen and
South Texas Oncology and Hematology Associates, Houston Cancer Clinic, Oncology
Consultants, Tyler Hematology Oncology, Metroplex Hematology/Oncology Associates
d/b/a Arlington Cancer Center, Southeast Texas Oncology Partners, Northwest Cancer
Center, Rohit Kappor, M.D., P.A., Texas Cancer Associates, University of Texas At
Southwestern Simmons Cancer Center, Abilene Hematology-Oncology Group, P.A., Lone
Star Oncology Consultants, P.A., Kelsey Seybold Clinic, Blood and Cancer Center of East
Texas, Coastal Bend Cancer Center, and South Texas Institute of Cancer and Blood
Disorders
("Texas Medical Providers")**


538.     Relator realleges and incorporates by reference the allegations of paragraphs 1-

537 of this complaint.

539.     This is a claim for treble damages and penalties under the Texas Medicaid Fraud

Prevention Law.

540.     At all relevant times herein, Defendants Amgen and South Texas Oncology and

Hematology Associates, Houston Cancer Clinic, Oncology Consultants, Tyler Hematology

Oncology, Metroplex Hematology/Oncology Associates d/b/a Arlington Cancer Center,

Southeast Texas Oncology Partners, Northwest Cancer Center, Rohit Kappor, M.D., P.A., Texas

Cancer Associates, University of Texas At Southwestern Simmons Cancer Center, Abilene

Hematology-Oncology Group, P.A., Lone Star Oncology Consultants, P.A., Kelsey Seybold

Clinic, Blood and Cancer Center of East Texas, Coastal Bend Cancer Center, and South Texas

Institute of Cancer and Blood Disorders ("Texas Medical Providers") did business in the State of Texas.

541.     As described above, Defendant Amgen and Texas Medical Providers have engaged in fraudulent activities including but not limited to selling and purchasing Amgen drug products and submitting claims to the State of Texas for reimbursement for these drugs. Defendant Texas Medical Providers received financial incentives and kickbacks from Amgen that were not properly disclosed to the State of Texas nor was the State of Texas provided its proportionate share of any discount received.

542.     As described above, Defendant Amgen and Texas Medical Providers have engaged in fraudulent activities including but not limited to selling and purchasing Amgen drug products and submitting claims to the State of Texas for reimbursement for these drugs. Defendant Texas Medical Providers administered these drugs to patients without medical necessity or in amount greater than medically necessary for a patient or in an amount greater than necessary to obtain the medical benefit for the patient.  Despite administering these drugs without medical benefit or necessity or in excess of what would be required to obtain the medical benefit or necessity, Defendant Texas Medical Providers then sought reimbursement from the State of Texas for these improperly and fraudulently administered drugs.

543.     As described herein, Defendants have knowingly violated the Texas Medicaid False Claims Act by submitting these false claims and omitting material information such that the State of Texas, not knowing that these claims were false and not aware of the omitted information, paid these claims that would not be paid but for the illegal acts of Defendants Amgen and Texas Medical Providers.

544.     By reason of the acts described herein, the State of Texas has been damaged and continues to be damaged in an amount to be fully calculated and stated at trial.

545.     The State of Texas, furthermore, is entitled to the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented, or caused to be made, used, or presented by Defendant Amgen and Texas Medical Providers.

## COUNT TWENTY-ONE
### Violation of Virginia False Claims Act, Va. Code Ann. § 8.01-216.3(a) *et seq.* as to Defendants Amgen and
### Virginia Cancer Institute, Hematology Oncology Patient Enterprises (HOPE), Lynchberg Hematology Oncology Clinic, Peninsula Cancer Institute, Cancer Outreach Associates, Danville Hematology-Oncology Clinic, Shenandoah Oncology Associates, and Delta Hematology/Oncology Associates
### ("Virginia Medical Providers")

546.     Relator realleges and incorporates by reference the allegations of paragraphs 1-545 of this complaint.

547.     This is a claim for treble damages and penalties under the Virginia False Claims Act.

548.     At all relevant times herein, Defendants Amgen and Virginia Cancer Institute, Hematology Oncology Patient Enterprises (HOPE), Lynchberg Hematology Oncology Clinic, Peninsula Cancer Institute, Cancer Outreach Associates, Danville Hematology-Oncology Clinic, Shenandoah Oncology Associates, and Delta Hematology/Oncology Associates ("Virginia Medical Providers") did business in the Commonwealth of Virginia.

549.     As described above, Defendant Amgen and Virginia Medical Providers have engaged in fraudulent activities including but not limited to selling and purchasing Amgen drug products and submitting claims to the Commonwealth of Virginia for reimbursement for these

151

drugs. Defendant Virginia Medical Providers received financial incentives and kickbacks from Amgen that were not properly disclosed to the Commonwealth of Virginia nor was the Commonwealth of Virginia its proportionate share of any discount received.

550. As described above, Defendant Amgen and Virginia Medical Providers have engaged in fraudulent activities including but not limited to selling and purchasing Amgen drug products and submitting claims to the Commonwealth of Virginia for reimbursement for these drugs. Defendant Virginia Medical Providers administered these drugs to patients without medical necessity or in amount greater than medically necessary for a patient or in an amount greater than necessary to obtain the medical benefit for the patient. Despite administering these drugs without medical benefit or necessity or in excess of what would be required to obtain the medical benefit or necessity, Defendant Virginia Medical Providers then sought reimbursement from the Commonwealth of Virginia for these improperly and fraudulently administered drugs.

551. As described herein, Defendants have knowingly violated the Virginia False Claims Act by submitting these false claims and omitting material information such that the Commonwealth of Virginia, not knowing that these claims were false and not aware of the omitted information, paid these claims that would not be paid but for the illegal acts of Defendants Amgen and Virginia Medical Providers.

552. By reason of the acts described herein, the Commonwealth of Virginia has been damaged and continues to be damaged in an amount to be fully calculated and stated at trial.

553. The Commonwealth of Virginia, furthermore, is entitled to the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented, or caused to be made, used, or presented by Defendant Amgen and Virginia Medical Providers.

## COUNT TWENTY-TWO
**Violation of Wisconsin False Claims for Medical Assistance Act , Wis. Stat. § 20.931, *et seq*.
as to Defendants Amgen and
Oncology Alliance, Marshfield Clinic, Fox Valley Hematology and Oncology, Auroa
Sheboygan Clinic, Green Bay Oncology Limited, and Medical Consultants Limited
("Wisconsin Medical Providers")**

554.    Relator realleges and incorporates by reference the allegations of paragraphs 1-553 of this complaint.

555.    This is a claim for treble damages and penalties under the Wisconsin False Claims for Medical Assistance Act.

556.    At all relevant times herein, Defendants Amgen and Oncology Alliance, Marshfield Clinic, Fox Valley Hematology and Oncology, Auroa Sheboygan Clinic, Green Bay Oncology Limited, and Medical Consultants Limited ("Wisconsin Medical Providers") did business in the State of Wisconsin.

557.    As described above, Defendant Amgen and Wisconsin Medical Providers have engaged in fraudulent activities including but not limited to selling and purchasing Amgen drug products and submitting claims to the State of Wisconsin for reimbursement for these drugs. Defendant Wisconsin Medical Providers received financial incentives and kickbacks from Amgen that were not properly disclosed to the State of Wisconsin nor was the State of Wisconsin provided its proportionate share of any discount received.

558.    As described above, Defendant Amgen and Wisconsin Medical Providers have engaged in fraudulent activities including but not limited to selling and purchasing Amgen drug products and submitting claims to the State of Wisconsin for reimbursement for these drugs. Defendant Wisconsin Medical Providers administered these drugs to patients without medical necessity or in amount greater than medically necessary for a patient or in an amount greater than necessary to obtain the medical benefit for the patient.  Despite administering these drugs without

medical benefit or necessity or in excess of what would be required to obtain the medical benefit or necessity, Defendant Wisconsin Medical Providers then sought reimbursement from the State of Wisconsin for these improperly and fraudulently administered drugs.

559.     As described herein, Defendants have knowingly violated the Wisconsin False Claims for Medical Assistance Act by submitting these false claims and omitting material information such that the State of Wisconsin, not knowing that these claims were false and not aware of the omitted information, paid these claims that would not be paid but for the illegal acts of Defendants Amgen and Wisconsin Medical Providers.

560.     By reason of the acts described herein, the State of Wisconsin has been damaged and continues to be damaged in an amount to be fully calculated and stated at trial.

561.     The State of Wisconsin, furthermore, is entitled to the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented, or caused to be made, used, or presented by Defendant Amgen and Wisconsin Medical Providers.


### COUNT TWENTY-THREE
### Violation of 31 U.S.C. § 3730(h)
### as to Defendant Amgen

562.     Relator realleges and incorporates by reference the allegations of paragraphs 1-561 of this complaint.

563.     In violation of the False Claims Act 31 U.S.C. § 3730(h), Defendant Amgen took negative employment actions against Relator, including terminating Relator's employment, because of lawful acts taken by Relator in furtherance of an action under 31 U.S.C. § 3730, including investigating and reporting Defendant's fraudulent activities.

564.     As a result of Defendant Amgen's conduct, Relator has suffered damages.

**PRAYER FOR RELIEF**

WHEREFORE, Relator requests that judgment be entered against Defendants, ordering that:

a.      Defendants pay an amount equal to three times the amount of damages the United States has sustained because of Defendants' actions, plus a civil penalty against Defendants of not less than $5,500, and not more than $11,000 for each violation of 31 U.S.C. § 729;

b.      Defendants pay an amount equal to three times the amount of damages the State of California has sustained because of Defendants' actions, plus all applicable civil penalties for each violation of California Government Code § 12650(a);

c.      Defendants pay an amount equal to three times the amount of damages the State of Delaware has sustained because of Defendants' actions, plus all applicable civil penalties for each violation of Delaware Code § 1201(a);

d.      Defendants pay an amount equal to three times the amount of damages the District of Columbia has sustained because of Defendants' actions, plus all applicable civil penalties for each violation of D.C. Code Ann. § 2-308.13 *et. seq*;

e.      Defendants pay an amount equal to three times the amount of damages the State of Florida has sustained because of Defendants' actions, plus all applicable civil penalties for each violation of Florida Statute § 66.082;

f.      Defendants pay an amount equal to three times the amount of damages the State of Georgia has sustained because of Defendants' actions, plus all applicable civil penalties for each violation of Georgia Statute § 49-4-168 *et seq*.;

g.      Defendants pay an amount equal to three times the amount of damages the State of Hawai'i has sustained because of Defendants' actions, plus all applicable civil penalties for each violation of California Revised Statute § 661-21(a) *et seq*.;

h.      Defendants pay an amount equal to three times the amount of damages the State of Illinois has sustained because of Defendants' actions, plus all applicable civil penalties for each violation of Illinois Comp. Statute § 175/3(a);

i.      Defendants pay an amount equal to three times the amount of damages the State of Indiana has sustained because of Defendants' actions, plus all applicable civil penalties for each violation of Indiana Code 5-11-5.5 *et seq*.;

j.      Defendants pay an amount equal to three times the amount of damages the State of Louisiana has sustained because of Defendants' actions, plus all applicable civil penalties for each violation of Louisiana Revised Statute § 437 *et seq*.;

k.      Defendants pay an amount equal to three times the amount of damages the State of Massachusetts has sustained because of Defendants' actions, plus all applicable civil penalties for each violation of Massachusetts General Laws Chapter 12 § 5B;

l.      Defendants pay an amount equal to three times the amount of damages the State of Michigan has sustained because of Defendants' actions, plus all applicable civil penalties for each violation of Michigan C.L. 400.601 *et seq*.;

m.      Defendants pay an amount equal to three times the amount of damages the State of New Mexico has sustained because of Defendants' actions, plus all applicable civil penalties for each violation of New Mexico Statute § 27-2F-1 *et seq*.;

n.      Defendants pay an amount equal to three times the amount of damages the State of New York has sustained because of Defendants' actions, plus all applicable civil penalties for each violation of New York State Fin. § 187 *et seq*.;

o.      Defendants pay an amount equal to three times the amount of damages the State of Nevada has sustained because of Defendants' actions, plus all applicable civil penalties for each violation of Nevada Revised Statute § 357.040 *et seq*.;

p.      Defendants pay an amount equal to three times the amount of damages the State of New Jersey has sustained because of Defendants' actions, plus all applicable civil penalties for each violation of N.J. Sat. § 2A:32C-1 *et seq*.;

q.      Defendants pay an amount equal to three times the amount of damages the State of Oklahoma has sustained because of Defendants' actions, plus all applicable civil penalties for each violation of 63 Oklahoma Statute § 5053, *et seq*.;

r.      Defendants pay an amount equal to three times the amount of damages the State of Tennessee has sustained because of Defendants' actions, plus all applicable civil penalties for each violation of Tennessee Statute § 75-1-181 *et seq*.;

s.      Defendants pay an amount equal to three times the amount of damages the State of Texas has sustained because of Defendants' actions, plus all applicable civil penalties for each violation of Texas Hum. Res. Code § 36.002;

t.      Defendants pay an amount equal to three times the amount of damages the Commonwealth of Virginia has sustained because of Defendants' actions, plus all applicable civil penalties for each violation of Va. Code Ann. § 8.01-216.3(a) *et seq.*;

u.      Defendants pay an amount equal to three times the amount of damages the State of Wisconsin has sustained because of Defendants' actions, plus all applicable civil penalties for each violation of Wisc. Stat. § 20.932 *et seq.*;

v.      Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 730(d);

w.      Defendants cease and desist from violating the False Claims Act, 31 U.S.C. § 3729 *et seq.*

x.      Relator be awarded all damages available pursuant to 1 U.S.C. § 3730(h) as a result of Defendant Amgen's retaliation against Relator, including but not limited to 2 times the amount of back pay, interest on the back pay, and compensation for any special damages as a result of the discrimination, including damages for emotional distress;

y.      Relator be awarded all costs of this action, including attorneys' fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d) and (h) and all other applicable statutes including the False Claims Acts of the various states identified herein; and

z.      The United States and Relator be granted all such other relief as the Court deems just and proper.

Dated: December 30, 2011

_____

Rob Hennig
California Bar No. 174646
Law Offices of Rob Hennig
1875 Century Park E., Suite 1770
Los Angeles, CA 90067
rob@robhennig.com
(310) 843-0020 Phone
(310) 843-9150 Fax
Attorney for Plaintiff/*Qui Tam* Relator

## DEMAND FOR JURY TRIAL

A trial by jury is requested in this case.

Dated: December 30, 2011

_____

Rob Hennig
California Bar No. 174646
Law Offices of Rob Hennig
1875 Century Park E., Suite 1770
Los Angeles, CA 90067
rob@robhennig.com
(310) 843-0020 Phone
(310) 843-9150 Fax
Admitted *Pro Hac Vice*
Attorney for Plaintiff/*Qui Tam* Relator

160

## PROOF OF SERVICE

| | |
|---|---|
| **Case Name:** | *United States of America ex rel. Don Hanks, et al. v. Amgen, Inc., et al.* |
| **Court:** | **United States District Court – Eastern District New York** |
| **Case No:** | **CV-08-3096** |

I am employed in the City of Long Island City, New York.  I am over the age of 18 and not a party to the within action.  My business address is: 1875 Century Park E, Suite 1770, Los Angeles, CA 90067.

On JANUARY 2, 2012, I served the document(s) described as:

## SECOND AMENDED COMPLAINT

on the party or parties addressed as follows:

Deborah Zwany                                          Attorneys for the United States of America
Assistant United States Attorney
271 Cadman Plaza East
Brooklyn, NY 11201
718-254-7000
718-254-6579 (fax)
Deborah.Zwany@usdoj.gov

Jessica Champa
Joyce R. Branda
Patricia R. Davis
United States Department of Justice
Civil Division
P.O. Box 261
Ben Franklin Station
Washington, DC 20044
202-353-2680
202-514-0280 (fax)

[X]          (BY MAIL)  I am readily familiar with the firm's practice for collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  Executed on JANUARY 2, 2012, at Los Angeles, California.

Rob Hennig