```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
    UNITED STATES OF AMERICA, ex rel.         :
    Don Hanks,                                 :    MEMORANDUM DECISION AND
                                               :    ORDER
                           Plaintiff,          :
                                               :    08-cv-3096 (BMC)
                 - against -                   :
                                               :
                                               :
    AMGEN, INC., et al.,                       :
                                               :
                           Defendants.         :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

The issue before the Court in this fifteen-year-old False Claims Act case is who gets priority over funds obtained through a partial settlement of the case: is it the government, which is holding the funds and claims a set-off for past due taxes, or the plaintiff's attorney, who represented him in this action and claims an attorneys' lien on the funds? Not only are the funds insufficient to leave anything for plaintiff, but they are insufficient to pay both the IRS and plaintiff's attorney. Who comes first?

## BACKGROUND

In 2008, plaintiff Don Hanks, suing as a relator of the United States (and several individual states), brought this *qui tam* action under the False Claims Act, 31 U.S.C. § 3730. He contended that defendant drug manufacturers had fraudulently billed Medicare and Medicaid for certain pharmaceuticals. The United States partially intervened in the action for the purpose of settling the claims against Amgen.

Separately, in 2009, the government filed suit against Hanks for unpaid taxes (the "Tax Case").

This FCA claim was settled as to Amgen in 2012, with defendant Amgen paying a certain amount, of which Hanks' share as relator was $220,411.04.  The government continues to hold those funds pursuant to its partial intervention.

In 2013, the government obtained a judgment against Hanks for $980,320.26 in the Tax Case, and the Eleventh Circuit affirmed.  U.S. v. Hanks, 569 F. App'x 785 (11th Cir. 2014).  Through executions on or foreclosures of real estate that Hanks owned, the judgment was partially satisfied and brought down to $249,534.72.

The government wants to set off Hanks' share of the settlement fund against the tax liability he owes.  This would of course mean that all of Hanks' recovery would go towards paying down the judgment in the Tax Case.

The competing claimant is the FCA attorney Rob Hennig, Esq.  His fee agreement with Hanks, as applicable here, provided that if the United States intervened in the FCA action and reached a settlement, Hennig would be entitled to a 45% contingent fee after deduction of costs.

## DISCUSSION

Neither side disputes nor has sought to recharacterize their adversary's claim.  I therefore assume that the United States has a right of setoff, and Hennig has an attorneys' lien.  I will further assume, because, again, the parties do not dispute, that both claims attached at the same time, i.e., when the United States received the fund in settlement of the FCA case.  The question is which one has priority.

The government's motion does nothing to answer this question.  It merely proves the uncontested point that the government has a right of setoff and asserts that since the settlement agreement in the FCA action did not include a carve-out for Hennig from the recovery allocated

2

to Hanks, Hennig has no interest in the settlement fund.  The government's motion ignores the fact that under California law, which applies under Hennig's retainer agreement with Hanks, Hennig has a charging lien.[1]  See, e.g., Cetenko v. United California, 30 Cal.3d 528, 638 P.2d 1299 (1982) ("A lien in favor of an attorney upon the proceeds of a prospective judgment in favor of his client for legal services rendered has been recognized in numerous cases.").  The settlement agreement says nothing about Hennig waiving his attorney's lien.  Only in its reply brief does the government finally address the issue of priority, and that is only in rebuttal to plaintiff's opposing arguments.  Its reply is not convincing.

First, the government argues that Hennig can only have an interest in proceeds that Hanks has recovered, and since the government has a right of setoff, Hanks never had any recovery.  Its argument is circular.  It assumes that because it has a superior right of setoff, the money does not belong to Hanks.  From there, the government reasons that there is no recovery for Hanks and thus nothing to which Hennig's lien can attach.  But that's the question we're trying to answer, isn't it?  Unless and until this Court authorizes the government to exercise its right to setoff to the exclusion of Hennig and Hanks, the money belongs to Hanks, and the fact that it may be subject to setoff or an attorneys' lien claim does not change that.

Second, the government tries to rebut Hennig's theory that he has a superpriority lien under 26 U.S.C. § 6323.  That section of the Internal Revenue Code, entitled "Validity and

---

[1] The Government purports to reserve its right to dispute that California law applies to Hennig's retainer agreement with Hanks.  I don't know when the Government thought it would raise that point if it didn't raise it now.  The Government offers no reason why California law would not apply, nor what law would apply if California law does not, nor why it might make any difference.  Hennig would have a charging lien under the law of most other states.  Since the Government does not dispute the existence of Hennig's charging lien, I am going to assume that California law applies to the extent of establishing the existence of an attorneys' lien.

3

priority against certain persons," addresses the tax lien created by IRC § 6321. As to that tax lien, § 6323(b)(8) clearly elevates the priority of attorneys' liens over tax liens:

> Even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid . . . [w]ith respect to a judgment or other amount in settlement of a claim or of a cause of action, as against an attorney who, under local law, holds a lien upon or a contract enforceable against such judgment or amount, to the extent of his reasonable compensation for obtaining such judgment or procuring such settlement, except that this paragraph shall not apply to any judgment or amount in settlement of a claim or of a cause of action against the United States to the extent that the United States offsets such judgment or amount against any liability of the taxpayer to the United States.

Hennig claims this provision grants his charging lien priority over the government's setoff right. The government counters with the final, limiting phrase – "this paragraph shall not apply to any judgment or amount in settlement of a claim or of a cause of action against the United States to the extent that the United States offsets such judgment or amount against any liability of the taxpayer to the United States."

Section 6323(b)(8) was part of the Federal Tax Lien Act of 1966, "the first comprehensive revision and modernization of the provisions of the internal revenue laws concerned with the relationship of Federal tax liens to the interests of other creditors." H.R. REP. NO. 89-1884, at 1 (1966). It merely codified the ruling in earlier cases like Morgan v. United States, 131 F. Supp. 783 (S.D.N.Y. 1955), and Brozan v. United States, 128 F. Supp. 895 (S.D.N.Y. 1954), in which the government was the defendant. The government's attempt to rely on this qualification therefore fails. By its terms, it only applies when a tax debtor recovers a settlement or judgment *against* the United States. Here, Hanks has recovered a settlement as relator to and therefore *for* the United States.

Morgan illustrates the point. There, the plaintiff was a personal injury claimant against the government under the Federal Tort Claims Act, 28 U.S.C. § 1346(b). After judgment was

4

entered against the government, the government asserted a tax lien against the plaintiff and sought to offset its lien against the judgment. Because the government was the defendant, the court gave the tax lien priority over the attorneys' lien. But Morgan also noted:

> The situation might be different when a plaintiff, through attorneys' efforts, secured a recovery from a third party and the government then sought to assert a tax lien against such fund as superior to the lien of the attorneys. In that case, the amount recovered from the third party was already subject to the attorneys' lien at the time the fund came into existence, and not until the fund came into existence did the tax lien have a fund upon which to attach.

131 F. Supp. at 783-84.[2] The qualifying language in Section 6328 applies where the recovery is *from* the United States, not a third party. Thus, all we are left with is that § 6328 grants Hennig's attorney's lien a priority over the government's setoff right.[3]

The Second Circuit has come very close to resolving this issue. In Ripa v. United States, 323 F.3d 73 (2d Cir. 2003), the U.S. Customs Service wrongfully seized funds belonging to the taxpayer. By the time the taxpayer obtained a judgment finding that the seizure was wrongful (the "underlying action"), he had accrued unpaid taxes and penalties that greatly exceeded the amount held by the government on behalf of the Customs Service, and the government wanted to assert a setoff. The Court held that because the government was the defendant in the underlying action where the fund was generated, the qualifying language in § 6328(b)(8) eliminated what would otherwise be the superpriority of the taxpayer's attorney's judgment lien – the attorneys' lien constituted a claim against a fund generated in the underlying action "against the United States." In so holding, the Circuit, like Morgan, strongly suggested that in the converse situation

---

[2] The Government cites other federal statutes addressing the Government's right to setoff. I don't know why. The Internal Revenue Code is the only statute that matters here.

[3] The Government has not argued that its right of setoff has any higher priority than a tax lien or judgment lien would have, so I am not considering that possibility.

5

– where a plaintiff recovered money on behalf of the United States – the opposite result would obtain:

> When a lawyer represents a taxpayer against a party other than the government, the lawyer is working to reach a result that will, if successful, enlarge the amount of funds available to the government to satisfy its tax claim. The lawyer is then probably acting in the government's best interests. If the lawyer cannot be paid out of the amount collected, however, he or she is unlikely to pursue the claim in the first place and the government is, potentially, that much the poorer. If the lawyer represents a taxpayer whose interests are adverse to the government, however, the funds available to the government will not be enhanced by the lawyer's services.

Id. at 83; see also Leathers v. Leathers, 856 F.3d 729, 765-66 (10th Cir. 2017).

Hennig represented Hanks against Amgen, "a party other than the government." The very purpose of a *qui tam* action is to obtain money for, not from, the government. Thus, Hanks and the government were not adverse, but united in interest against Amgen. Although nothing in the Internal Revenue Code saves Hanks' interest in the recovered fund from the Government's right of setoff, § 6328(b)(8) gives Hennig a superpriority lien against that recovery.

## CONCLUSION

The Government's motion to authorize setoff is denied.

**SO ORDERED.**

Digitally signed by Brian M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
November 9, 2022